**OHRENSTEIN & BROWN, LLP**
1305 Franklin Ave. Suite 300
Garden City, New York 11530
Telephone: (516) 873-6334
Fax: (516) 873-8912
Michael D. Brown, Esq. (Michael.Brown@oandb.com)
Matthew Bryant, Esq. (Matthew.Bryant@oandb.com)
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
======================================X

AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.                    Case No. 14-CV-9494

                                    Plaintiffs,

        -against-

SAFEBUILT INSURANCE SERVICES, INC.
a/k/a SAFEBUILT WHOLESALE INSURANCE
SERVICES, INC., THE TAFT COMPANIES,
LLC, PREFERRED GLOBAL HOLDINGS, INC.,
DAVID E. PIKE, DAVID E. PIKE, INC., PHILIP
SALVAGIO, SALMEN INSURANCE SERVICES,
INC. f/k/a SALVAGIO, INC., JOHN DOE
CORPORATIONS 1-5, and JOHN DOES 1-5,

                                    Defendants.
======================================X

# PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 2

STANDARD OF REVIEW ............................................................................................... 6

LEGAL ARGUMENT ...................................................................................................... 7

POINT I ............................................................................................................................. 7

DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS'
COMPLAINT IS SUFFICIENTLY PLED ....................................................................... 7

    I.    Plaintiffs Have Stated A Claim for Piercing the Corporate Veil Sufficient to Sustain
        Direct Claims Against the Individual Defendants ............................................. 7

    II.  Plaintiffs Have Sufficiently Pled Claims for Claim Sounding in Fraud ............ 12

    A.  Plaintiffs Have Pled A Claim for Fraudulent Conveyance .............................. 12

    B.  Plaintiffs Have Adequately Pled A Claim for Fraudulent Inducement ............ 15

POINT II ......................................................................................................................... 16

THE INSTANT ACTION IS NOT DUPLICATIVE OF THE PRIOR ACTION PENDING IN
MONTANA ....................................................................................................................... 16

    I.    Defendants' Motion to Dismiss The Instant Action as Duplicative of the Prior
        Pending Montana Action Or In the Alternative To Stay Or Transfer the Instant
        Action Must Be Denied ..................................................................................... 16

CONCLUSION ................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
860 F. Supp. 128 (S.D.N.Y. 1994) ...........................................................................19, 22

*Accordia Northeast, Inc. v. Thesseus International Asset Fund, N.V.*,
205 F. Supp. 2d 176 (S.D.N.Y 2002) ........................................................................10, 12

*Amusement Industry, Inc. v. Midland Avenue Associates*,
820 F. Supp. 2d 510 (S.D.N.Y. 2011) .......................................................................12, 13

*Astroworks, Inc. v. Astroexhibit, Inc.*,
    257 F. Supp. 2d 609 (S.D.N.Y 2003) ......................................................................15

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000) ......................................................................................19

*Everest Capital Ltd. v. Everest Funds Management, L.L.C*,
178 F. Supp. 2d 459 (S.D.N.Y. 2002) .......................................................................22

*Farley v. Davis*,
1992 WL 110753 (S.D.N.Y. May 8, 1992) .................................................................7, 9

*Festa v. Local 3 International Brotherhood of Electrical Workers*,
905 F.2d 35 (2d Cir. 1990) ........................................................................................6

*In re Sunbeam Corp.*,
284 B.R. 355 (Bankr. S.D.N.Y. 2002)........................................................................9

*MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC*,
    268 F.3d 58 (2d Cir. 2011) .....................................................................................9

*Marine Midland Bank v. Murkoff*,
120 A.D.2d 122, 508 N.Y.S.2d 17 (2d Dep't 1986) ..................................................12, 13

*Mattel, Inc. v. Louis Marx & Co.*,
353 F.2d 421 (2d. Cir. 1965) ....................................................................................22

*Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*,
2002 WL 31050846 (S.D.N.Y Sept. 12, 2002) .........................................................8, 12

*Northern Assurance Company of American v. Square D Company*,
201 F.3d 84 (2d Cir. 2000) ........................................................................................19, 21

*Novie v. Village of Montebello*,
2012 WL 3542222 (S.D.N.Y. Aug. 16, 2012)............................................................7

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013) ......................................................................19

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
929 F. Supp. 117 (1996) ...........................................................................................9

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ..................................................................................................7

*Smith v. Pali Capital, Inc.*,
2006 WL 3240578 (S.D.N.Y. 2006) .......................................................................15

*Starr v. Sony BMG Music Entertainment*,
592 F.3d 314 (2d Cir. 2010) ......................................................................................7

*Sullivan v. Kodsi*,
373 F. Supp. 2d 302 (S.D.N.Y. 2005) .....................................................................12

*Sung Chang Interfashion Co., Ltd. v. Stone Mountain Accessories, Inc.*,
2013 WL 5366373 (S.D.N.Y. Sept. 25, 2013) ..................................................7, 9, 13

*The Haytian Republic*,
154 U.S. 118 (1894) ................................................................................................19

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990) ....................................................................................13

*William Gluckin & Co v. International Playtex Corp.*,
407 F.2d 177 .............................................................................................................22

*William Wrigley Jr. Company v. Waters*,
890 F.2d 594 (2d Cir. 1989) ......................................................................................8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
933 F.2d 131 (2d Cir. 1991) ......................................................................................8

**Statutes**

N.Y. Debt. & Cred. Law § 276.................................................................................12

**Rules**

Fed R. Civ. P. 8(a) .....................................................................................................9

Fed R. Civ. P. 9(b)...........................................................................................9, 15, 16

## PRELIMINARY STATEMENT

Plaintiffs AmTrust North America, Inc. and Technology Insurance Company, Inc. submit this memorandum of law along with the Declaration of Michael D. Brown with attached exhibits ("Brown Dec.") in opposition to Defendants' Motion to Dismiss.  Defendants request that the Court dismiss Plaintiffs' claims for: 1) individual liability due to veil piercing against the Defendants David E. Pike ("Pike") and Philip Salvagio ("Salvagio"); 2) actual fraudulent conveyance; and 3) fraudulent inducement.  The Court must deny this request since, as described below, the Complaint has alleged facts sufficient to sustain each of these claims.

