OHRENSTEIN & BROWN, LLP
*Attorneys for Plaintiffs*
*AmTrust North America, Inc. and*
*Technology Insurance Company*
1305 Franklin Ave. Suite 300
Garden City, New York 11530
Telephone: (516) 873-6334
Fax: (516) 873-8912
Michael D. Brown, Esq. (Michael.Brown@oandb.com)
Matthew Bryant, Esq. (Matthew.Bryant@oandb.com)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
========================================X

AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.           Case No. 14-cv-9494

                              Plaintiffs,

        -against-                            **SECOND**
                                             **AMENDED**
                                             **COMPLAINT**
SAFEBUILT INSURANCE SERVICES, INC.
a/k/a SAFEBUILT WHOLESALE INSURANCE
SERVICES, INC., THE TAFT COMPANIES,
LLC, PREFERRED GLOBAL HOLDINGS, INC.,        **Trial By Jury Requested**
DAVID E. PIKE, DAVID E. PIKE, INC., PHILIP
SALVAGIO, SALMEN INSURANCE SERVICES,
INC. f/k/a SALVAGIO, INC., CARL M. SAVOIA,
JOHN DOE CORPORATIONS 1-5, and
JOHN DOES 1-5,
                              Defendants.
========================================X

        Plaintiffs AmTrust North America, Inc. ("AmTrust") and Technology Insurance

Company, Inc. ("TIC") (collectively "Plaintiffs"), by and through their attorneys, Ohrenstein &

Brown, LLP, herein complain of defendants Safebuilt Insurance Services, Inc. a/k/a Safebuilt

Wholesale Insurance Services, Inc. (collectively, "SIS"), The Taft Companies, LLC ("Taft"),

Preferred Global Holdings, Inc. ("Preferred Global"), David E. Pike ("Pike"), David E. Pike, Inc.

("Pike, Inc."), Phillip Salvagio ("Salvagio"), Salmen Insurance Services, Inc. f/k/a Salvagio, Inc.

(collectively, "Salvagio, Inc."), Carl M. Savoia ("Savoia"), John Doe Corporations 1-5, and John

Does 1-5 ("Defendants"), as follows:

## INTRODUCTION

1.      This is an action both for a declaratory judgment pursuant to 28 USC §2201 and

for money damages arising out of an insurance program created, underwritten and managed by

SIS, and a reinsurer which was to reinsure TIC.  Both SIS and the reinsurer are ultimately

principally owned and controlled by Defendants Pike, Salvagio and Savoia.

2.      In essence, with the assistance of their reinsurance manager and consultant,

Defendant Taft, Pike, Salvagio and Savoia operated an insurance program through which they

received substantial distributions generated by commission and fee income from their controlled

insurance broker, SIS, which acted as "General Agent" pursuant to contracts with Plaintiffs and a

commercial insurer.  In addition, Pike and Salvagio also sought to earn an insurance

underwriting profit through a captive reinsurance company, the "protected cell reinsurance

company" Pacific Re, Inc. ("Pacific Re"), which was also ultimately owned and controlled by

Pike and Salvagio.

3.      Prior to October 1, 2010, Pike, Salvagio and Savoia arranged for SIS to receive

commission income from a "captive" Risk Retention Group insurer, Preferred Contractors

Insurance Company Risk Retention Group ("PCIC"), which was controlled by Pike and Salvagio

and, on information and belief, managed by Taft.  PCIC was reinsured by Pacific Re, which was

"owned" by Defendant Preferred Global, a company also ultimately principally owned and

controlled by Pike and Salvagio, and for which Savoia serves as an officer of Pacific Re.

4.      Some time prior to October 2010, Pike, Salvagio and Savoia desired to expand

their existing insurance program insured by PCIC, for which their owned and controlled broker,

2

SIS, produced business.  Accordingly, Pike, Salvagio and Savoia, acting through SIS, entered into an agreement with a "commercial insurer," United Specialty Insurance Company ("USIC"), whose policies they believed would be attractive to insureds.

5.       To secure the participation of USIC as the "issuing" commercial insurer for Pike's, Salvagio's and Savoia's expanded insurance program, the "SIS Reinsurance Program," they secured Plaintiffs' participation as a "front" for their owned and controlled reinsurer, Pacific Re, which was to ultimately assume the substantive insurance risk of the Program.  As documented in two "General Agency Agreements," executed between USIC, SIS and TIC, and the "SIS Captive Reinsurance Agreement," executed by AmTrust on behalf of TIC and by Pacific Re on behalf of Pac Re 5-AT, allegedly an unincorporated protected cell of Pacific Re, TIC reinsured the risk insured by USIC, and then reinsured that risk to Pacific Re, and its unincorporated protected cell, Pac Re 5-AT, pursuant to the terms of the SIS Captive Reinsurance Agreement.

6.       As described below, funding for the exposure to insurance risk "fronted" by TIC and reinsured to Pacific Re and its cell was to be assured by:  1) Pacific Re's agreement to fully collateralize the reinsurance obligations owed to TIC, as set forth in the SIS Captive Reinsurance Agreement and two Trust Agreements to which TIC was the beneficiary; and 2) by SIS separately agreeing to hold harmless and indemnify TIC against all "liabilities, losses, claims, damages, costs or expenses (including attorneys' fees and expenses)" that arose from or were related to the two General Agency Agreements executed by USIC, TIC and SIS.

7.       Further, both General Agency Agreements required that in underwriting and accepting risks to be fronted by TIC, SIS was to follow USIC's "Underwriting Guidelines" and observe other specified procedures in order to reduce the insurance risk of the "SIS Reinsurance

Program." (The two General Agency Agreements are identical with regard to all relevant terms and conditions. The principle difference between the two General Agency Agreements was the geographical areas covered by the two Agreements. Accordingly, attached at Exhibit 1 is a copy of one such Agreement, the "California General Agency Agreement" ("General Agency Agreement"), and attached at Exhibit 2 is a copy of the "SIS Captive Reinsurance Agreement.")

8.      The SIS Captive Reinsurance Agreement provides that it is governed by the substantive law of New York. That law provides that where a corporation, such as Pacific Re, executes an enforceable agreement, such as the SIS Captive Reinsurance Agreement, on behalf of a legally "non-existent" entity, such as the unincorporated Pac Re 5-AT, the corporation, here Pacific Re, is legally responsible for the obligations and liabilities of the legally "non-existent" entity, here Pac Re 5-AT.

9.      While Pike, Salvagio and Savoia caused SIS to accept substantial insurance risk into the SIS Reinsurance Program, neither Pike, Salvagio, nor Savoia, nor anyone else: adequately capitalized their captive reinsurer, Pacific Re; its unincorporated "Protected Cell," Pac Re 5-AT, preventing the reinsurer and its unincorporated cell from discharging their reinsurance obligations to Plaintiffs; and similarly failed to adequately capitalize SIS, while taking from SIS substantial distributions and, on information and belief, using SIS to pay substantial personal expenses of Pike, Salvagio and Savoia, thus preventing SIS from honoring its hold harmless and indemnity obligations to TIC.

## THE PARTIES, JURISDICTION, AND VENUE

10.     Plaintiff:

      a.     AmTrust is a Delaware corporation with its principal place of business in this District; and

      b.     TIC, a New Hampshire insurance company, an affiliate of AmTrust, and maintains its principal place of business in this District.