Defendants further request that the Court dismiss the Complaint entirely, or in the alternative stay or transfer this action, because they allege that it is duplicative of the action currently pending in the District Court of Montana, Billings Division.  In requesting this relief, Defendants misrepresent that the "central dispute" in this action is the application of Montana's state insurance laws, which in fact are neither "obscure" nor central to the issues here involved. Instead, Defendants gloss over the twelve causes of action alleged in detail in the Complaint: breach and repudiation of contract, breach of contract and principal liability, negligent misrepresentation, breach of fiduciary duty, veil piercing and alter ego, fraudulent inducement, fraudulent conveyance, conversion, aiding and abetting, negligence, and declaratory judgment based upon Defendants' own misconduct and their own liability to Plaintiffs.  Thus, Defendants' request must be denied since, as set forth in detail below, the instant action involves neither the same parties nor the same issues nor the same claims as those present in the Montana Action and a decision in the Montana Action will not dispose of any of the issues or claims present here. Rather, a decision by the Montana Action will simply resolve one issue not involved in this action - whether Pacific Re, Inc. must participate in the arbitration.

1

Based on the foregoing, this Court must deny Defendants' Motion to Dismiss in its entirety.

## STATEMENT OF FACTS

Plaintiff AmTrust North America, Inc.("AmTrust") provides insurance and financial services through affiliated licensed insurers, including Technology Insurance Company, Inc. ("TIC")(TIC and "AmTrust" are collectively referred to as "Plaintiffs").  Brown Dec., Ex. 8, ¶¶6-7. Defendant Safebuilt Insurance Services, Inc. ("SIS") is a wholesale insurance broker that created and offered specialized insurance programs to the construction industry on a multi-state basis ("SIS Reinsurance Program").  Brown Dec., Ex. 8, ¶¶6-11.  Under the SIS Reinsurance Program, United Specialty Insurance Company ("USIC") issued primary insurance policies to contractors whose risk would be underwritten by SIS pursuant to two General Agency Agreements, copies of which are annexed to the Declaration of Michael D. Brown ("Brown Dec.") at Exhibits 1 and 2.  However, before USIC would agree to issue its policies, it required that AmTrust, through its affiliate TIC, reinsure its policies.  Thus, commencing in 2009, Defendants SIS and its controlling owners and officers, David E. Pike and Philip Salvagio, solicited Plaintiffs to participate in the SIS Reinsurance Program as a "front."  Brown Dec., Ex. 8, ¶¶2, 17-20. That is, that Plaintiffs were to reinsure USIC and then retrocede virtually all of the risk to a protected cell captive reinsurance company ultimately owned and controlled by Pike and Salvagio, Pacific Re, Inc., which was managed by The Taft Companies ("Taft").  Brown Dec., Ex. 8, ¶2.  During the negotiation process, Defendants Pike, Salvagio and Taft represented to Plaintiffs: 1) that TIC would be a "front" with no substantive liability or expense exposure; 2) that SIS would hold harmless and indemnify TIC for any loss, claim payments, costs, expenses, and liabilities "arising out of or in any way related to the SIS General Agency Agreement" pursuant to which the policies relating to the SIS Reinsurance Program were underwritten by and

2

issued by SIS; 3) that the SIS Reinsurance Program would have a similar loss experience to that of their related Preferred Contractors Insurance Company Risk Retention Group ("PCIC") insurance program, which they misrepresented was very low; 4) TIC's exposure to loss would also be reinsured by SIS' captive reinsurer, Pacific Re, Inc., and its cell, Pac Re 5-AT; 5) the reinsurers' obligations to Plaintiffs' would be independently collateralized and held in Trust for Plaintiffs' benefit; 6) SIS's hold harmless and indemnity obligations would include Plaintiffs' payment of all third party administrator fees ("TPA Fees"); 7) SIS would underwrite the SIS Reinsurance Program pursuant to USIC's underwriting guidelines; 8) SIS and its captive reinsurer, Pacific Re, Inc. would provide full access to the Reinsurance Program's books and records; and 9) the Reinsurance Program would be terminable at Plaintiffs' will, but Defendants' obligations and those of Pacific Re, Inc. and Pac Re 5-AT would continue until the Reinsurance Program's last claim was resolved.  Brown Dec., Ex. 8, ¶¶20-22.

In reliance on these representations, effective October 1, 2010, Plaintiffs agreed to participate in the SIS Reinsurance Program by entering into the SIS Captive Reinsurance Agreement ("Reinsurance Agreement").  Brown Dec., Ex. 8, ¶¶19-22.  The Reinsurance Agreement was executed by AmTrust, on behalf of TIC, and Pacific Re, Inc., on behalf of its cell, Pac Re 5-AT.  Brown Dec., Ex. 8, ¶¶22, 29, Ex. 1.  In order to collateralize the obligations set forth in the Reinsurance Agreement, Complaint Exhibit 1, Article 26 required Pacific Re, Inc. on behalf of Pac Re 5-AT to provide security in the form of a letter of credit or trust fund. Brown Dec., Ex. 8, Ex. 1, Art. 26, ¶21(b).  As Plaintiffs first learned through the filing of the Montana Action in October 2014, Pacific Re, Inc. entered into a Participation Agreement with SIS for the purpose of creating the protected cell, Pac Re 5-AT, to fund Plaintiffs' risk under the SIS Reinsurance Program.  Brown Dec., Ex. 8, ¶ 23. Under the Participation Agreement, the

3

obligation to fund Pac Re 5-AT's liabilities was undertaken by SIS, which was purported to be the "beneficial owner" of Pac Re 5-AT. *See* Brown Dec. at Ex. 3.  Although the Participation Agreement is an agreement purportedly between SIS and Pacific Re, Inc., no signature line was provided for SIS and neither Pike nor Salvagio, nor anyone else, signed the Participation Agreement on behalf of SIS. *See* Brown Dec. at Ex. 3; Brown Dec., Ex. 8, ¶¶ 25-27. Not only did SIS not execute the Participation Agreement, but that Agreement sought to oust Plaintiffs of the standing to enforce Pacific Re, Inc.'s and Pac Re 5-AT's right to be funded for the obligations reinsured, as the Agreement explicitly deprived any third-party beneficiary, *i.e.,* Plaintiffs, of any rights under the Agreement, such as the right to sue SIS or its principals to enforce SIS's funding obligations.  Brown Dec., Ex. 8, ¶¶23(i), 27; Brown Dec. at Ex. 3, at p. 8. After being denied their right to inspect the books of SIS and the reinsurers and then receiving the Participation Agreement, which appeared to be unenforceable against SIS, did Plaintiffs file the Instant Action.  Brown Dec., Ex. 8, ¶¶23(i), 27, 37, 38.