11.    Defendants in this matter are:

      a.     Safebuilt Insurance Services, Inc. a/k/a Safebuilt Wholesale Insurance Services, Inc. ("SIS") is a California corporation with a principal place of business at 3250 Gray Hawk Court, Carlsbad, California; upon information and belief, David E. Pike, Phillip Salvagio, and Carl Savoia directly or indirectly own a majority of SIS shares and control the operation of SIS;

      b.     Taft is a Maryland limited liability company with a principal place of business at 1620 Providence Road, Towson, Maryland.  On information and belief, Taft serves as the paid captive manager of Pacific Re, Inc. and its alleged unincorporated Protected Cell, Pac Re 5-AT, and serves as the "manager" of PCIC.  Pacific Re is ultimately principally owned and controlled by Pike and Salvagio;

      c.     Preferred Global, Pike, Inc., and Salvagio, Inc., upon information and belief, are corporate entities formed for the purpose of shielding defendants Pike and Salvagio from personal liability through which Pike and Salvagio conduct their business by controlling and dominating these and other entities and their interests as set forth below;

      d.     Preferred Global is a Montana corporation which, upon information and belief, is the direct "record owner" of non-party Pacific Re, a Protected Cell Captive Insurance Company formed under the laws of the State of

Montana, which SIS, Pike, and Salvagio hold out as being a wholly-owned

"SIS captive"; Preferred Global's registered agent for service of process is

Moultan Bellingham PC, Suite 1910, Crowne Plaza, PO Box 2559,

Billings, Montana.

e.   Pike, Inc. is a Nevada corporation with a registered address at 3064 Silver

Sage Dr., Suite 0-8, Carson City, Nevada, through which Pike conducts

his various business in order to avoid personal liability;

f.   Salvagio, Inc. is a California corporation with a registered address at 6170

Innovation Way, Carlsbad, California through which Salvagio conducts

his various business in order to avoid personal liability;

g.   Upon information and belief, Pike, Inc. and Salvagio, Inc. are the principal

owners of Preferred Global;

h.   David E. Pike is a natural person residing at 3910 Vista Way, Oceanside,

California, and upon information and belief holds the positions of

President, and director of SIS, President of Pacific Re, Inc., and is the

President, Treasurer, and Secretary of Pike, Inc.; Pike, Inc. and David E.

Pike will be collectively referred to as "Pike";

i.   Phillip Salvagio is a natural person residing at 6817 Vianda Ct., Carlsbad,

California; upon information and belief, Salvagio holds the positions of

Vice President and director in SIS, Vice President of Pacific Re, Inc., and

is the President of Salvagio, Inc.; Salvagio Inc. and Phillip Salvagio will

be collectively referred to as "Salvagio";

6

j.  Carl M. Savoia is a natural person residing in California with a business address listed as 6630 Flanders Drive, San Diego, California 92121; and

k.  John Doe Corps. 1-5 and John Does 1-5 ("John Doe Defendants") are place holders for unknown foreign entities and individuals who either benefited from or received assets from Pacific Re and/or SIS without rendering fair consideration, with requisite authority, or with the intent to delay, hinder, or frustrate creditors.

12.  This Court has diversity jurisdiction over this dispute which seeks in excess of $75,000 under 28 USC § 1332; venue is proper under 28 USC § 1391(b)(2).

## BACKGROUND

13.  AmTrust generally provides insurance and financial services through affiliated licensed insurers.

14.  TIC is one such affiliated licensed insurer through which AmTrust operates to offer and sell insurance products to insureds or insurers located in many states of the United States.

15.  SIS holds itself out as a wholesale insurance broker, accepting the role as "General Agent" in the two General Agency Agreements, and, as relevant here, creates and offers specialized insurance programs to the construction industry on a multi-state basis.

16.  SIS is licensed in the State of California as an insurance agent or broker.

17.  Upon information and belief, in the ordinary course of its business SIS offers broking and wholesale broking services, and in some cases also provides special services to its clients and business affiliates and/or co-venturers such as risk inspections, insurance

7

underwriting, risk management, claims handling, claims adjustment, as well as general and managing agent services.

18.     Since approximately 2006, SIS has offered a general liability insurance program for small and mid-sized construction contractors through PCIC.

19.     PCIC is a statutory risk retention group domiciled in the State of Montana in which defendants Pike and Salvagio hold positions as officers, directors, executives, and managers in order to control, manage, and dominate PCIC, which is owned by its policyholders.

20.     In pertinent part, PCIC acts as a primary insurer, accepting premium for providing primary insurance coverage to its insureds, who by statute "own" PCIC.

21.     While Pike and Salvagio ultimately control PCIC, they have delegated broad authority to Taft, including the negotiation of PCIC's reinsurance.

22.     Upon information and belief, neither Pacific Re nor its unincorporated cell, Pac Re 5-AT have any employees, and in the ordinary course of its business do not enjoy disinterested or independent management or control, and while Pike and Salvagio ultimately control Pacific Re and its cells, Pike and Salvagio have delegated broad authority to Taft, including the negotiation of the terms of the reinsurance of Plaintiffs in the SIS Reinsurance Program.

23.     In or about 2009, Pacific Re, originally organized as a traditional captive reinsurer, was converted by Pike and Salvagio into a Protected Cell captive reinsurer.

24.     Effective October 1, 2010 Pike, Salvagio and Savoia, through the SIS and Pacific Re vehicles, contracted with TIC as set forth in the General Agency Agreements and the SIS Captive Reinsurance Agreement, enabling SIS, Pike, Salvagio, Savoia and Taft to operate a contractors general liability program insured by the commercial insurer, USIC, as opposed to the

PCIC risk retention group, allowing Pike, Salvagio and Savoia to increase their commission and fee income through SIS, while Pike and Salvagio and, on information and belief, Savoia also had the benefit of underwriting profits, if any, of the SIS Reinsurance Program.  In fact, the SIS Reinsurance Program has not been profitable, and as described below, Defendants Pike, Salvagio and Savoia, aided and abetted by Taft, have used their domination of SIS, Pacific Re, and its cell, Pac Re 5-AT, to violate their respective indemnity and reinsurance obligations contractually owed to Plaintiffs, thus shifting from their owned and dominated companies the substantive insurance risk to Plaintiffs by both failing to properly capitalize Pacific Re, Pac Re 5-AT, and SIS, and by interfering with the dominated and controlled entities' decisions concerning the discharge of their obligations to Plaintiffs.

25.     Effective October 1, 2010, pursuant to the various documents described above, AmTrust agreed to participate in the SIS Reinsurance Program.  The program structure to which AmTrust agreed to participate through its TIC insurance affiliate first had non-party USIC agree, for a fee, to issue primary insurance policies to insureds whose risks were underwritten and accepted by SIS on behalf of USIC and TIC, pursuant to the two General Agency Agreements, and reinsured by TIC, which had oversight of claims handling through its authority to appoint a third-party administrator ("TPA").  TIC's exposure was then reinsured ("retroceded") to the Pike, Salvagio and Savoia owned and controlled Pacific Re and its unincorporated "Protected Cell," "Pac Re 5-AT," pursuant to the SIS Captive Reinsurance Agreement.

26.     TIC's insurance exposure was not only reinsured by Pacific Re and its unincorporated "Protected Cell," but, as previously described, TIC's exposure to risk was to be collateralized in two ways:  1) by the funding of trust accounts pursuant to Trust Agreements created for the benefit of TIC, and entered into by Pacific Re "for itself" and Pac Re 5-AT; and

2) by a full indemnity against all liability, loss, costs, fees or expenses by SIS, pursuant to the two territorially-based General Agency Agreements between USIC, TIC, and SIS.  The two Trust Agreements were executed by Pike as Pacific Re's President, and were negotiated by Taft on behalf of Pacific Re and Pac Re 5-AT.