After Plaintiffs participated in the SIS Reinsurance Program and exposed themselves to both loss and expenses, Defendants breached their obligations to Plaintiffs under the Reinsurance and General Agency Agreements and refused to:  1) fund the referenced collateral required by the Reinsurance Agreement (Brown Dec., Ex. 8, ¶¶35, 36); 2) pay the TPA fees as required by the indemnity (Brown Dec., Ex. 8, ¶¶ 35, 36); (3) fund Pacific Re, Inc. and its cell, Pac Re 5-AT, as required by the Participation Agreement (Brown Dec., Ex. 8, ¶¶21(e), (c), 47); 4) fund SIS so that it could fulfill its indemnity obligations to Plaintiffs for their loss (Brown Dec., Ex. 8, ¶¶21(d), 45); 5) adhere to the underwriting guidelines in binding coverage under the SIS Reinsurance Program (Brown Dec., Ex. 8, ¶21(f)); 6) permit Plaintiffs to inspect the books and

4

records of the SIS Reinsurance Program (Brown Dec., Ex. 8, ¶21(h), 37, 38); and 7) properly

manage the SIS Reinsurance Program, all as alleged (Brown Dec., Ex. 8, ¶21(g), 51).

As further set forth in Plaintiffs' Complaint, this scheme to induce Plaintiffs to participate

in the SIS Reinsurance Program but then to leave them bearing the risk of loss and TPA

expenses was devised and ultimately controlled and implemented by Pike and Salvagio, the

owner officers of SIS (and ultimately of Pacific Re, Inc. and Pac Re 5-AT).   Brown Dec., Ex. 8,

¶¶91-96. The Complaint states that Defendants Pike and Salvagio own and control the corporate

Defendants other than Taft - SIS, Preferred Global, Inc., David E. Pike, Inc., Salmen Insurance

Services, Inc. f/k/a Salvagio, Inc. ("Salvagio, Inc.") - as well as Pacific Re, Inc. and Pac Re 5-

AT, and have used these entities as a means to defraud Plaintiffs and shield themselves from

personal liability while all the time taking for themselves with the millions of dollars of

commission income earned by SIS.  (Brown Dec., Ex. 8, ¶¶4(a),(c), (d), 33.)  More specifically,

Pike and Salvagio failed to properly fund SIS, Pacific Re, Inc., and Pac Re 5-AT, and have

stripped them of their assets.  Brown Dec., Ex. 8, ¶¶34, 44, 45, 94.

As the losses on the SIS Reinsurance Program began to mount and Plaintiffs' reinsurer,

Pacific Re, Inc. and Pac Re 5-AT refused to increase the collateral to be held in Trust and

reimburse Plaintiffs for the TPA fees, all as required by the Reinsurance Agreement, Plaintiffs

commenced an arbitration in New York against Pacific Re, Inc. and its cell, Pac Re 5-AT,

pursuant to Art. 22 of the Reinsurance Agreement.  Brown Dec., Ex. 8, ¶39.  Plaintiffs also

learned that while Pike, Salvagio, and Taft had represented that SIS's PCIC insurance program

had a very low loss ratio, its loss ratio was so severe PCIC was imperiled.  Brown Dec., Ex. 8,

¶21(a); Brown Dec., Ex. 4, p. 16 (Note 2), p. 17 (Note 4); Ex. 5. Thus, the Montana

Commissioner of Securities and Insurance issued a report stating that during the period 2009-

2012 (including the period Plaintiffs were induced to participate in the SIS Reinsurance

Program), PCIC was grossly under-reserved by some $12.6 million, and that as a result PCIC's

reinsurer, Pacific Re, Inc., could not honor its reinsurance obligations to PCIC.  Brown Dec., Ex.

4, p. 16 (Note 2), p. 17 (Note 4). In addition, the Commissioner found that Pike and Salvagio had

operated PCIC with a conflicted audit committee, which included Pike, under the domination

and control of Pike, Salvagio, and Taft had; disregarded corporate formalities, such as

establishing a charter for the audit committee.  Brown Dec., Ex., 8, ¶32; Brown Dec. at Ex. 4, p.

5.  Then, Pacific Re, Inc.'s cell, Pac Re 5-AT, commenced an action in federal court in Montana

asserting that Pacific Re, Inc. was not a proper party to the arbitration.  Brown Dec. at Ex. 6.

Following that, both SIS and Pacific Re, Inc. refused to allow Plaintiffs to inspect their books

and records, as they were required to do by reason of Art. V of the General Agency Agreements

and Article 19 of the Reinsurance Agreement.  Brown Dec., Exs. 1 and 2; Ex. 8, ¶¶37-38; Ex. 8

at Ex. 1, Art. 19.  Finally, Plaintiffs reviewed the Participation Agreement, which it had never

been shown before, and recognized that it was prepared in a way to prevent Plaintiffs from

enforcing the obligation of SIS to fund their reinsurer's obligations as:  1) the Participation

Agreement was NOT executed by SIS; and 2) if the Agreement was held to be enforceable, it

deprived Plaintiffs, as third-party beneficiaries, of any rights to enforce the Agreement.  Brown

Dec., Ex. 3.  These facts left Plaintiffs with no recourse other than to seek the relief sought in the

instant Complaint.