27.     Pursuant to the previously described General Agency Agreements and the SIS Captive Reinsurance Agreement, the SIS and Pacific Re entities agreed that:

      a.    TIC's exposure to loss would be reinsured by Pacific Re and Pac Re 5-AT, which reinsurance obligation would be independently collateralized by the funding of Trusts in favor of TIC in amounts Plaintiffs, in their discretion, believed to be necessary to protect TIC against the insurance losses and expenses from claims pursuant to the policies underwritten by SIS, as set forth in the SIS Captive Reinsurance Agreement.  In fact, Defendants SIS, Pike, Salvagio, Savoia, Preferred Global, and Taft have refused to fund the Trusts as required by the SIS Captive Reinsurance Agreement.

      b.    Also pursuant to the SIS Captive Reinsurance Agreement, Pacific Re and its unincorporated cell, Pac Re 5-AT, would reimburse Plaintiffs for the full amount of fees paid to the TPA selected to manage the claims arising out of the SIS Reinsurance Program.  In fact, neither Pacific Re nor its cell, Pac Re 5-AT, have reimbursed Plaintiffs for the TPA fees, as required.

      c.    Pursuant to Article VII of the General Agency Agreements, SIS agreed to completely indemnify and hold TIC harmless for its participation in the SIS Reinsurance Program for all losses, claim payments, costs, expenses,

fees, and liabilities of any kind arising out of or in any way related to the SIS General Agency Agreements.  Not only has SIS failed to hold TIC harmless and indemnify it for the actual TPA fees incurred, but it has failed to fund Pacific Re and Pac Re 5-AT in order to allow them to honor their reinsurance obligations to Plaintiffs as set forth in a "Participation Agreement" between SIS and Pacific Re.  In fact, neither Pike nor Salvagio nor Savoia ever capitalized SIS sufficiently to fulfill these obligations, which obligations have been breached.

d.    As required by both General Agency Agreements, SIS would adhere to USIC's underwriting standards in binding coverage for the SIS Reinsurance Program.  On information and belief, SIS has failed to adhere to those standards.

e.    SIS was also required by the General Agency Agreements to thoroughly investigate the risks it was underwriting as well as actually inspecting large risks on-site.  On information and belief, substantive investigations and/or inspections were not carried out as required.

f.    SIS, in the General Agency Agreements, and Pacific Re, in the SIS Captive Reinsurance Agreement, each agreed to make their books and records available for inspection by Plaintiffs.  In fact, neither Pacific Re nor its Protected Cell, nor SIS have allowed Plaintiffs to inspect their books and records despite requests to do so by Plaintiffs.

g.    While the program was terminable at will by Plaintiffs on 90 days' prior written notice, the obligations of Pacific Re, and its cell, and SIS were to

continue through run-off of the Program, *i.e,* until the last program claim was resolved. In fact, SIS, Pacific Re, and its Protected Cell, Pac Re 5-AT, have refused to honor these contractual obligations.

28.     While not then known to Plaintiffs, to further implement the SIS Reinsurance Program, and the SIS Captive Reinsurance Agreement, SIS, Pike, Salvagio, Savoia, and Taft caused Pacific Re to enter into a Participation Agreement with SIS, which Agreement was not shown to Plaintiffs, but pursuant to which:

a.     Pacific Re created and established Pac Re 5-AT, allegedly as a Protected Cell for the SIS Reinsurance Program, and to reinsure obligations of Plaintiffs;

b.     SIS was identified as and became the beneficial owner of Pac Re 5-AT;

c.     SIS would fund any and all of Pacific Re's and Pac Re 5-AT's liabilities created by their reinsurance of Plaintiffs;

d.     Pacific Re would pay an annual management fee out of Pac Re 5-AT's funds;

e.     Pacific Re would maintain loss reserves as determined by Pacific Re in <u>its</u> discretion, notwithstanding the SIS Captive Reinsurance Agreement's requirement that the Trusts be funded to collateralize payment for losses as expected by Plaintiffs;

f.     That officers and directors of Pacific Re would be immune from all personal liability absent bad faith, gross negligence, or willful misconduct; and

g.     That there were no "third party beneficiaries" created by the Agreement.

None of these provisions was disclosed to Plaintiffs, which otherwise would have been third-party beneficiaries of the Participation Agreement.

29.     On information and belief, knowing that Plaintiffs were relying on the financial capability of SIS to capitalize or fund Pacific Re and/or Pac Re 5-AT with assets sufficient to honor the obligations created under the SIS Captive Reinsurance Agreement, Taft, as manager of Pacific Re and Pac Re 5-AT, failed to investigate SIS's capitalization to determine if it could meet its obligation to fund all of the reinsurance liabilities owed to Plaintiffs.

30.     Pike signed the Participation Agreement on behalf of Pacific Re to bind Pacific Re but, with Salvagio, Savoia and Taft, prevented SIS from executing the Agreement.  A copy of the Participation Agreement was not provided to either Plaintiff, as it contained terms that were inconsistent with the contractual provisions of the SIS Captive Reinsurance Agreement.  (A copy of the Participation Agreement is attached as Exhibit 3.)

31.     Pike, Salvagio and Savoia refused to sign the Participation Agreement on behalf of SIS even though that agreement specifically recites that it is made with SIS, as the "Participant" and beneficial owner of Pac Re 5-AT, the unincorporated Protected Cell of Pacific Re, and was presented to a United States federal court as the Participation Agreement by which SIS became the Participant, responsible for funding the reinsurance liabilities owed to Plaintiffs as set forth in the SIS Captive Reinsurance Agreement.

32.     Upon information and belief, SIS, Pike, Salvagio, Savoia, and Taft intentionally drew up, or had the Participation Agreement drawn up in this manner in an effort to render it unenforceable and to avoid the indemnification and reinsurance obligations they promised to Plaintiffs, thus depriving Plaintiffs of the benefit of the covenant of good faith and fair dealing inherent in both General Agency Agreements and the SIS Captive Reinsurance Agreement.

33.     To further frustrate TIC's ability to receive the benefit of both its reinsurance by Pacific Re and its Protected Cell, Pac Re 5-AT, whose liabilities were to be funded by SIS, and the Hold Harmless and Indemnity Agreement provided by SIS, Pike, Salvagio and Savoia stripped SIS of the financial ability to meet its obligations to TIC.  For example, as demonstrated by a "Combined Balance Sheet (Deposit Trust & Operating)," as of September 30, 2011, Pike, Salvagio and Savoia caused SIS to:

    a.     Make shareholder distributions of $665,325.85;

    b.     Pay Agency Commissions of $1,095,409.81, of which, on information and belief, several agencies were affiliates of SIS and owned or controlled by SIS's shareholders; and

    c.     Upon information and belief, had SIS pay substantial amounts for expenses that were properly the personal expenses of Pike, Salvagio and Savoia.

These payments, in addition to substantial officer salaries, are but examples of distributions which have deprived SIS of the capital with which to honor its obligations to Pacific Re and/or its Pac Re 5-AT Cell and to TIC.  On information and belief, Pike, Salvagio and Savoia have continued to take for themselves, and other SIS shareholders, cash from SIS knowing they would otherwise have been available to discharge SIS's financial obligations to Plaintiffs and the reinsurers on which Plaintiffs relied in agreeing to front liabilities of USIC for its participation in the SIS Reinsurance Program.

34.     Pike signed the SIS Captive Reinsurance Agreement for "Pacific Re on behalf of Pac Re 5-AT."

35.     Pike, on behalf of SIS, signed both General Agency Agreements, the two Quota

Share Reinsurance Agreements with USIC and TIC, pursuant to which TIC agreed to reinsure

USIC's liabilities incurred by its participation in the SIS Reinsurance Program, and signed both

Trust Agreements establishing the Trust Accounts to be funded to collateralize the reinsurance

obligations owed to Plaintiffs by Pacific Re and Pac Re 5-AT.