## **STANDARD OF REVIEW**

"The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might

be presented at a trial but merely to determine whether the complaint itself is legally sufficient."

*Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.

1990).  A "motion to dismiss must be denied 'unless it appears beyond a doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'" *Farley v. Davis*, 1992 WL 110753, at 4 (S.D.N.Y. May 8, 1992) *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). On a motion to dismiss, the Court will accept the plaintiff's allegations as true and must "draw all reasonable inferences in favor of plaintiff." *Sung Chang Interfashion Co., Ltd. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at 3 (S.D.N.Y. Sept. 25, 2013); *see also Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010)("[i]n order to survive a motion to dismiss under Rule 12(b)(6) the complaint must state enough facts to state a claim on its face.")(internal quotations omitted). "When deciding a motion to dismiss the Court is entitled to consider: (1)facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . .(5) facts of which judicial notice may be properly taken under Rule 201 of the Federal Rules of Evidence." *Novie v. Village of Montebello*, 2012 WL 3542222, at 8 (S.D.N.Y. Aug. 16, 2012).

## LEGAL ARGUMENT

### POINT I

### DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS' COMPLAINT IS SUFFICIENTLY PLED

I.   Plaintiffs Have Stated A Claim for Piercing the Corporate Veil Sufficient to Sustain Direct Claims Against the Individual Defendants

Under New York law, in order to pierce the corporate veil, a plaintiff must show that "(1)[the owner ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff."

*Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*, 2002 WL 31050846, at 3

(S.D.N.Y Sept. 12, 2002)(internal quotation omitted); *see also William Wrigley Jr. Company v.*

*Waters*, 890 F.2d 594, 600 (2d Cir. 1989)(a corporate veil may be pierced if it can be shown that

"[corporate] form has been used to achieve fraud, or when the corporation has been so dominated

by an individual ... and its separate identity so disregarded, that it primarily transacted the

dominator's business rather than its own and can be called the other's alter ego.")

      Under the doctrine of veil piercing, "control, whether of the subsidiaries by the parent or

the corporation by its stockholders, is the key; the control must be used to commit fraud or other

wrong that causes plaintiff's loss." *Wm. Passalacqua Builders, Inc. v. Resnick Developers*

*South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)("[l]iability therefore may be predicated upon a

showing of fraud or complete control by the dominating corporation that leads to a wrong against

third parties."). A Court will typically consider the following factors in determining whether

there is control or dominance sufficient to pierce the corporate veil: "(1) the absence of the

formalities and paraphernalia that are part and parcel of the corporate existence, …(2) inadequate

capitalization, ...(3) whether funds are put in or taken out of the corporation for personal rather

than corporate purposes, (4) overlap in ownership, officers, directors, and personnel,(5) common

office space, address and telephone numbers of corporate entities, (6) the amount of business

discretion displayed by the allegedly dominated corporation, (7) whether the related corporations

deal with the dominated corporation at arms' length, (8) whether the corporations are treated as

independent profit centers, (9) the payment or guarantee of debts of the dominated corporation

by other corporations in the group, and (10) whether the corporation in question had property

that was used by other of the corporations as if it were its own." *Id.* at 139; *but see Network*

*Enterprises, Inc.*, 2002 WL 31050846, at 3 ("[g]iven the breadth of factors that inform the

decision, the Second Circuit has emphasized that the determination of whether to pierce the corporate veil is a 'fact specific inquiry.'") *quoting MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2011).

Further, in pleading a claim for piercing the corporate veil the "alter ego allegations will not be held to the particularity requirement of Fed R. Civ. P. 9(b)" but are "properly judged according to the liberal 'notice pleading' standard of Fed R. Civ. P. 8(a), which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 122 (1996)(the liberal pleading standard applies since a party who seeks to pierce the corporate veil may do so without proving fraud). Therefore, "setting forth some examples of alleged domination may provide sufficiently specific factual allegations to support an alter ego claim and result in denial of the motion to dismiss." *SungChang Interfashion, Co., Ltd*, 2013 WL 5366373, at 11 *quoting In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002).  For example, in *Network Enterprises, Inc.*, this Court held that the amended complaint contained a viable claim for piercing the corporate veil since it contained the following allegations:  1) the individual defendant owned the defendant companies; 2) the individual defendant and defendant companies shared the same office space; 3) the individual defendant failed to observe corporate separateness by using the letter head of one corporation for the business of the other; 4) the defendant companies were undercapitalized; and 5) the individual defendant's control over the defendant companies caused plaintiff's harm. 2012 WL 31050846, at 4.  Similarly, in *Farley v. Davis*, this Court determined that the defendant asserted a viable counterclaim for piercing the corporate veil since defendant alleged that plaintiff stripped the corporation of its assets and that the corporation was used as a front for plaintiff's other business enterprises.  1992 WL 110753, at 5 (S.D.N.Y May 8, 1992); *see also*

*Accordia Northeast, Inc. v. Thesseus International Asset Fund, N.V.,* 205 F. Supp. 2d 176, 181-183 (S.D.N.Y 2002)(complaint properly pled a claim for piercing the corporate veil where plaintiff alleged that companies were "grossly undercapitalized" with no functioning independent directors, officers or employees other than the owner and it appeared that the owner alone "controlled the actual outcome as to whether plaintiff would ever receive the premium monies.")