36.     On December 29, 2011, Plaintiffs invoked their right to terminate the Program,

effective April 1, 2012, revoking SIS' underwriting authority, agreeing subsequently at Taft's

urging on behalf of Pike, Salvagio and Savoia to extend the Program, with additional reinsurance

protection for Plaintiffs, until May 31, 2012, placing the program in run-off, and requiring

Pacific Re to pay, as contractually required, the actual TPA costs and to maintain funding of the

Trust Funds to the level of losses and expenses expected by Plaintiffs to be incurred in the SIS

Reinsurance Program.

37.     On January 31, 2014, the Commissioner of Securities and Insurance of the State

of Montana issued findings of fact and conclusions of law following an examination of PCIC,

which was reinsured to a significant degree by Pacific Re, and determined that from January 1,

2009 through December 31, 2012, a period encompassing the entire negotiation and existence of

the SIS Reinsurance Program, PCIC was materially under-reserved – by more than $12 million –

and improperly had a conflicted Audit Committee, consisting of Pike and only one outsider, for

which PCIC, under the domination and control of Pike, Salvagio and Taft, disregarded corporate

formalities such as establishing a charter for the committee.

38.     Upon information and belief, Pike, Salvagio and Savoia, assisted byTaft, similarly

control and dominate SIS, Pacific Re, and its Protected Cell, Pac Re 5-AT, respectively.

39.     Upon information and belief, SIS, Pacific Re, and its cell, Pac Re 5-AT, were and are undercapitalized for the obligations they accepted.

40.     Demand has been duly made by Plaintiffs for Pacific Re and/or Pac Re 5-AT to both reimburse Plaintiffs for the actual cost of the Program's TPA fees and to adequately fund the Trust Funds in order to provide the collateral required by the SIS Captive Reinsurance Agreement.  Plaintiffs' demands have been refused.

41.     Defendants SIS, Pike, Salvagio and Savoia have refused and repudiated their obligation to fund the liabilities of Pacific Re and its cell, Pac Re 5-AT, including the obligation to collateralize the Trust Funds and have similarly repudiated any obligation to pay the actual TPA costs paid by Plaintiffs all as required by both the SIS Captive Reinsurance Agreement and the Participation Agreement, and the Hold Harmless and Indemnity provisions of both General Agency Agreements.

42.     On September 8, 2014, following earlier requests, Plaintiffs demanded access to SIS's, Pacific Re's, and Pac Re 5-AT's books and records pursuant to the General Agency Agreements and the SIS Captive Reinsurance Agreement.

43.     At the direction of Defendants Pike, Salvagio, Savoia, and, on information and belief, in coordination with Taft, SIS, Pacific Re and Pac Re 5-AT have refused to provide access to their books and records in breach of their contractual and fiduciary obligations to Plaintiffs.

44.     On September 8, 2014, Plaintiffs demanded arbitration against Pacific Re and Pac Re 5-AT as required by the SIS Captive Reinsurance Agreement.

45.     On October 1, 2014, Pike, Salvagio, and Taft caused the unincorporated non-existing entity Pac Re 5-AT to file a declaratory judgment action in the U.S. District Court in

Montana to enjoin Plaintiffs from prosecuting the New York Arbitration while seeking a declaration that Pacific Re is not a proper party to the Arbitration, despite its liability under New York law for the obligations of the "non-existent" entity, Pac Re 5-AT, and the fact that Pacific Re entered into the Trust Agreements in favor of TIC "for itself" as well as on behalf of Pac Re 5-AT.

46.     Further, Pacific Re, while having the opportunity to do so, never incorporated Pac Re 5-AT as an independent entity.

47.     As a result, Pacific Re's "Protected Cell," Pac Re 5-AT, has no independent legal existence separate from Pacific Re, also rendering its request for relief from the U.S. District Court in Montana without basis in law or fact.

48.     Upon information and belief, Pike, Salvagio, Savoia, and Taft using the undercapitalized SIS, caused Pacific Re and its "Protected Cell," Pac Re 5-AT, to pursue a strategy to avoid, delay, and hinder payment of the financial obligations owed to Plaintiffs pursuant to the SIS Captive Reinsurance Agreement, and the indemnity given to TIC by SIS in the two General Agency Agreements.

49.     Upon information and belief, Pike, Salvagio and Savoia have maintained insufficient capital in SIS to allow it to honor its funding obligations to Pac Re 5-AT pursuant to the Participation Agreement, as Taft, as the manager should have known.

50.     In order to avoid the obligations undertaken by SIS, Pike, Salvagio and Savoia, and on information and belief, Taft, have revoked the authority of Pacific Re and its Protected Cell, Pac Re 5-AT, from further participation in the Arbitration, further delaying and preventing the discharge of their financial obligations to Plaintiffs, while, on information and belief, Pike,

Salvagio, and various John Doe and/or John Doe, Inc. Defendants continue to distribute SIS's cash assets to themselves, depriving SIS of needed capital.

51.     Further breaching their respective duties and obligations to Plaintiffs, on October 17, 2014, Pike, Salvagio, and a principal of Taft informed Plaintiffs that there remained $600,000 of Pac Re 5-AT's assets, over and above what was left in the rapidly depleting Trusts, but stated their refusal to use those assets as required by the SIS Captive Reinsurance Agreement, including the obligation to pay for the actual fees of the Program's TPA, which had previously been paid by TIC. Instead, the Taft representative, with the acquiescence of Pike and Salvagio, and with authority from them, stated that unless Plaintiffs accepted what was then remaining in the Trust accounts plus the $600,000 of Pac Re 5-AT's assets as a discharge of all obligations owed to Plaintiffs, they would "drain" the remaining Pac Re 5-AT funds to defend the Arbitration.

52.     In a wrongful effort to save SIS from insolvency, in which case Pike, Salvagio and Savoia: could no longer take distributions for themselves from SIS; could no longer use SIS to pay their personal expenses; and could no longer generate commission and fee income through SIS, Pike, Salvagio and Savoia; on information and belief with Taft's encouragement and assistance, have directed SIS to repudiate SIS's Hold Harmless and Indemnity obligations under the two General Agency Agreements, have continued to operate SIS with inadequate capital in light of its financial obligations to TIC and to Pacific Re and its Protected Cell, Pac Re 5-AT, and caused Pacific Re and Pac Re 5-AT to breach the SIS Captive Reinsurance Agreement and to expose itself and Pac Re 5-AT to unfunded liability through improper dominion and control.

53.     Further, Pike, Salvagio, and Taft have admitted to AmTrust that Preferred Global is a shell corporation with no assets.

54.     Pike, Salvagio, and Taft claimed just prior to the institution of this action that Pac Re 5-AT's beneficiary is Preferred Global, ignoring that Pacific Re caused its Protected Cell, Pac Re 5-AT, to file a copy of the Participation Agreement with the U.S. District Court in Montana specifically asserting that SIS is the beneficial owner of and "Participant" in Pacific Re's Protected Cell, Pac Re 5-AT, while making no mention of Preferred Global.

55.     Upon information and belief, Pike, Salvagio and Taft have mismanaged Pacific Re and Pac Re 5-AT, knowing that Pac Re 5-AT's sole function was to obtain from SIS the funds with which to provide the reinsurance protection for TIC as provided in the SIS Captive Reinsurance Agreement.

56.     On information and belief, with the assistance of Taft, Pike, Salvagio and Savoia have caused SIS to:  deviate from both its contractually required underwriting standards; its required methods of limiting risk; wasting SIS's capital through disbursement of unnecessary distributions; artificially reducing the premium level to be charged, which would mostly go to fund one of the Trusts for which TIC was the beneficiary, by adding "fees" that would go only to SIS and be available to distribute to Pike, Salvagio, and their affiliates; engaging in self-dealing improperly enriching themselves at the expense of SIS, Pacific Re, and Pac Re 5-AT, and ultimately Plaintiffs.