Here, Plaintiffs have sufficiently pled a cause of action for piercing the corporate veil. In satisfying the first prong of the veil piercing inquiry, Plaintiffs have alleged, and demonstrated, the domination and control exercised by Pike and Salvagio over the SIS, Preferred Global Holdings, Inc., Salvagio, Inc., David E. Pike, Inc., Pacific Re, Inc. and Pac Re 5-AT. With respect to SIS, Plaintiffs allege that Pike and Salvagio directly or indirectly own a majority of SIS's shares and control its operation, have undercapitalized SIS in respect of the obligation it undertook (*e.g.,* its indemnity obligation to TIC and its obligation to fund Pac Re 5-AT), have stripped SIS of its assets, and rendered it insolvent by making large distributions to SIS' shareholders, in the amount of $665,325.85, paying in just nine months of one year in excess of $1 million in commissions to other agencies affiliated with SIS or owned by SIS' shareholders, and paying a substantial amount of personal expenses from SIS' accounts. Brown Dec., Ex. 8, ¶¶4, 28, 48, 91-96. The Complaint further alleges that: 1) Pike and Salvagio own and control the captive reinsurer, Pacific Re, Inc. and Pac Re 5-AT; 2) Pacific Re, Inc. and Pac Re 5-AT have no disinterested management or control; 3) Pacific Re, Inc. and Pac Re 5-AT have no employees; and 4) Pike and Salvagio have caused SIS, Pacific Re, Inc. and Pac Re 5-AT to be undercapitalized, have threatened to drain Pac Re 5-AT of its remaining funds, and have stripped SIS of its assets in order to pay personal expenses and distributions to its owners. Brown Dec.,

Ex. 8, ¶¶15, 28, 33, 34, 44, 47, 49, 91-96. Also stated in the Complaint is that Pike and Salvagio have used their other corporations – Preferred Global, Inc., David E. Pike, Inc. and Salvagio, Inc. as a means to shield themselves from personal liability, but have admitted to Plaintiffs that Global, Inc. was a "shell corporation with no assets." Brown Dec., Ex. 8 ¶¶4(c)-(i), 49. Thus, the above-mentioned allegations make clear that Pike and Salvagio exercise such domination and control over the corporate Defendants Pacific Re, Inc. and Pac Re 5-AT that these entities are mere "alter egos" of Pike and Salvagio.

In satisfying the second prong of the piercing the corporate veil inquiry, Plaintiffs have alleged Pike's and Salvagio's abuse of the corporate form has caused Plaintiffs' harm. Specifically, the Complaint states that by undercapitalizing and subsequently draining SIS, Pacific Re, Inc. and Pac Re 5-AT of its funds, Pike and Salvagio have rendered SIS, Pacific Re, Inc. and Pac Re 5-AT unable to discharge their financial obligations to Plaintiffs.  Brown Dec., Ex. 8 ¶¶28, 35, 36, 44, 47, 95 ("Pike and Salvagio intentionally conduct business through undercapitalized shells to avoid liability and frustrate creditors").  For example, the Complaint states that "[t]o further frustrate TIC's ability to receive the benefit of both its reinsurance by Pac Re and its Protected Cell, Pac Re 5-AT, whose liabilities were to be funded by SIS, and the Hold Harmless and Indemnity Agreement provided by SIS, Pike and Salvagio stripped SIS of the financial ability to meets its obligations to TIC" and that Defendants "have refused and repudiated their obligation to collateralize the Trust Funds and have similarly repudiated any obligation to pay the Actual TPA costs paid by Plaintiffs…." Brown Dec., Ex. 8. ¶¶28, 36.  The Complaint further provides that Pike and Salvagio have caused Pacific Re, Inc. and Pac Re 5-AT to pursue a strategy to avoid, delay and hinder payment to Plaintiffs and to the Trusts that were supposed to be funded for Plaintiffs' benefits. *See* Brown Dec., Ex. 8 ¶44.  Moreover, the

11

Complaint alleges it is through the corporate Defendants, and Pacific Re, Inc. and Pac Re 5-AT, that Pike and Salvagio have shielded themselves from personal liability and attempted to insulate SIS from liability by shifting SIS' obligations to Plaintiffs for their losses under the Reinsurance Program to its inadequately funded captive reinsurer and its protected cell. *See* Brown Dec., Ex. 8. ¶¶4, 27-29; *see also Accordia Northeast, Inc.*, 205 F. Supp. 2d at 177, 181-182 (allegations of piercing the corporate veil were sufficient to survive motion to dismiss where defendant companies were required to reimburse plaintiff for any premium moneys paid by plaintiff but the owner of the defendant companies left the companies undercapitalized and with no assets). *Cf.* Brown Dec., Ex. 8. ¶¶34, 48, 94, and 96.

Based on the foregoing, Plaintiffs have sufficiently pled a cause of action for piercing the corporate veil and Defendants' Motion to Dismiss must be denied.

II. Plaintiffs Have Sufficiently Pled Claims for Claim Sounding in Fraud

A.   Plaintiffs Have Pled A Claim for Fraudulent Conveyance

Pursuant to New York's Debtor and Creditor law governing actual or intentional fraudulent conveyances,"[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276; *see Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 306 (S.D.N.Y. 2005)(complaint sufficiently pled actual fraudulent conveyance claim where it identified parties to transfer, approximate date of transfer and interest transferred).  "Case law recognizes that 'fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act.'" *Amusement Industry, Inc. v. Midland Avenue Associates*, 820 F. Supp. 2d 510, 530 (S.D.N.Y. 2011) *quoting Marine Midland Bank v.*

*Murkoff*, 120 A.D.2d 122, 128, 508 N.Y.S.2d 17 (2d Dep't 1986); *see also Wexner v. First*

*Manhattan Co.,* 902 F.2d 169, 177 (2d Cir. 1990) (*"*[d]espite the generally rigid requirement that

fraud be pleaded with particularity, allegations may be based on information and belief when

facts are peculiarly within the opposing party's knowledge.  Thus, a party may rely upon "badges

of fraud" to establish an inference of fraudulent intent." *Id. internal quotations omitted.*   These

badges of fraud include: "(1) a close relationship between the parties to the transaction, (2) a

secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4)

the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of

dummies or fictitious parties, and (6) retention of control of the property by the transferor after

the conveyance." *SungChang Interfashion Co., Ltd*, 2013 WL 5366373, at 8*; see also*

*Amusement Industry, Inc.*, 820 F. Supp. 2d at 531(holding that it is not necessary to plead the

"badges of fraud" with particularity.)