57.     Upon information and belief, SIS was not just undercapitalized, but insolvent, or within the "zone of insolvency" throughout the life of the SIS Captive Reinsurance Program insofar as it had insufficient assets to discharge its financial obligations to Plaintiffs under the General Agency Agreements and to Pacific Re and Pac Re 5-AT pursuant to the Participation Agreement, but nevertheless continued to underwrite and bind risks, all to the detriment of Plaintiffs.

<u>**COUNT ONE**</u>

<u>**BREACH OF CONTRACT AND REPUDIATION**</u>
**[Against SIS]**

58.     Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through

"57" as if each was set forth herein at length.

59.     Articles VII of the General Agency Agreements executed by non-party USIC,

TIC, and SIS, state that SIS:

> agrees to and does hereby indemnify and hold [USIC] and [TIC] harmless
> from and against <u>any and all</u> actions, causes of actions, suits, arbitrations,
> or proceedings of any kind, <u>liabilities</u>, <u>losses</u>, <u>claims</u>, <u>damages</u>, <u>costs</u>, or
> <u>expenses</u> (<u>including attorneys' fees and expenses</u>), incurred by the
> Company [USIC] and Reinsurer [TIC] by reason of, arising out of, or
> relating in any way to this Agreement <u>or</u> any action taken <u>or</u> inaction by
> the General Agent in breach of the terms of this Agreement <u>or</u> the terms of
> the Reinsurance Agreement, or which is not in full compliance therewith.

(Emphasis added.)

60.     Both the TPA fees paid by TIC and the liability for known as well as "expected

claims," that "arise out of" and "relate in [some] way" to the policies of insurance underwritten

and bound by SIS are reinsured pursuant to  the terms of the SIS Captive Reinsurance

Agreement.

61.     The SIS Captive Reinsurance Agreement between Pacific Re "on behalf of Pac

Re 5-AT" and AmTrust on behalf of TIC, is an agreement referenced in, related to, and arising

out of the two General Agency Agreements.  Further, the SIS Captive Reinsurance Agreement

expressly provides for security to be provided to Plaintiffs.  Among the reinsurer's obligations to

Plaintiffs was the obligation to fund the trust funds, not just for paid and known claims, but:

> When losses are expected to exceed the amount of collateral held, the
> Company [AmTrust on behalf of TIC] reserves the right to demand
> additional collateral as it deems necessary.  Reinsurer [Pacific Re on
> behalf of Pac Re 5-AT] agrees upon ten (10) days prior written notice, to

20

provide the Company [AmTrust on behalf of TIC] additional collateral as required in the notice.

(SIS Captive Reinsurance Agreement at Art. 26.H.)

62.     Further, the "Reinsurer" (Pacific Re and its unincorporated Protected Cell, Pac Re 5-AT) is obligated pursuant to Article 7 of the SIS Captive Reinsurance Agreement to reimburse the Plaintiffs "the actual Third-Party Claims Administrator's fee…." To date, in excess of $1.7 million has been paid to the TPA, only $600,000 of which has been reimbursed by the Reinsurer, and additional liabilities are expected to be incurred by Plaintiffs for actual TPA fees before the SIS Reinsurance Program is fully run off to conclusion.

63.     Pacific Re and/or Pacific Re on behalf of Pac Re 5-AT have breached and repudiated their obligations to Plaintiffs under the SIS Captive Reinsurance Agreement by failing to reimburse Plaintiffs for the actual TPA fees and failing to fund the required Trusts.

64.     Defendants Pike and Salvagio, aided and abetted by Taft, have caused Pacific Re and/or its Protected Cell, Pac Re 5-AT, to breach the SIS Captive Reinsurance Agreement, and with Defendant Savoia, have caused SIS to breach its obligations to hold harmless and indemnify Plaintiffs and to fund Pacific Re's and Pac Re 5-AT's liabilities, and have thus caused the breach of the covenant of good faith and fair dealing by:  a) failing to reimburse Plaintiffs for the actual TPA fees Plaintiffs have paid, leaving an unpaid balance in excess of $1.3 million, an amount which has grown, and will continue to grow until all insured claims are fully resolved, which amounts have not been paid despite due demand therefore; b) by failing to fund the Trust Agreements as required by the SIS Captive Reinsurance Agreement; c) by causing the Participation Agreement to oust Plaintiffs of their "third-party beneficiary" rights to enforce SIS's funding obligations under the Participation Agreement; and d) by failing to provide access to the books and records of SIS, Pacific Re, and Pac Re 5-AT.

65.     Further, SIS, at the instance of Pike, Salvagio and Savoia, aided and abetted by Taft, has caused Pacific Re and/or Pac Re 5-AT to both breach and repudiate their obligations under the SIS Captive Reinsurance Agreement and the Trust Agreements established thereunder, and in so doing have deprived Plaintiffs of the benefits of their contracts in violation of the covenant of good faith and fair dealing.

66.     Additionally, SIS has both breached and repudiated its obligations under the two General Agency Agreements:  a) by failing to hold Plaintiffs harmless and to indemnify them against all loss, claims, expenses (including attorneys' fees), and costs as required by both General Agency Agreements; b) by failing and refusing to provide access to its books and records; and c) on information and belief, as the beneficial owner of Pac Re 5-AT, a Protected Cell of Pacific Re, authorizing the commencement of the Montana Declaratory Judgment Action in order to delay and hinder Plaintiffs' enforcement of their rights under the SIS Captive Reinsurance Agreement.  These acts have further caused SIS to breach the covenant of good faith and fair dealing by interfering with Plaintiffs' rights to the benefits of their contracts with SIS, Pacific Re, and Pac Re 5-AT.

67.     SIS has repudiated and breached its obligations as set forth herein above.

68.     SIS has further caused Pacific Re and its Protected Cell, Pac Re 5-AT, to both breach and repudiate their obligations under the SIS Captive Reinsurance Agreement and Trust Agreements by, amongst others:  a) failing to reimburse Plaintiffs for the TPA fees; b) failing to fund the Trusts as required by the SIS Captive Reinsurance Agreement and Trust Agreements; c) denying Plaintiffs request for books and records; and d) and filing the Declaratory Judgment action in Montana to stay the Arbitration and render invalid the Plaintiffs' right to recover all amounts due under the SIS Captive Reinsurance Agreement including TPA fees and future

losses and covered Loss Adjustment Expenses, as defined in the SIS Captive Reinsurance Agreement.

69.     Plaintiffs demand judgment against SIS in an amount to be determined at trial but in no event less than $1.3 million in current out of pocket damages and not less than $8 million to be paid to the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and all attorneys' fees incurred in this Action, the Montana Declaratory Judgment Action, and the Arbitration, currently in excess of $300,000.

## COUNT TWO

### BREACH OF CONTRACT, PRINCIPAL LIABILITY
**[Against SIS]**

70.     Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "69" as if each was set forth herein at length.

71.     SIS, as beneficial owner, caused Pacific Re to create the Protected Cell, Pac Re 5-AT, as a mechanism through which it, as Participant and beneficial owner, would bear the substantive reinsurance risk of the insurance it placed on behalf of USIC, as reinsured by Plaintiffs and then assumed by Pacific Re for its Protected Cell, Pac Re 5-AT, pursuant to the SIS Captive Reinsurance Agreement.

72.     Pacific Re and its Protected Cell, Pac Re 5-AT, were at all times herein acting in the capacity of an agent for SIS, its disclosed principal.

73.     Pacific Re on behalf of itself and its Protected Cell, Pac Re 5-AT, accepted these obligations within the scope of their agency for SIS.