    For example, in *Amusement Industry, Inc.*, this Court determined that the complaint

adequately alleged a claim for intentional fraudulent conveyance since the complaint was "clear

as to the actual transfers it [was] attacking" and presented the "badges of fraud" in that it

contained allegations that the parties had a close relationship, the transfers were not performed in

the usual course of business and that there was lack of consideration for the transfers. *Id.* at 531-

532.

    Plaintiffs have adequately pled a claim for actual fraudulent conveyance as against Pike,

Salvagio and John Doe Defendants.  First, the Complaint provides a detailed account of certain

transfers.  For example, the Complaint states that as of September 30, 2011, SIS distributed

$665,325.85 to its shareholders, which are Pike and Salvagio, and paid agency commissions in

the amount of $1,095,409.87 to agencies affiliated or owned by SIS or its shareholders, Pike and

13

Salvagio. Brown Dec., Ex. 8 ¶28. The Complaint further alleges that PCIC paid SIS $7,118,577 in 2013 and $4,044,605 to Pacific Re, Inc., all which are owned and controlled by Pike and Salvagio and that SIS, Pike, Salvagio and Taft have also represented that they denuded Pac Re 5-AT of its assets with the exception of $600,000 (and money held in trust, now less than $1 million).  Brown Dec, Ex. 8 ¶114.

The Complaint also presents the "badges of fraud" necessary to adequately plead the "actual intent" element of an intentional fraudulent conveyance claim.  The Complaint establishes: 1) that a close relationship existed between the parties in that Pike and Salvagio own and control SIS, Pike, Inc., Preferred Global Holdings, Inc., Salman Insurance Services, Inc., and Pacific Re, Inc. and Pac Re 5-AT, which were the entities responsible for making the transfers; 2) the transfers were made outside the ordinary course of business, *i.e.,* at a time when SIS had a multimillion dollar obligation to Plaintiffs; and 3) the transfers were made without adequate consideration.  (Brown Dec., Ex. 8 ¶¶4(a),(c), 12, 113.)  Another "badge of fraud" is the refusal of SIS, Pacific Re, Inc., and Pac Re 5-AT to make their books and records available for inspection as their contracts required.  Brown Dec., Ex. 8 ¶¶37-38. The Complaint further makes clear that Pike and Salvagio knew of Plaintiffs' claims to be reimbursed for the payment of TPA fees and their losses since Pike and Salvagio were responsible for negotiating and eventually obligating their owned corporate Defendants, SIS, Pacific Re, Inc. and Pac Re 5-AT to reimburse Plaintiffs for their losses and actual TPA fees under the SIS Reinsurance Program and because Plaintiffs demanded that Defendants reimburse them for their losses and actual TPA fees. Brown Dec., Ex. 8 ¶¶ 29, 30, 35.

Therefore, the Complaint sufficiently states a claim for actual fraudulent conveyance.

14

As Defendants' Motion to Dismiss the fraud claims are based upon Plaintiffs' alleged failure to plead them with the specificity required under Rule 9(b), the Motion to Dismiss cannot be viewed as seeking to dismiss Plaintiffs' included claim for constructive fraudulent conveyance, which is not subject to 9(b)'s heightened pleading requirement. *See Smith v. Pali Capital, Inc.* 2006 WL 3240578, at 4 (S.D.N.Y. 2006)("[b]ecause intent to defraud is not an element of constructive fraudulent conveyance, such claims, as opposed to claims of actual fraud, are not subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rather, pleading fraudulent conveyance [under § 273] requires only a short and plain statement of the claim showing that the pleader is entitled."). However, Plaintiffs have also adequately pled a claim for constructive fraudulent conveyance with particularity as described above.

    B.   <u>Plaintiffs Have Adequately Pled A Claim for Fraudulent Inducement</u>

Plaintiffs have sufficiently pled a claim for fraudulent inducement. *See Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 617-618 (S.D.N.Y 2003)(complaint properly pled fraudulent inducement where it identified the misrepresentations, alleged a state of mind generally and identified the motive and opportunity to commit fraud). Plaintiffs have alleged the following misrepresentations were made by Pike, Salvagio, SIS and Taft in 2010: 1) the SIS Reinsurance Program would be well-funded so that Plaintiffs would have no or minimal risk; 2) the Reinsurance Program would generate sufficient premiums to cover costs, expenses, claims and liabilities; 3) to the extent the premiums were insufficient, Plaintiffs would be protected by Pacific Re, Inc. and Pac Re 5-AT and by SIS' indemnity obligation; 4) SIS, Pacific Re, Inc. and Pac Re 5-AT would have the financial ability to reinsure Plaintiffs; 5) the true cost, expense and loss experience would be similar to that of the PCIC program, which they represented was very

low; and 6) SIS would abide by the underwriting guidelines as provided for in the General
Agency Agreements.  Brown Dec., Ex. 8. ¶¶, 21(a),(i), 98-100.

The Complaint also provides that Pike, Salvagio and Taft knew that these statements
were false because: 1) PCIC was materially under reserved from 2009 through 2012; 2) SIS did
not have enough capital to properly fund either its hold harmless/indemnity obligation to TIC or
its funding obligation to Pac Re 5-AT; and 3) Pacific Re, Inc. and Pac Re 5-AT were not
properly funded so that they could fulfill their obligations to Plaintiffs under the SIS Reinsurance
Program.  Brown Dec., Ex. 8. ¶¶ 21, 101-105; *see also* Fed. Rule 9(b): ("[i]n all averments of
fraud or mistake, the circumstances constituting fraud or mistake shall be stated with
particularity. <u>Malice, intent, knowledge, and other condition of mind of a person may be averred
generally</u>.")(emphasis added).

Lastly, the Complaint states that the "motive" for these misrepresentations was to induce
Plaintiffs to enter into the SIS Reinsurance Program, that Plaintiffs relied upon these
misrepresentations and entered into and assumed USIC's obligations under the Reinsurance
Program and as a result, Plaintiffs have been damaged.  *See* Brown Dec., Ex. 8. ¶¶ 22, 106-108.