74.     Pacific Re on behalf of itself and on behalf of Pac Re 5-AT have breached, repudiated, and refused to comply with their obligations to Plaintiffs, and on information and

belief, did so at the instruction of SIS and its principals, Pike and Salvagio, as aided and abetted by Taft.

75.     SIS remains liable for all obligations and liabilities of Plaintiffs undertaken by Pacific Re for itself and/or on behalf of its Protected Cell, Pac Re 5-AT, as agents on SIS's behalf as a disclosed principal.

76.     Plaintiffs demand judgment against SIS in an amount to be determined at trial but in no event less than $1.3 million in current out of pocket damages and no less than $8 million to be paid into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest and costs.

77.     Pike and Salvagio, and on information and belief, Taft, and through them SIS, misrepresented to Plaintiffs through the SIS Captive Reinsurance Agreement that should the SIS Captive Reinsurance Program not generate sufficient premiums to cover all costs, expenses, claims and liabilities associated with the Program, that Pacific Re and/or its unincorporated Protected Cell, Pac Re 5-AT,  would reinsure TIC and further that SIS would indemnify and hold TIC harmless pursuant to the two General Agency Agreements.

78.     Following Plaintiffs' cancellation of the SIS Reinsurance Program in December 2011, SIS through Pike, Salvagio and Savoia, and Pacific Re, on behalf of Pac Re 5-AT through Taft requested Plaintiffs to agree in March 2012 to extend the termination of the Program to May 31, 2012, which Plaintiffs agreed to do.  By March 2012, Pike, Salvagio, Savoia, and Taft knew or should have known what the Montana Commissioner later found, that during this time PCIC was materially under-reserved and, as a consequence, Pacific Re could not honor its reinsurance obligations to PCIC.  At no time did Pike, Salvagio, Savoia, or Taft inform Plaintiffs of this material information, further exposing Plaintiffs to yet further losses and expenses for which

Defendants SIS, Pacific Re, and Pac Re 5-AT have refused to honor their contractual obligations to Plaintiffs.

79.     Plaintiffs demand judgment against SIS in an amount to be determined at trial but in no event less than $1.3 million in current out-of-pocket damages, and no less than $8 million to be paid to the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and all attorneys' fees incurred in this Action, the Montana Declaratory Judgment Action, and the Arbitration, which currently exceed $300,000.

## COUNT THREE

### BREACH OF FIDUCIARY DUTY
### [Against SIS, Pike, Salvagio and Savoia]

80.     Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "79" as if each was set forth herein at length.

81.     SIS assumed fiduciary obligations to Plaintiffs under both General Agency Agreements and both Quota Share Reinsurance Agreements entered into with TIC, including by accepting such special duties and undertaking a special relationship; as underwriter for the risks to be insured, binding risks it understood TIC was obligated to reinsure, to adequately investigate, screen, inspect, and properly rate accepted risks; and to ensure SIS, and Pacific Re for itself and its Protected Cell, Pac Re 5-AT, were adequately capitalized in order to discharge their financial obligations to TIC as called for in both the SIS Captive Reinsurance Agreement and Participation Agreement, and consistent with the Hold Harmless and Indemnity Agreements these Defendants gave or caused SIS to give TIC in both General Agency Agreements.

82.     SIS breached those duties by not adequately investigating, screening, inspecting, properly rating risks, accepting inadequate premium in order to increase its fee income, and binding USIC to risks it knew were reinsured by TIC without either adequate premium or capital

to support the reinsurance and indemnity obligations of TIC's reinsurer and SIS, respectively, by not allowing Plaintiffs access to the books and records of SIS, Pacific Re, or its Protected Cell, Pac Re 5-AT, and by authorizing the Montana Declaratory Judgment Action seeking to enjoin the arbitration initiated by Plaintiffs.

83.    Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $1.3 million in current out of pocket damages and no less than $8 million to be paid into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest and costs.

## COUNT FOUR

### VEIL PIERCING AND ALTER EGO
### [Against Pike, Savalgio and Savoia]

84.    Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "83" as if each was set forth herein at length.

85.    Pike and Salvagio dominate and control Pacific Re, the Protected Cell, Pac Re 5-AT, and with Savoia, dominate and control SIS, and have used their domination and control to perpetuate their personal interests as alter egos.

86.    Pike, Salvagio and Savoia failed to protect Pacific Re, the Protected Cell, Pac Re 5-AT, and SIS from exposure to liability resulting from their pursuit of their personal interests, and in so doing deprived those entities of independent management.

87.    On information and belief, Pike, Salvagio and Savoia have failed, and fail, to observe corporate formalities, as with regard to Pike, Salvagio and Savoia, the Montana Commissioner found they had done with PCIC.  For example, Pike, Salvagio and Savoia used their corporate entities to pay personal expenses, made monetary distributions to themselves from SIS as set forth above at ¶ 33 when they knew those monies were needed to capitalize SIS and the Protected Cell of which SIS was the beneficial owner, together with those actions

previously described, and while having SIS named as the "Participant" and beneficial owner of the Protected Cell, with the obligation of funding all of the Protected Cell's liabilities as specified in the Participation Agreement, they failed to have SIS execute the Participation Agreement, deprived Plaintiffs of their third-party beneficiary rights along with the right to have the Loss Fund and Loss Corridor Trusts funded to levels required by Plaintiffs by taking for themselves the right to set the level of Pac Re 5-AT's reserves, have threatened Plaintiffs that they would deplete the Protected Cell's assets to defend Pacific Re in the arbitration, while at the same time using the Protected Cell, Pac Re 5-AT, to commence an action where Pacific Re, not the Cell, was the real party in interest.  The acts by Pike, Salvagio, Savoia, and Taft have caused SIS and Pacific Re and Pac Re 5-AT to breach the covenants of good faith and fair dealing inherent in their contracts with Plaintiffs.

88.    Pike and Salvagio intentionally conduct business through undercapitalized shells to avoid liability and frustrate creditors, have stated to Plaintiffs that transfers of money were made from Pacific Re and Pac Re 5-AT outside of the ordinary course of business, and on information and belief have failed to observe the corporate formalities required for operating Pacific Re, just as they did with PCIC, and with Savoia have failed to operate SIS with the required corporate formalities.

89.    Wherefore, Plaintiffs are entitled to a judgment against Pike, Salvagio and Savoia, personally, as they are the alter egos of SIS, and as SIS, Pacific Re, Pacific Re's Protected Cell, Pac Re 5-AT, Preferred Global Holdings are alter egos of Pike, Salvagio and Savoia; and Pike, Inc. and Salvagio, Inc. are alter egos of Pike and Salvagio, and said corporate veils should be pierced and Pike, Salvagio and Savoia should be held personally liable for each of the above-named entities' obligations to Plaintiffs in an amount to be determined at trial, but in no event

less than $1.3 million in current out of pocket damages and no less than $8 million to be paid to the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and attorneys' fees in this Action, the Arbitration, and the Montana Declaratory Judgment Action, currently exceeding $300,000.

## COUNT FIVE

### FRAUDULENT CONVEYANCE
**[Pike, Salvagio, Savoia and John Doe Defendants]**

90.     Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "89" as if each was set forth herein at length.

91.     SIS, Pike, Salvagio, and Taft have admitted to Plaintiffs that Pacific Re has been denuded of any assets and that the Trusts have been virtually exhausted, leaving $600,000 on Pacific Re's books of account allocable to Pac Re 5-AT.

92.     In effect, Pacific Re and Pac Re 5-AT have been for some time insolvent or in the zone of insolvency, without the reasonable expectation of the ability to honor their obligations to Plaintiffs.