## <u>POINT II</u>

### <u>THE INSTANT ACTION IS NOT DUPLICATIVE</u>
### <u>OF THE PRIOR ACTION PENDING IN MONTANA</u>

I.    Defendants' Motion to Dismiss The Instant Action as Duplicative of the Prior
      Pending Montana Action Or In the Alternative To Stay Or Transfer the Instant Action
      Must Be Denied

The Instant Action presents neither identical parties nor identical issues nor identical, or
even similar, claims for relief to that of the Montana Action that would require this Court to
dismiss the Instant Action or in the alternative, stay or transfer it.  In their Motion to Dismiss,
Defendants misrepresent the nature of both the Instant Action and the Montana Action, and

assert that this is the "third proceeding" related to the facts and circumstances set forth in the Complaint in this action. That statement is simply false, and Defendants' faulty recitation of the procedural history of the Instant Action and the Montana Action must be disregarded by the Court.

To correct the record, and to clarify Defendants' misstatement, Plaintiffs' "first" action was a demand for arbitration against Pacific Re, Inc. and Pac Re 5-AT pursuant to the terms of the Reinsurance Agreement attached as Exhibit 1 to the Complaint, requiring Plaintiffs, Pacific Re, Inc., and Pac Re 5-AT to arbitrate any disputes stemming from the Reinsurance Agreement; therefore, when Pac Re 5-AT and Pacific Re, Inc. breached the terms of the Reinsurance Agreement, Plaintiffs properly demanded arbitration. Brown Dec., Ex. 8, Ex. 1, Art. 22. In response to the demand, Pac Re 5-AT then commenced the Montana Action, notwithstanding that under Montana statutes, which provide that creation of a protected cell (Pac Re 5-AT) "does not create a legal person separate from the protected cell captive insurance company [Pacific Re, Inc.] unless the protected cell is an incorporated cell" (MCA §33:28:30(2)(c)), and the Montana statues state clearly that a "protected cell" is nothing more than a "separate account established by a protected cell captive insurance company…." MCA §33:28:101(26), *see also* Brown Dec., Ex. 6. Nevertheless, Pac Re 5-AT commenced the Montana Action, the so-called "second" action seeking a declaration that Pacific Re, Inc. was not a proper party to the arbitration. Brown Dec. at Ex. 6. (Plaintiff answered and counterclaimed seeking a declaration that Pacific Re, Inc. was a proper party to the arbitration. Brown Dec. at Ex. 7.) Consequently, Plaintiffs and the arbitration Respondents agreed to stay the arbitration pending the outcome of the Montana Action. The sole issues before the Montana Court are whether Pac Re 5-AT has the legal capacity to sue and be sued under Montana law and whether Pacific Re, Inc., itself, is a party to

the Reinsurance Agreement and is obligated to participate in the arbitration.  Brown Dec., Exs. 6,

7. (Defendants also falsely state that "plaintiffs also sought affirmative declaratory judgments

that…Pacific Re, Inc. account for assets it attributes to Pac Re 5-AT,…"  Defendants'

Memorandum of Law at p.5.  In support of this misstatement, Defendants cite to their Exhibit D,

¶4, which is not Plaintiffs' answer and counterclaim filed in the Montana Action, but instead is

an early letter from Montana's Commissioner of Securities and Insurance to The Taft Companies

regarding the proposed creation of Pac Re 5-AT.  A review of Exhibit D shows that not only

does it have nothing to do with the premise it is cited for, but it further corroborates the claims

against SIS, Pike, and Salvagio asserted by Plaintiffs in the Instant Action.  For example, Exhibit

D demonstrates that The Taft Companies represented to Montana's Commissioner of Securities

and Insurance that "cell number 5 will be owned by Safebuilt Insurance Services, Inc. (SIS)"

(Ex. D); however, the Participation Agreement was neither executed by SIS nor was a signature

line ever even provided for SIS's signature.)

The instant action, or the alleged "third" action, was commenced by Plaintiffs against the

Defendants – naming as defendants an entirely different set of parties.  As stated, this action was

commenced only after Plaintiffs received the Complaint in the Montana Action, which included

a "Participation Agreement," a copy of which is attached to the Brown Dec. at Exhibit 3, which

asserts that the "Participant" was SIS, which was obligated to fund Pac Re 5-AT's liabilities.

Incredibly, the Participation Agreement is neither executed by SIS nor anyone executing it on

behalf of SIS.  Brown Dec. Ex. 3, at 9.  The failure of SIS to execute the Participation Agreement

coupled with SIS's earlier refusal to allow Plaintiffs to review its books and records as required

by the two General Agency Agreements between SIS and TIC, and the report of the Montana

Commissioner concerning PCIC and Pacific Re, Inc. is what gave rise to the instant action.

In dismissing a second suit as duplicative, "[a] court must be careful. . . not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000). "The true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." *Id. quoting United States v. The Haytian Republic*, 154 U.S. 118 (1894); *see also 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994)(a suit which is first filed will have priority over the subsequently filed action when both actions involve the same parties and same issues). Thus, dismissal of a second action is not appropriate where the two suits present neither identical parties nor identical claims. *See Northern Assurance Company of American v. Square D Company,* 201 F.3d 84, 88-90 (2d Cir. 2000) (the Second Circuit held that second suit filed by plaintiff was neither duplicative nor subject to dismissal since the second suit involved an independent party and independent claims; *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) (the Court held that the second suit was not duplicative of the first since "neither the parties nor the issues" were identical to those in the first suit.)

Like the above-referenced cases, the facts of the instant action present neither identical issues nor identical parties as those in the Montana Action, nor do they present identical claims. The parties involved in the Montana Action are Pac Re 5-AT, as plaintiff, Pacific Re, Inc., as counter-claim defendant and AmTrust North America, Inc. and Technology Insurance Company, Inc. as defendants and counterclaim plaintiffs. Brown Dec., Exs. 6, 7. SIS, Pike, Salvagio, Pike, Inc., Salvagio, Inc., Preferred Global and Taft are not parties to either the arbitration or the Montana Action. Brown Dec., Exs. 6, 7. The sole substantive issue before the Montana court, as

19

presented in Pac Re 5-AT's complaint is a determination by the Court as to whether or not Pac Re 5-AT is the only proper party to be named in the Demand for Arbitration. Brown Dec., Ex. 4, p. 5-6. Similarly, Plaintiffs' counterclaim in the Montana Action asks for: 1) a declaration that Pac Re 5-AT is not an "incorporated cell"; 2) that Pacific Re, Inc. is properly a party to the New York Arbitration; and 3) for costs and attorneys' fees. Brown Dec. Ex. 7, at p. 7. Simply stated, none of the Defendants in this action are parties to the Montana Action, and the relief sought in the Montana Action by both the Plaintiffs and Defendants/Counterclaim Plaintiffs there are entirely different than the relief sought in this action. The two actions are simply vastly different, and certainly not identical.