93.     Upon information and belief, SIS is insolvent or in the zone of insolvency and could never reasonably expect to honor its obligations to hold TIC harmless and to indemnify it from its liabilities due from its participation in the SIS Captive Reinsurance Program.

94.     Upon information and belief, SIS, Pike, and Salvagio have stated that transfers were made from Pacific Re and/or Pac Re 5-AT outside of the ordinary course of its business and, upon information and belief, the transfers were made without adequate consideration.

95.     Not only have Pike, Salvagio and Savoia made the distributions from SIS enumerated in ¶ 33, above, but on information and belief, have continued to distribute the substantial revenue of SIS and Pacific Re for their own personal benefit.  For example,

28

notwithstanding that PCIC has disclosed in its 2013 regulatory filings that it paid $7,118,577 to SIS and $4,044,605 to Pacific Re, Pacific Re, its Pac Re 5-AT Cell, and SIS have failed and refused to make the payment to Plaintiffs for the TPA fees and to collaterize the Trusts as required by the SIS Captive Reinsurance Agreement.

96.     Upon information and belief, Salvagio and Pike have and continue to receive compensation from Pacific Re and/or Pac Re 5-AT, and/or SIS.

97.     Upon information and belief, assets of SIS, Pacific Re and/or Pac Re 5-AT have been transferred to parties unknown without adequate consideration.

98.     Upon information and belief, such transfers have been made to hinder, delay, or avoid liability or to frustrate Plaintiffs' rights to adequate loss collateral funding and payment of TPA fees.

99.     Plaintiffs have right, title and interest under New York Debtor Creditor Law to claw back all such amounts transferred to third-parties or to the Defendants Pike, Salvagio, Savoia, and other SIS and/or Pacific Re shareholders designated as John Doe and John Doe, Inc. Defendants.

100.     Wherefore, Plaintiffs are entitled to judgment against Pike, Salvagio and the various John Doe and John Doe, Inc. Defendants for amounts to be determined at trial, plus interest and costs.

## COUNT SIX

### CONVERSION
**[Taft, Pike, and Salvagio]**

101.     Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "100" as if each was set forth herein at length.

102. On information and belief, the Protected Cell, Pac Re 5-AT, is simply an account recorded on the books of Pacific Re on behalf of Pac Re 5-AT.

103. Pacific Re's use of its funds and those of the Protected Cell are limited by agreement to those necessary and required by Plaintiffs to fund losses paid, reserved and expected by Plaintiffs, and to pay the actual TPA fees incurred pursuant to the SIS Captive Reinsurance Agreement.

104. Pacific Re's use of Protected Cell funds is limited to those expenses and liabilities incurred solely on behalf of the Protected Cell.

105. Upon information and belief, Taft is the captive manager of Pacific Re and the captive manager of the Protected Cell, Pac Re 5-AT.

106. Upon information and belief, Taft has physical custody of the books and records of Pac Re 5-AT and actual control of both the Protected Cell's funds and those of Pacific Re.

107. Upon information and belief, Taft is responsible for making all payments and transfers from Pacific Re and from the Protected Cell assets to third-parties.

108. Upon information and belief, Pike, Salvagio, and Taft, have converted Pacific Re and Pac Re 5-AT assets, leaving Plaintiffs without the ability to recover all of the reinsurance proceeds and other payments they are entitled to recover under the SIS Captive Reinsurance Agreement.

109. Upon information and belief, Pike, Salvagio, and Taft have wrongfully applied funds of Pacific Re and the funds of Pac Re 5-AT to improper purposes thereby interfering with and defying Plaintiffs' superior possessory interest to Pacific Re's and Pac Re 5-AT's funds.

110.     On information and belief, Taft, as manager of Pacific Re and the Protected Cell, Pac Re 5-AT, has failed to demand that SIS fund Pac Re 5-AT so as to allow Pacific Re and its Protected Cell, Pac Re 5-AT, to meet their contractual obligations to Plaintiffs.

111.     Salvagio, Pike, and Taft have either knowingly or negligently interfered with and violated Plaintiffs' contractual rights under the SIS Captive Reinsurance Agreement and wrongfully converted assets of Pacific Re and Pac Re 5-AT to their own use.

112.     Plaintiffs therefore demand judgment in an amount to be determined at trial, plus interest and costs.

## COUNT SEVEN

### CONVERSION
### [Against Pike, Salvagio, Savoia and John Doe Defendants]

113.     Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "112" as if each was set forth herein at length.

114.     Pike, Salvagio and Savoia own, directly or indirectly, the controlling interests in SIS and control its actions.

115.     SIS through the two General Agency Agreements induced Plaintiffs into agreeing to reinsure USIC's liabilities incurred as part of the SIS Reinsurance Program, by formally agreeing to hold TIC harmless and to indemnify it for all losses, claims, costs arising out of or in any way related to either General Agency Agreement or the SIS Captive Reinsurance Agreement.

116.     While TIC was incurring millions of dollars of losses and other liabilities due to its reinsurance of USIC, Pike, Salvagio and Savoia not only refused to utilize SIS's cash and earnings to fund Pacific Re's and Pac Re 5-AT's reinsurance obligations to TIC, but instead took for themselves exorbitant salaries and/or other distributions of cash and fees paid to themselves

and/or entities they owned or controlled, and, on information and belief, took substantial personal benefits by having SIS pay their personal expenses.

117.    On information and belief, Pike, Salvagio and Savoia caused SIS to undercharge "premium" that would have been available to fund the Trusts in order to collateralize the obligation to reinsure the payment of claims and the TPA costs in order to inflate the amount of "fees" charged by and taken by SIS, which were, at least in part, distributed to Pike, Salvagio and Savoia.

118.    In taking these salaries, shareholder distributions, fees, and payments on account of personal expenses all while SIS had unfunded liabilities to TIC as previously described and an obligation to fund all of the liabilities owed to Plaintiffs by Pacific Re and Pac Re 5-AT, Defendants Pike, Salvagio, Savoia, and various John Doe and John Doe, Inc. Defendants to be identified in discovery, caused SIS to be unable to fulfill its hold harmless and indemnity obligations to TIC, and have wrongfully converted those assets of SIS to their own use.

119.    Plaintiffs therefore demand judgment in an amount to be determined at trial, plus interest and costs.

## COUNT EIGHT

### AIDING/ABETTING BREACH OF FIDUCIARY DUTY
### [Against Taft]

120.    Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "119" as if each was set forth herein at length.

121.    SIS, and its principals, Pike, Salvagio and Savoia, owe and have owed fiduciary obligations to Plaintiffs.

122.    Taft, as captive manager and advisors to Pike, Salvagio and Savoia, knew that SIS owed fiduciary duties to Plaintiffs by reason of the special services relationship SIS provided for

Plaintiffs' benefit, which relationship was undertaken at Pike's, Salvagio's and Savoia's

direction with the aid and encouragement of Taft.

123.    Taft, as captive manager and, on information and belief, a broker and consultant,

knew, or should have known, that SIS breached its fiduciary obligations to Plaintiffs, yet has

rendered significant assistance to SIS, Pike, Salvagio and Savoia to aid and abet SIS's breach of

fiduciary duty and contract to Plaintiffs, injuring Plaintiffs.

124.    Plaintiffs have been damaged thereby in an amount to be determined at trial but in

no event less than $1.3 million in current out of pocket damages and no less than $8 million to be

paid into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and attorneys'

fees, which fees currently exceed $300,000.

## COUNT NINE

### NEGLIGENCE
### [Against Taft]

125.    Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through

"124" as if each was set forth herein at length.

126.    Upon information and belief, SIS, Pike, Salvagio and Savoia acting for Pacific Re

engaged Taft as captive manager of Pacific Re and the Protected Cell, Pac Re 5-AT, and as their

insurance consultant, for good and valuable consideration.