Further, the instant Complaint asserts twelve causes of action based upon breach and repudiation of contract, breach of contract and principal liability, negligent misrepresentation, breach of fiduciary duty, veil piercing and alter ego, fraudulent inducement, fraudulent conveyance, conversion, aiding and abetting, negligence and declaratory judgment (declaring the continued liability of the Defendants for amounts to become due as the claim experience of the SIS Reinsurance Program continues to deteriorate). Brown Dec., Ex. 8 ¶¶18-35. These claims stem generally from the failure of SIS (as dictated by Pike and Salvagio) to honor SIS's obligations: 1) to hold TIC harmless and indemnify TIC; 2) to fund Pac Re 5-AT's reinsurance obligations; and 3) its failure to allow Plaintiffs to inspect its books and records, as it was obligated to do under the General Agency Agreement; and 4) Pike, Salvagio, and Taft's misrepresentations to Plaintiffs when soliciting them to participate in the SIS Reinsurance Program and from Defendants' wrongful conduct both during Plaintiffs' participation in the SIS Reinsurance Program and after its termination, which has caused Plaintiffs to suffer significant monetary loss and expose themselves to even greater losses. Brown Dec., Ex. 8.

20

Moreover, resolution of the Montana Action does not dispose of the issues presented before this Court. Rather, the conclusion of the Montana Action will result simply in a declaration by the Court either requiring Pacific Re, Inc. to participate in the Arbitration or not. However, here, the Court is being asked to determine, whether Plaintiffs are entitled to monetary relief because Defendants Pike and Salvagio, assisted by Taft, caused SIS to be undercapitalized for its obligations by funding distributions to Pike and Salvagio and paying for their personal expenses instead of funding its "obligations" to TIC and to Pac Re 5-AT, their fraudulent statements to Plaintiffs to induce them to participate in the SIS Reinsurance Program, their fraudulently conveying assets out of SIS to themselves, their breach of fiduciary duty to Plaintiffs in the underwriting of the SIS Reinsurance Program, and negligence in the management of the SIS Reinsurance Program. Brown Dec., Ex. 8. The Court is further asked to: 1) enforce the hold harmless and indemnity obligations assumed by the undercapitalized SIS (controlled by Pike and Salvagio); and 2) permit Plaintiffs to pierce the corporate veil since Defendants SIS, Pike, Inc., Salvagio, Inc., Preferred Global, Pacific Re, Inc., and Pac Re 5-AT are merely alter egos of Pike and Salvagio. Brown Dec., Ex. 8, ¶¶66-72, 91-96. In the Instant Action, Plaintiffs are requesting monetary damages in the amount of $1.1 million for unreimbursed TPA fees, and $ 4.4 million, and perhaps more as losses develop, for the losses both paid and incurred as a result of their participation in the SIS Reinsurance Program and Defendants' wrongful conduct (as of the March 2015 drawdown the Trusts will have been reduced from $1.8 million to less than $300,000—in total). Brown Dec., ¶ 10; Ex. 8, p. 36-37.

As set forth in *Northern Assur. Co.*, "the scarcity of judicial resources does not justify denying a party the opportunity to litigate a claim" and a second suit against an independent party should not be dismissed as duplicative. 201 F.3d at 90.

21

Moreover, Defendants cannot rely upon the cases cited in their Motion to Dismiss to support their request that this Court dismiss, stay or transfer the Instant Action since in those cases it was determined that the two suits were in fact duplicative.  Accordingly, those cases are inapposite.  For example, in *800-Flowers, Inc.*, the Court dismissed the second action pending in the Southern District of New York since an action between the same parties over the same issue- use of a 1-800 number to order flowers- was pending in a district court in Florida. 860 F. Supp. at 131.  Similarly, in *Regions Bank v. Wieder v. Mastroianni, P.C.*, the court stayed the second action where the issue in the second action was "precisely the issue" being litigated in the first action – the liability of Provident Bank to Regions Bank. 170 F. Supp. 2d 436, 440 (S.D.N.Y. 2001); *see also Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 422-423 (2d. Cir. 1965)(both cases involved the same parties and the same issue involving trademark and patent infringement); *William Gluckin & Co v. International Playtex Corp.*, 407 F.2d 177, 178 (enjoining prosecution of second suit where both first and second suit presented the same issue – the patent of a brassiere.); *Everest Capital Ltd. v. Everest Funds Management, L.L.C* 178 F. Supp. 2d 459, 462 (S.D.N.Y. 2002)(transferring suit to Nebraska since  Nebraska was the more appropriate venue and both actions involved the same parties and same issue- use of the term "Everest.")

Based on the foregoing, Defendants' request that the Court either dismiss, stay or transfer the Instant Action should be denied.

## CONCLUSION

Therefore, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: Garden City, New York
      March 16, 2014

Respectfully submitted,

**OHRENSTEIN & BROWN, LLP**

By: _____
          Michael D. Brown
          Matthew Bryant
1305 Franklin Ave. Suite 300
Garden City, New York 11530
Telephone: (516) 873-6334
*Attorneys for Plaintiffs*

TO:    Steven A. Stadtmauer, Esq.
       **HARRIS BEACH PLLC**
       100 Wall Street, 23rd Floor
       New York, New York 10005
       Telephone:  (212) 687-0659
       sstadtmauer@harrisbeach.com
       *Attorneys for Defendants*