127.    Taft knew or should have known that the Protected Cell was created for the

purpose of reinsuring and indemnifying Plaintiffs pursuant to the SIS Captive Reinsurance

Agreement.

128.    Taft knew or should have known that Plaintiffs were relying on Taft to lawfully

manage Pacific Re and Pac Re 5-AT in good faith and to manage the reinsurers in full

compliance with all applicable laws, regulations, agreements, and industry customs and practices.

129.    Taft knew or should have known that under New York law, which it knew governed the SIS Captive Reinsurance Agreement, Pacific Re was legally responsible for the obligations of Pac Re 5-AT and that the Pacific Re's and Pac Re 5-AT's funds could only lawfully be used to discharge their obligations, including those set forth in the SIS Captive Reinsurance Agreement.

130.    Taft knew or should have known that Plaintiffs had rights to all of Pacific Re's and Pac Re 5-AT's assets needed to discharge their obligations as set forth in the SIS Captive Reinsurance Agreement.

131.    Taft knew or should have known that Plaintiffs were relying on Taft to preserve and properly disburse these assets and funds.

132.    Taft knew or should have known that Plaintiffs' right to payment included actual TPA costs and collateral for losses both known and expected by Plaintiffs.

133.    Taft owed and negligently breached duties to Plaintiffs by refusing to pay the $600,000 in existing accounts attributable to Pac Re 5-AT, alleged to be a Protected Cell of Pacific Re, to both pay a portion of the $1.3 million of actual TPA fees thus far paid by Plaintiffs or deposit the $600,000 of Protected Cell funds to the Trust Accounts as collateral for the discharge of the obligations of Pacific Re on behalf of itself and/or its Protected Cell, all as required by the SIS Captive Reinsurance Agreement.

134.    Taft knew or should have known that Pacific Re had substantive obligations to TIC as "Grantor" of both Trusts, as, Taft had caused Pacific Re to fund one of the Trusts on two

34

separate occasions:  1) in December 2010 in the amount of $1 million; and 2) in April 2012 in the amount of $500,000.

135.    Taft knew, or should have known that:  a) Pac Re 5-AT was not a lawfully created protected cell as its "Participant" and "beneficial owner" was not an insured of Pacific Re, as required by Montana law, Mont. Stat. Annotated § 33:28:101(24); b) that SIS did not execute the Participation Agreement; and c) that the Participation Agreement denuded Plaintiffs of rights as the third-party beneficiary of the Participation Agreement to enforce SIS's funding obligations.

136.    Taft failed to act with due care and consistent with the customs and practices of the industry:  (a) in refusing Plaintiffs' lawful claim to the assets and funds of Pacific Re and Pac Re 5-AT; (b) threatening to waste the funds of Pac Re 5-AT; and (c) by failing to timely notify Plaintiffs that Pacific Re had been denuded of funds and that Pac Re 5-AT was nearly depleted of funds in order to ensure Plaintiffs had reasonable notice to protect their rights as against third parties.

137.    Plaintiffs have been damaged as a result of Taft's negligence in an amount to be determined at trial, plus interest and costs.

### COUNT TEN

### DECLARATORY JUDGMENT
**[Against SIS, Pike, Salvagio and Savoia]**

138.    Plaintiffs repeat and reallege each and every allegation in paragraphs "1" through "137" as if each was set forth herein at length.

139.    Defendants SIS, Pike, Salvagio and Savoia as principals and alter egos have repudiated their obligations under the two General Agency Agreements, under the SIS Captive Reinsurance Agreement, and the Participation Agreement.

140.    Defendants SIS, Pike, Salvagio and Savoia, all alter egos of each other, have, by word and conduct, refused or otherwise failed to perform under the two General Agency Agreements, the SIS Captive Reinsurance Agreement, and the Participation Agreement as required, and by their conduct and statements have demonstrated that they will continue to refuse to perform under those Agreements.

141.    An actual controversy exists between Plaintiffs and Defendants SIS, Pike, Salvagio and Savoia regarding Plaintiff's rights under the two General Agency Agreements and the Participation Agreement as stated above.

142.    Plaintiffs are entitled to a Declaration of their rights holding that SIS, Pike, Salvagio and Savoia are jointly and severally liable for all amounts due and to become due, including all claims and losses expected by Plaintiffs, as well as actual TPA fees incurred to the end of the Program runoff, when the last claim is fully resolved under the SIS Reinsurance Program.

**WHEREFORE,** Plaintiffs AmTrust North America, Inc. and Technology Insurance Company, demand judgment as follows:

(1)    on Count One, in amounts to be determined at trial but in no event less than $1.3 million in current out-of-pocket damage and no less than $8 million to be paid into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and attorneys' fees;

(2)    on Count Two, in amounts to be determined at trial but in no event less than $1.3 million in current out-of-pocket damage and no less than $8 million to be paid into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and attorneys' fees;

(3)   on Count Three, in amounts to be determined at trial but in no event less than $1.3

million in current out-of-pocket damage and no less than $8 million to be paid

into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest and costs;

(4)   on Count Four, in amounts to be determined at trial but in no event less than $1.3

million in current out-of-pocket damage and no less than $8 million to be paid

into the Loss Fund and/or Loss Corridor Trust Accounts, plus interest, costs, and

attorneys' fees;

(5)   on Count Five, in amounts to be determined at trial, plus interest, costs, and

attorneys' fees;

(6)   on Count Six, in amounts to be determined at trial plus interest and costs;

(7)   on Count Seven, in amounts to be determined at trial plus interest and costs;

(8)   on Count Eight, in amounts to be determined at trial but in no event less than $1.3

million in current out-of-pocket damage and no less than $8 million to be paid

into the Loss Fund and/or Loss Corridor Trust Account, plus interest, costs, and

attorneys' fees;

(9)   on Count Nine, in amounts to be determined at trial, plus interest and costs;

(10)   on Count Ten, for a declaration of Plaintiffs' rights that Defendants SIS, Pike,

Salvagio and Savoia are jointly and severally liable for funding the Loss Fund

and/or Loss Corridor Trust Accounts for all amounts over and above any award at

trial for losses including allocated loss adjustment expenses, and to pay Plaintiffs

all actual TPA fees incurred over the amounts awarded at trial, through the end of

the SIS Captive Reinsurance Program run-off;

(11)   And for such other and further relief as this Court deems just and appropriate.

Dated: Garden City, New York
      May 13, 2015

**OHRENSTEIN & BROWN, LLP**

By:                             
      Michael D. Brown, Esq. (MB9856)
      Matthew Bryant Esq. (MB2408)
*Attorneys for Plaintiffs*
*AmTrust North America, Inc. and*
*Technology Insurance Company*
1305 Franklin Ave. Suite 300
Garden City, New York 11530
Telephone: (516) 873-6334
Fax: (516) 873-8912

TO:    Steven A. Stadtmauer, Esq.
       HARRIS BEACH PLLC
       100 Wall Street, 23rd Floor
       New York, NY 10005
       Telephone: (212) 687-0100
       Fax: (212) 687-0659
       sstadtmauer@harrisbeach.com
       *Attorneys for Defendants*
       *Safebuilt Insurance Services, Inc. a/k/a Safebuilt Wholesale*
       *Insurance Services, Inc., The Taft Companies, LLC,*
       *Preferred Global Holdings, Inc., David E. Pike, David E.*
       *Pike, Inc., Philip Salvagio, Salmen Insurance Services, Inc.*
       *f/k/a Salvagio, Inc., and John Doe Corporations 1-5, and*
       *John Does 1-5*

       CARL M. SAVOIA
       6630 Flanders Drive
       San Diego, California 92121