# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.,

Plaintiffs,

-against-                                                    No.: 14-cv-9494

SAFEBUILT INSURANCE SERVICES, INC. a/k/a
SAFEBUILT WHOLESALE INSURANCE SERVICES,
INC., THE TAFT COMPANIES, LLC, PREFERRED
GLOBAL HOLDINGS, INC., DAVID E. PIKE, DAVID
E. PIKE INC., PHILIP SALVAGIO, SALMEN
INSURANCE SERVICES, INC. f/k/a SALVAGIO, INC.,
CARL M. SAVOIA, JOHN DOE CORPORATIONS 1-5,
and JOHN DOES 1-5,

Defendants.

---

SAFEBUILT INSURANCE SERVICES, INC., THE
TAFT COMPANIES, LLC, PREFERRED GLOBAL
HOLDINGS, INC., DAVID E. PIKE, DAVID E. PIKE,
INC. d/b/a PIKE INSURANCE SERVICES, PHILIP
SALVAGIO,  SALMEN INSURANCE SERVICES,
INC., and CARL M. SAVOIA,

Third-Party Plaintiffs,

-against-

NETWORK ADJUSTERS, INC., ROBERT SANDERS,
PREFERRED REINSURANCE INTERMEDIARIES,
BUILDERS & TRADESMEN'S INSURANCE
SERVICES, INC., JOHN DOE BROKERAGES 1-5,
JOHN DOE BROKERS 1-5, JOHN DOE
CORPORATIONS 6-15, and JOHN DOES 6-15,

Third-Party Defendants.

---

## DEFENDANTS/THIRD-PARTY PLAINTIFFS'
## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
## AMTRUST AND THIRD-PARTY DEFENDANT BTIS'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT .................................................................................................................... 4

I.  PLAINTIFFS' CURSORY CONFLICTS OF LAW ANALYSIS IS INADEQUATE ........................................................................................................4

II.  THIRD-PARTY/COUNTERCLAIM PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AGAINST AMTRUST AND BTIS ARE PROPERLY PLED ...........................................................................................................................6

III.  SIS PROPERLY PLED A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST PLAINTIFF ................................................................................10

    A.  AmTrust, As Principal To SIS, Owed A Fiduciary Duty To Its Agent SIS .........................................................................................................10

    B.  Even Absent The Principal-Agent Relationship, AmTrust Owed SIS A Fiduciary Duty .........................................................................................11

    C.  The Counterclaim Properly Alleges AmTrust's Breach Of A Fiduciary Duty Independent Of Any Contractual Duties ...................................13

    D.  Third-Party Plaintiffs SIS And Taft Properly Alleged Claims For Aiding And Abetting AmTrust's Breach Of Fiduciary Duty Against BTIS .........................................................................................................14

IV.  AMTRUST AND BTIS LACK STANDING TO SEEK DISMISSAL OF COUNTS ONE, TWO, AND SIX OF THE THIRD-PARTY COMPLAINT, AND FOR THOSE PARTS OF COUNTS SEVEN AND EIGHT NOT DIRECTED AT BTIS ....................................................................16

V.  SIS PROPERLY PLED CLAIMS AGAINST PREFERRED RE AND ROBERT SANDERS BECAUSE SIS IS A THIRD-PARTY BENEFICIARY OF ANY CONTRACT BETWEEN PLAINTIFFS AND PREFERRED RE/SANDERS ..........................................................................17

VI.    THIRD PARTY PLAINTIFFS' CLAIMS AGAINST NETWORK
       ARE PROPERLY PLED AND PROPERLY BEFORE THIS COURT ....................18

       A.    Third-Party Plaintiffs Sufficiently Alleged Third-Party
             Beneficiary Status Under the AmTrust/Network Master Claims
             Services Agreement ...........................................................................................18

       B.    Third-Party Plaintiffs' Claims Against Network Are Distinct
             From Any Such Claims Raised In The Arbitration ............................................19

VII.   DEFENDANTS/THIRD-PARTY PLAINTIFFS' CLAIMS FOR
       CONTRIBUTION AND INDEMNITY ARE PROPERLY PLED...........................21

VIII.  THIS COURT SHOULD IGNORE PLAINTIFF'S AND THIRD-
       PARTY DEFENDANT'S SPECIOUS "DELAY" ARGUMENT ............................23

IX.    IN THE ALTERNATIVE, DEFENDANTS/THIRD-PARTY
       PLAINTIFFS SHOULD BE PERMITTED TO AMEND...........................................24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust*
  *v. Philadelphia Fin. Life. Assur. Co.*, No. 12 Civ. 6808 (KMK),
  2015 WL 1455805 (S.D.N.Y. Mar. 31, 2015) ................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 4

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*,
  No. 93 Civ. 6876, 2000 WL 1694322 (S.D.N.Y. Nov. 13, 2000) ........................... 15

*Bullmore v. Ernst & Young Cayman Islands*,
  45 A.D.3d 461 (1st Dep't 2007) ............................................................ 14

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  59 N.Y.2d 314 (1983) ................................................................... 17, 19

*Chartis Seguros Mexico, S.A. v. HLI Rail & Rigging, LLC*,
  967 F. Supp. 2d 756 (S.D.N.Y. 2014) ........................................................ 20

*Cromer Finance Ltd v. Berger*, 127 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................... 15

*DFP Manuf'g Corp. v. Northrop Grumman Corp.*,
  No. 97 Civ. 4494 (JS), 1999 WL 33458384 (E.D.N.Y. Mar. 23, 1999) ................... 17

*Discover Group, Inc. v. Lexmark Intern, Inc.*,
  333 F. Supp. 2d 78 (E.D.N.Y. 2004) ......................................................... 6

*Don Buchwald & Assocs., Inc. v. Rich*,
  281 A.D.2d 329 (1st Dep't 2001) ............................................................. 9

*Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366 (FM),
  2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006) .............................................. 16

*EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11 (2005) ................................. 12

*Flash Elecs., Inc. v. Universal Music & Video*,
  312 F. Supp. 2d 379 (E.D.N.Y. 2004) ....................................................... 8

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................... 25

*Fromer v. Yogel*, 50 F. Supp. 2d 227 (S.D.N.Y. 1999) ................................. 22, 23

*Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105 (2d Cir. 1997) ........................... 6

iii

*Gordon v. Bialystoker Ctr & Bikur Cholim, Inc.*,
  45 N.Y.2d 692 (1978) ................................................................................................ 6

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (1980) ................................................................................................ 6

*Hannex Corp. v. GMI, Inc.*, 140 F.3d 194 (2d Cir. 1998) ............................................ 6

*HG Estate, LLC v. Corporacion Durango S.A. De de C.V.*,
  271 F. Supp. 2d 587 (S.D.N.Y. 2003) ...................................................................... 20

*Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*,
  No. 06 Civ. 181(GBD), 2007 WL 2405689 (S.D.N.Y. Aug. 24, 2007) ................................ 22

*Hindin v. N.Y. Lutheran Med. Ctr.*, No. 00-CV-7499(FB)(JMA),
  2009 WL 366490 (E.D.N.Y. Feb. 13, 2009) .............................................................. 16

*Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dep't 2003) ................................................ 15

*Kern v. Robert Currie Assocs.*, 220 A.D.2d 255 (1st Dep't 1995) ........................................ 12, 13

*Krys v. Butt*, 486 Fed. App'x 153 (2d Cir. 2012).................................................... 12

*Kuklachev v. Gelfman*, 600 F. Supp. 2d 437 (E.D.N.Y. 2009)........................................ 16

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) .................................... 17

*Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162 (1st Dep't 1987) ........................................ 14

*Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680 (1990) .................................................... 23

*Montauk Oil Transp. Corp.*
  *v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*,
  859 F. Supp. 669 (S.D.N.Y. 1994) .............................................................................. 20

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
  921 F. Supp. 2d 94 (S.D.N.Y. 2013) ................................................................. 12, 14

*Newman & Schwartz v. Asplundh Tree Expert Co, Inc.*,
  102 F.3d 660 (2d Cir. 1996) ...................................................................................... 17

*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ............................................................ 4

*OTG Brands, LLC v. Walgreen Co.*, No. 13 Civ. 09066 (ALC),
  2015 WL 1499559 (S.D.N.Y. Mar, 31, 2015) ...................................................... 4, 17

iv

*Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,*
    782 F.2d 346 (2d Cir. 1986) ............................................................... 23

*Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.,*
    769 F. Supp. 2d 322 (S.D.N.Y. 2011) ..................................... 21, 22

*Popkin v. Nat'l Ben. Life Ins. Co.,*
    711 F. Supp. 1194 (S.D.N.Y. 1989) ...................................... 11

*PPX Enters., Inc. v. Audiofidelity Enters., Inc.,*
    818 F.2d 266 (2d Cir. 1987) ................................................. 6

*Ronzani v. Sanofi S.A.,* 899 F.2d 195 (2d Cir. 1990) ................... 25

*S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843 (2d Cir. 1987) .......... 15

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.,*
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................... 14

*Sidella Exp.-Imp. Corp. v. Rosen,* 273 A.D. 490 (1st Dep't 1948) ....... 10, 11

*Sound Refrigeration & Air Conditioning, Inc.*
    *v. All City Testing & Balancing Corp.,*
    84 A.D.3d 1349 (2d Dep't 2011) ........................................... 21

*Standard Chlorine of Del., Inc. v. Sinibaldi,*
    No. 91-188-SLR, 1994 WL 796603 (D. Del. Dec. 8, 1994) ............ 16

*Steed Finance LDC v. Laser Advisers, Inc.,*
    258 F. Supp.  2d 272 (S.D.N.Y. 2003) ................................... 15

*Tower Bldg. Restoration, Inc. v. 20 E. 9th St. Apartment Corp.,*
    295 A.D.2d 229 (1st Dep't 2002) ........................................... 21

*Twombly v. Bell Atl. Corp.,* 550 U.S. 544 (2007) ........................... 4

*Weiner v. Lazard Freres & Co.,* 241 A.D.2d 114 (1st Dep't 1998) ......... 12

*Winfield Group, Inc. v. Erie Ins. Group,*
    531 Fed. App'x 92 (2d Cir. 2013) ........................................... 11

*Winfield Group, Inc. v. Erie Ins. Group,*
    No. 1:10-CV-1541, 2012 WL 4866451 (N.D.N.Y. Oct. 12, 2012) ....... 9, 10

*Wright v. BankAmerica Corp.,* 219 F.3d 79 (2d Cir. 2000) .............. 15

v

**Rules**

Fed. R. Civ. P., Rule 15(a) ................................................................................................ 25

Fed. R. Civ. P., Rule 12(b)(6) ......................................................................................... 1, 4

**Statutes**

3 N.Y.Jur.2d *Agency and Independent Contractors* § 217 (1980) ............................................. 11

9 USC § 3 ........................................................................................................................ 1

**Treatises**

Restatement [Third] of Agency § 8.15 (2006) ............................................................... 11

Restatement [Second] of Torts § 768 ............................................................................. 6

Restatement [Second] of Torts, § 874, Comment *a* ..................................................... 12

Restatement [Second] of Torts, § 874, Comment *b* ..................................................... 12

## PRELIMINARY STATEMENT

Defendants/Third-Party Plaintiffs Safebuilt Insurance Services, Inc. ("SIS"), The Taft Companies, LLC ("Taft"), Preferred Global Holdings, Inc. ("Preferred Global"), David E. Pike ("Pike"), David E. Pike, Inc. d/b/a Pike Insurance Services ("Pike Ins."), Philip Salvagio ("Salvagio"), Salmen Insurance Services, Inc. f/k/a Salvagio, Inc. ("Salmen"), and Carl M. Savoia ("Savioa") respectfully submit this memorandum of law in opposition to the July 1, 2015 Motion to Dismiss Pursuant to Rule 12(b)(6) Or For An Alternative Stay Pursuant to 9 USC § 3 (the "Motion") by Plaintiff/Counterclaim Defendant AmTrust North America, Inc. ("AmTrust") and Third-Party Defendant Builders & Tradesmen's Insurance Services ("BTIS").

AmTrust and BTIS's Motion relies on distraction, assumption, and feigned ignorance of the challenged pleadings to create the illusion that the Counterclaim and Third-Party Complaint should be dismissed. The facts and the law do not permit that result. In addition, the request for a stay in the Motion is preposterous, in light of AmTrust's vigorous opposition to Defendants' request for that same relief, and AmTrust's dogged insistence that Defendants are attempting to delay this proceeding. The Motion should be denied.

## STATEMENT OF FACTS

Plaintiffs AmTrust and Technology Insurance Company, Inc. ("TIC"), and their affiliate, non-party United Specialty Insurance Company ("USIC"), are part of an insurance/reinsurance program aimed at providing "A-rated" insurance to small and mid-sized contractors (the "AmTrust Insurance Program"). *See* Declaration of Matthew Bryant, ECF 93 ("Bryant Decl."), Ex. 1 ("Sec. Am. Compl."), ¶¶ 5, 24. The program was designed such that USIC would "front" the program, TIC would re-insure it, and 100% of a portion TIC's risk would then be reinsured by a protected captive cell, Pac Re 5-AT ("Cell 5") of non-party Montana resident

Pacific Re, Inc. ("Pac Re"). *See* Sec. Am. Compl., ¶ 25.  The insurance program at issue in this litigation, and in the related arbitration brought by AmTrust and TIC against Pac Re and Cell 5, was created by six contracts, specifically: (1) two General Agency Agreements between USIC, TIC, and SIS (one for California and one for all other states);  (2) two Quota Share Agreements between USIC, TIC, and SIS (one for California and one for the balance of the states); (3) a Captive Reinsurance Agreement between AmTrust on behalf of TIC and Pac Re on behalf of Cell 5;  and (4) a Participation Agreement, between Pac Re and SIS.  SIS is the *only* Defendant/Third-Party Plaintiff that is a party to any of these contracts.

On September 8, 2014, Plaintiffs served non-parties Pac Re and Cell 5 with a demand for arbitration under the Captive Reinsurance Agreement which sought recovery from Pac Re and Cell 5, on the theory that the loss trust funds for the AmTrust Insurance Program were under-funded.  *See* Sec. Am. Compl., ¶ 44.  Pac Re and Cell 5 objected on the grounds that the demand was improper, given Montana law governing protected cell captives.  On October 1, 2014, Pac Re and Cell 5 filed a declaratory judgment action in Montana seeking clarity on Montana's protected cell captive law.  While the Montana action was pending, the parties agreed to stay the arbitral proceedings.  *See* Declaration of Peri Berger ("Berger Decl."), Ex. B.  On May 13, 2015, the Montana Court ruled on this "issue of first impression under Montana law."  *See* Berger Decl., Ex. C, at 10.  The arbitration re-commenced on or about May 21, 2015.

Rather than await the lifting of the agreed-upon arbitral stay, Plaintiffs commenced this action on December 2, 2014, wherein they effectively allege that Defendants are liable for the amounts claimed against Pac Re and Cell 5 in the arbitration.  Defendants moved to dismiss the Complaint on the grounds that:  (1) Plaintiffs failed to adequately plead a claim to pierce the corporate veil; (2) Plaintiffs failed to adequately plead fraud; and (3) the action is duplicative of

the already-commenced proceedings. *See generally* Berger Decl., Ex. D at 7-13.  Defendants'
motion was denied on April 10, 2015.  *See* Bryant Decl., Ex. 15.

On May 15, 2015, Defendants filed their Third-Party Complaint, naming as Third-Party
Defendants four parties whose actions with respect to the AmTrust Insurance Program require
their presence in this proceeding:   (1) Network Adjusters, Inc. ("Network"), the Third-Party
Administrator ("TPA") responsible for claims-handling for the AmTrust Insurance Program;
(2) Preferred Re Intermediaries ("Preferred Re"), the brokerage firm apparently retained by both
parties for the creation of the AmTrust Insurance Program; (3) Robert Sanders ("Sanders"), the
principal of Preferred Re who was the broker responsible for brokering the deal; and (4) BTIS, at
one time an independent insurance company offering general liability insurance to small and
mid-sized contractors (and SIS's biggest competitor), and now a wholly-owned subsidiary of
AmTrust.  The Third-Party Complaint alleges that BTIS effectively conspired with Plaintiffs to
illicitly procure and utilize confidential customer information belonging to Defendants/Third-
Party Plaintiffs.  *See* Bryant Decl., Ex. 11 ("Third-Party Compl."), ¶¶ 98-108.[1]

In addition, on May 27, 2015 Defendants SIS, Pike Ins., and Salmen filed their Answers
and Counterclaims against AmTrust.  SIS asserted breach of fiduciary duty and all three asserted
intentional interference with business relations.  *See* Bryant Decl., Ex 3 ("SIS Countercl."), ¶¶ 1-
31, Ex. 7 ("Pike Ins. Countercl."), ¶¶ 1-24; Ex. 9 ("Salmen Countercl.") ¶¶ 1-24.

Plaintiff AmTrust and Third-Party Defendant BTIS now move to dismiss the
Counterclaim and the entire Third-Party Complaint.  Notwithstanding the Motion, each of the
Third-Party Defendants has apparently retained counsel and no party has joined in the Motion.

---

[1] Third-Party Plaintiffs' motion to amend the Third-Party Complaint is pending, but the proposed
amendments do not materially alter the Third-Party Complaint.  *See* Berger Decl., Ex. A.

<u>ARGUMENT</u>

On a motion to dismiss, the non-moving party need only demonstrate that the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)).  A claim is plausible when it pleads sufficient facts from which the Court could reasonably infer the defendant is liable for the alleged misconduct. *See id*.  In analyzing a complaint under Rule 12(b)(6), the Court accepts as true all factual allegations and draws all reasonable inferences therefrom. *See OTG Brands, LLC v. Walgreen Co.*, No. 13 Civ. 09066 (ALC), 2015 WL 1499559, *4 (S.D.N.Y. Mar, 31, 2015) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

## I.    PLAINTIFFS' CURSORY CONFLICTS OF LAW ANALYSIS IS INADEQUATE

New York's conflict of laws analysis requires a more nuanced approach than that taken by Plaintiff and Third-Party Defendant;  each claim requires an individualized, detailed analysis. *See 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Fin. Life. Assur. Co.*, No. 12 Civ. 6808 (KMK), 2015 WL 1455805, at *8 (S.D.N.Y. Mar. 31, 2015).  The Motion glosses over a highly-complex analysis that calls for substantial briefing and legal analysis in its own right.  By way of example only, the following chart indicates the potential jurisdictions and potential choice of law analyses required, few of which are even mentioned in the Motion:

| Cause of Action | Potentially Relevant States (Basis) |
|---|---|
| Tortious Interference with Prospective Business Relations | **California** (place of incorporation and principal place of business for SIS, Pike Insurance, and Salmen; place of incorporation of BTIS; location of potentially relevant records)<br>**Delaware** (place of incorporation of AmTrust)<br>**New York** (principal place of business of AmTrust; state in which BTIS is registered to do business) |
| Breach of Fiduciary Duty | **California** (place of incorporation and principal place of business for SIS; location of potentially relevant records)<br>**Delaware** (place of incorporation of AmTrust)<br>**New York** (principal place of business of AmTrust) |

4

| Cause of Action | Potentially Relevant States (Basis) |
|---|---|
| Breach of Contract | **New York** (forum selection clause in relevant contract) |
| Aiding and Abetting Breach of Fiduciary Duty | **California** (SIS's place of incorporation and principal place of business; place of incorporation of BTIS; location of potentially relevant records)<br>**New York** (state in which BTIS is registered to do business)<br>**Maryland** (principal place of business of Taft) |
| Aiding and Abetting Breach of Contract | **California** (place of incorporation and principal place of business for SIS; BTIS's state of incorporation; location of allegedly relevant documents; possibly relevant forum selection clause)<br>**New York** (state in which BTIS is registered to do business; possibly relevant forum selection provision)<br>**Maryland** (principal place of business of Taft)<br>**Texas** (forum selection provision in relevant contract) |
| Negligence | **California** (place of incorporation and principal place of business for SIS; location of records alleged to have been involved)<br>**New York** (Network's state of incorporation and principal place of business; state in which Preferred Re is registered to do business)<br>**Maryland** (principal place of business of Taft)<br>**South Carolina** (Sanders's residence; Preferred Re incorporation state) |
| Contribution | **California** (SIS's incorporation state; principal place of business for SIS, Pike Ins., and Salmen; residence of Pike, Salvagio, and Savoia; BTIS's incorporation state; possibly relevant forum selection clause)<br>**New York** (Network's state of incorporation and principal place of business; state in which BTIS and Preferred Re are registered to do business; possibly relevant forum selection clause)<br>**South Carolina** (Sanders's residence; Preferred Re incorporation forum)<br>**Montana** (place of incorporation for Preferred Global)<br>**Maryland** (principal place of business of Taft)<br>**Texas** (possible forum selection provision in relevant contract) |
| Indemnity | **California** (SIS's incorporation state; principal place of business for SIS, Pike Ins., and Salmen; residence of Pike, Salvagio, and Savoia; BTIS's incorporation state; possibly relevant forum selection clause)<br>**New York** (Network's incorporation state and principal place of business; state in which BTIS and Preferred Re are registered to do business; possibly relevant forum selection provision)<br>**South Carolina** (Sanders's residence; Preferred Re incorporation forum)<br>**Montana** (place of incorporation for Preferred Global)<br>**Maryland** (principal place of business of Taft)<br>**Texas** (forum selection provision in at least one relevant contract) |

Even assuming, *arguendo*, that the cursory analysis in the Motion is accurate and New York law applies, the end result is the same: both the Counterclaim and the Third-Party Complaint are properly pled under New York law or, at a minimum, can be amended if found wanting; the Motion should be denied.

## II.   THIRD-PARTY/COUNTERCLAIM PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AGAINST AMTRUST AND BTIS ARE PROPERLY PLED

In order for the tortious interference with prospective business relations claims to survive the Motion, Third-Party/Counterclaim Plaintiffs need only allege:  (1) the existence of a business relationship with a third-party; (2) that AmTrust/BTIS knew of the relationship and intentionally interfered with it; (3) that AmTrust/BTIS's sole purpose was to harm plaintiff, or that AmTrust/BTIS used dishonest, unfair, or improper means; and (4) injury to the relationship.  *See Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108-109 (2d Cir. 1997).

A claim for tortious interference with prospective business relations against a competitor necessarily implicates the competing interests of integrity of contracts with free competition.  *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190 (1980).  The mere fact that defendant is a competitor does not excuse liability.  *See* Restatement, Torts, 2d § 768. Rather, the tortfeasor-competitor will be free from liability only when its conduct is intended to advance competing interests (at least in part), does not unlawfully restrain trade, and is not effected through "wrongful means."  *Id*. at 191; *see also Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 (2d Cir. 1998) (citing *Guard-Life Corp.*, 50 N.Y.2d at 191); *Discover Group, Inc. v. Lexmark Intern, Inc.*, 333 F. Supp. 2d 78, 86 (E.D.N.Y. 2004).  The knowing breach of fiduciary duty amounts to a fraud or misrepresentation.  *Hannex*, 140 F.3d at 206 (*citing Gordon v. Bialystoker Ctr & Bikur Cholim, Inc.*, 45 N.Y.2d 692, 698 (1978)).  Evidence of a change to the business relationship that was interfered with, such as severance of the relationship is also required.  *See PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987).

In the Motion, AmTrust and BTIS allege that "[i]nterference with prospects may not arise out of a profit motive because the tort requires the tortfeasor to have 'either employed wrongful

means or acted for the sole purpose of inflicting intentional harm.'"  Motion at 10.  AmTrust and BTIS further allege that "the defendants proffer specifically that AmTrust and BTIS were acting in their own self-interest pursuing a profit motive.  These allegations mandate dismissal."  *Id.* at 10.  Although the Motion claims that "[t]hat these allegations mandate dismissal," the Motion fails to quote or cite any allegation of either the Counterclaim or the Third-Party Complaint.

The Third-Party Complaint clearly alleges that the appropriation of policies "was committed for the purpose of damaging Salmen and/or Pike Insurance," *see* Third-Party Compl., ¶ 72, *i.e.* not a profit motive.  In addition, the Third-Party Complaint alleges that BTIS "**[u]sing information obtained through tortious and/or illicit means** . . . intentionally solicited Policyholders whose insurance was issued by SIS under Producer Agreements with Pike Insurance and Salmen" and that, in so doing, "BTIS . . . also intentionally damaged Salmen and Pike Insurance by depriving them of commission income from the renewal of those policies." Third-Party Compl., ¶¶ 100, 102 (emphasis added).  The claim for tortious interference with prospective business relations is properly pled.

The Counterclaim against AmTrust is similarly complete.  SIS's Counterclaim, which is identical in form and substance to the Counterclaims of the other counterclaiming parties, states, in relevant part, that "**in violation of AmTrust's obligation to treat SIS's confidential proprietary business information with the utmost confidence**, AmTrust provided [SIS's confidential] information to BTIS," and that BTIS "[. . . .] [u]s[ed] the **wrongfully obtained confidential proprietary business information** [to] . . . intentionally solicit[] SIS's policyholders."  The Counterclaim refers specifically to "**AmTrust's intentional and wrongful appropriation of SIS's confidential proprietary business information**."  *See* SIS Countercl., ¶¶ 18-20, 29-30 (emphasis added).

New York law clearly establishes the propriety of the pleadings as filed.  For example, in *Flash Elecs., Inc. v. Universal Music & Video*, 312 F. Supp. 2d 379, 405 (E.D.N.Y. 2004), the District Court considered what amounted to "wrongful means."  Plaintiffs alleged Universal entered into exclusive distribution agreements with two of its distributors, after which, but before terminating its agreement with plaintiffs, Universal requested confidential information from plaintiffs about its customers to allegedly "better evaluate its business."  *Id*. at 383.  Plaintiffs further alleged that Universal passed this information to two of its distributors, who contacted plaintiffs' customers, informed them that plaintiffs were no longer authorized to sell Universal products, and bribed the customers not to do business with plaintiffs, essentially forcing the customers to only do business with the distributor-defendants.  *Id*.  The District Court held that plaintiffs "alleged a number of facts suggesting wrongful means" with respect to the tortious interference with the plaintiff's contracts with its customers.  *Id*. at 405.

Here, Plaintiffs' conduct is notably similar to the conduct alleged by plaintiffs in *Flash Electronics* that "suggest[ed] wrongful means."  Counterclaim Plaintiffs alleged that Counterclaim Defendants obtained confidential and proprietary information regarding their client-policyholders, through their right to inspect SIS's books and records associated with the AmTrust Insurance Program.  *See* Third-Party Compl. ¶ 98.  Plaintiffs, having purchased SIS's main competitor, BTIS, provided the confidential and proprietary client information to BTIS, *see* Third-Party Compl. ¶ 98, to intentionally damage Counterclaim Plaintiffs' business, *see* Third-Party Compl. ¶¶ 101-102.  BTIS, in possession of this information, then intentionally solicited Counterclaim Plaintiffs' clients whose policies were near expiration.  *See* Third-Party Compl. ¶ 105.  The allegation that a substantial number of clients allowed their policies with Counterclaim Plaintiffs to expire and obtained new policies from BTIS is sufficient to survive the Motion.

Similarly, in *Don Buchwald & Assocs., Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001), plaintiff alleged that defendants, prior to leaving plaintiff's employ, formed a competitor company and "stole a number" of plaintiff's clients, and copied and took confidential information from plaintiff's files. *Id*. The court found that plaintiff had sufficiently alleged a claim for tortious interference with prospective business relations because defendants' conduct went beyond merely persuading and the "mass exodus" of plaintiff's clients was "'too coincidental to permit a finding . . . that defendants did not improperly interfere." *Id*.

In the Motion, BTIS and AmTrust refer to the March 2015 *example* of an illicitly stolen client cited by Third-Party Plaintiffs as being temporally beyond the scope of the AmTrust Insurance Program. In so doing, **the Motion conveniently ignores the immediately antecedent allegation in the Third-Party Complaint that the "call and the policy referenced therein was but one *example* of an unknown number of policies that BTIS . . . wrongfully appropriated** from Salmen and/or Pike Insurance." Third-Party Compl., ¶ 71 (emphasis added). Even if the Motion is correct that the March 2015 example is of a "temporal relationship [] too attenuated to support a finding of causality," Motion at 14 (which is a question of fact inappropriate for adjudication on a pre-answer motion to dismiss), the explicit terms of the Third-Party Complaint make clear the March 2015 phone call is a mere example of a broader pattern of conduct, information about which is exclusively in the care, custody, and control of AmTrust and/or BTIS. AmTrust and BTIS are asking the Court to make substantial assumptions of fact that are inappropriate on a pre-answer motion. The Motion should be denied.

AmTrust and BTIS rely on a single case from the Northern District of New York, *Winfield Group, Inc. v. Erie Ins. Group*, No. 1:10-CV-1541, 2012 WL 4866451 (N.D.N.Y. Oct. 12, 2012), in support of their argument that the tortious interference claims should be dismissed.

In *Winfield*, plaintiff claimed defendant, in part, "used wrongful means to deprive [plaintiff] of the opportunity to retain the policy holders" based on a breach of its duty of fidelity to plaintiff. *Id*. at * 5.  Plaintiff was an insurance agency who, after purchasing another agency, was informed by defendant that it did not intend to appoint plaintiff as its agent.  *Id*. at *1.  Defendant agreed to appoint plaintiff as a temporary agent but shortly thereafter informed policyholders it was terminating the appointment.  *Id*. at *1-2.  The court rejected plaintiff's argument that defendant acted with "wrongful means" by breaching a duty of fidelity because the Court found there was no "relation of confidence."  *Id*.  Unlike the present case, there is no indication in the Court's opinion that plaintiff alleged any facts to support the existence of such a relationship or duty.

## III.   SIS PROPERLY PLED A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST PLAINTIFF

The Motion's sole argument against SIS's allegation of a fiduciary duty is that AmTrust, as SIS's principal, cannot owe SIS a fiduciary duty.  This is contrary to New York law.

### A.   AmTrust, As Principal To SIS, Owed A Fiduciary Duty To Its Agent SIS

AmTrust and BTIS allege that the fiduciary duty claims in both the Counterclaim and the Third-Party Complaint must fail because of the agent/principal relationship between SIS and AmTrust.  *See* Motion at 11.  The Motion fails entirely to dispute the validity and propriety of the fiduciary duty obligations except to the extent AmTrust and BTIS allege that SIS cannot be owed a fiduciary duty because SIS was AmTrust's agent.  *See* Motion at 10-11.

Under New York law, "**every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency**."  *See Sidella Exp.-Imp. Corp. v. Rosen*, 273 A.D. 490, 492 (1st Dep't 1948) (emphasis added).  The principal must avoid conduct that "harm[s] the agent's reputation[,] or make[s] it impossible for the agent to continue in the employment."  *See Popkin v. Nat'l Ben. Life Ins. Co.*,

711 F. Supp. 1194, 1202 (S.D.N.Y. 1989) (citing 3 N.Y.Jur.2d *Agency and Independent Contractors* § 217 (1980)). The obligation to act in good faith applies to the principal, who must use best efforts to promote the interests of the agent. *See Popkin*, 711 F. Supp. at 1202. In an agency relationship, the principal is required to "deal fairly and in good faith with [its] agent." *See* Restatement (Third) of Agency § 8.15 (2006).

The Motion's reliance, yet again, on *Winfield Group, Inc. v. Erie Ins. Group*, 531 Fed. App'x 92 (2d Cir. 2013), for the notion that a principal does not owe its agent a fiduciary duty is seriously misplaced. Significantly, there is no discussion of a principal-agent relationship in the Second Circuit's decision, just a limited statement that defendant did not owe a "fiduciary duty regarding the future business" of plaintiff's clients in the context of a fiduciary duty constituting to "wrongful means" in support of plaintiff's tortious interference claim. *Id*. at 92-93. To extrapolate from this statement that a principal does not owe its agent a fiduciary duty ignores controlling New York law that is directly contradictory: **a principal owes its agent a fiduciary duty**. *See Sidella*, 273 A.D. at 492 ("**every contract of agency carries with it an implied obligation on the part of the principal to do nothing that would thwart the effectiveness of the agency**") (emphasis added). While the Motion pleads for the application of "the logic of *Winfield* to apply here," *see* Motion at 11, the relevant and controlling law should in fact apply.

**B.    Even Absent The Principal-Agent Relationship, AmTrust Owed SIS A Fiduciary Duty**

The Motion appears to suggest that the only basis for the allegation of a fiduciary relationship between SIS and AmTrust is the agent/principal relationship. *See* Motion at 11. This misstatement is not supported by citation to the challenged pleadings, and fails to take into account the express terms contained therein. Specifically, the Counterclaim states that "**[b]y virtue of the General Agency Agreements** and the SIS Captive Reinsurance Agreement,

**Plaintiffs had substantial power over SIS, including the right to access certain of SIS's files**" and that "**[t]his imbalance in the position of the parties created a fiduciary relationship between AmTrust and SIS**."  SIS Counterclaim, ¶¶ 15-16 (emphasis added).  The Counterclaim notes that the SIS Captive Reinsurance Agreement, to which AmTrust admits SIS was not a party (but materially affected SIS), gave AmTrust significant power over SIS.  *See* Sec. Am. Compl., ¶¶ 5, 25-26.  The Counterclaim contemplates and pleads a fiduciary relationship outside the context of the principal/agency agreement, which relationship is apparently not challenged by the Motion.  In any event, a fiduciary duty, such as the one alleged in the Counterclaim, exists where the relationship between two parties is such that one of the parties is under a duty to act for the benefit of the other.  *See EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (2005) (citing Restatement [Second] of Torts, § 874, Comment *a*); *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013).   The existence of a fiduciary relationship is "necessarily fact-specific" and based upon one party placing a higher level of trust in another than is ordinarily present in an arm's length transaction.  *EBC I, Inc.*, 5 N.Y.3d at 19; *Weiner v. Lazard Freres & Co.*, 241 A.D.2d 114 (1st Dep't 1998).  An important consideration to determine the existence of a fiduciary relationship is reliance by one party on another and "de facto control and dominance."  *Krys v. Butt*, 486 Fed. App'x 153, 154 (2d Cir. 2012).

While courts will generally not create a fiduciary relationship if one is not contracted for, a contract is not required to form a fiduciary relationship.  *EBC I, Inc.*, 5 N.Y.3d at 20.  Rather, the existence of a fiduciary duty "results from the relation."  *Id*. (citing Restatement [Second] of Torts, § 874, Comment *b*); *Kern v. Robert Currie Assocs.*, 220 A.D.2d 255 (1st Dep't 1995).

In *EBC I*, the Court of Appeals found that Goldman Sachs owed EBC a fiduciary duty that was independent of the underwriting agreement between the parties.  5 N.Y.3d at 21.  Of

particular note was the Court's rejection of Goldman's argument that the parties were engaged in a typical buyer/seller transaction based on a finding that EBC believed its interests were aligned with Goldman when they agreed on the offering price for EBC's initial public offering.  *Id*.

In *Kern*, plaintiffs alleged they were owed a fiduciary duty by the interior decorator defendants.  220 A.D.2d at 256.  The Appellate Division agreed that there was an issue of fact as to whether a fiduciary relationship existed.  *Id*.  The Court found there was at least an issue of fact where plaintiffs relied on defendants for expert advice, to select particular design elements, and had further entrusted defendants with funds for to purchase those items.  *Id*.

The cherry-picking of the Counterclaim in the Motion cannot deflect the fact that the Counterclaim pleads the fiduciary duty Plaintiffs owed SIS.  SIS placed a substantial degree of trust in and reliance on Plaintiffs as part of the AmTrust Insurance Program, including providing access to SIS's confidential and proprietary business information.  In doing so, SIS believed its interests were aligned with Plaintiffs, and that the access SIS provided would only be used to further the growth and success of the AmTrust Insurance Program.  Further, SIS relied on Plaintiffs to provide expert assistance during the operation of the AmTrust Insurance Program.  By using the information AmTrust obtained from SIS to acquire SIS's main competitor, cancel the AmTrust Insurance Program, and steal SIS's clients, AmTrust breached its fiduciary duty.

**C.    The Counterclaim Properly Alleges AmTrust's Breach Of A Fiduciary Duty Independent Of Any Contractual Duties**

AmTrust argues that SIS cannot assert a breach of fiduciary duty claim because the alleged fiduciary duty is duplicative of SIS's contractual obligations under the Quota Share Agreements ("QSA") and  General Agency Agreements ("GSA") to provide access to SIS's books and records, which then became the property of Plaintiffs.  *See* Motion at 10-11.  AmTrust is quick to note that these agreements "speak for themselves," *see* Motion at 1, to the point of

13

misrepresenting Defendants' Answers (*i.e.* by claiming that SIS admitted the contracts are unambiguous, *which statement was never made by any party other than AmTrust and BTIS*), *see id.* Nevertheless, the Motion's attack of the fiduciary duty claims must fail.

Neither the QSA nor the GAA provide that SIS's books and records become Plaintiffs' property. In fact, both agreements explicitly provide that title and ownership of all books and records associated with the AmTrust Insurance Program is in the **name of the "Company," *i.e.* non-party USIC.** *See* Bryant Decl., Ex 1-1, at 1; *id.*, § 5.06; Ex. 2 at 1; *id.*, § 4.06. It is clear from the plain language of the contracts, touted as unambiguous by AmTrust and BTIS, that AmTrust has no contractual ownership right in SIS's books and records, and thus no contractual duty could arise from those contracts with respect to AmTrust. SIS's breach of fiduciary duty claim is not and cannot be duplicative of the breach of contract claim as it relates to AmTrust.

Moreover, it is well-settled that the same conduct may amount to a breach of contract and also constitute a breach of a fiduciary duty. *See Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 167-168 (1st Dep't 1987); *see also Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (1st Dep't 2007). A claim asserting a breach of a fiduciary duty is not duplicative of a breach of contract claim where the complaint pleads facts demonstrating that "the parties created a relationship of higher trust than would arise from their contracts alone." *See N. Shipping Funds I,* LLC, 921 F. Supp. 2d at 105. AmTrust owed SIS a fiduciary duty because of the substantial trust SIS placed on AmTrust with respect to the AmTrust Insurance Program. Thus, SIS's breach of fiduciary claim is not duplicative.

**D.    Third-Party Plaintiffs SIS And Taft Properly Alleged Claims For Aiding And Abetting AmTrust's Breach Of Fiduciary Duty Against BTIS**

New York recognizes a claim for aiding and abetting breach of a fiduciary duty. *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 330-331 (Bankr. S.D.N.Y. 1999).

14

AmTrust and BTIS do not appear to contest this fundamental point, *see generally* Motion at 12, but rather claim that the Third-Party Complaint is deficient because it uses the word "providing," instead of "knowingly." *Id.* at 12. This wordsmithing is unavailing.

A claim for aiding and abetting a breach of fiduciary duty requires that the primary actor breached its fiduciary duty and that the aider and abettor knowingly induced or participated in the breach. *See Wright v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987)). While actual knowledge of the breach of fiduciary duty is required, proof of intent to cause harm is not. *See Steed Finance LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003) (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, No. 93 Civ. 6876, 2000 WL 1694322, at *2, n.3 (S.D.N.Y. Nov. 13, 2000)); *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003).

For the purposes of an aiding and abetting claim, a party "knowingly participates" in the breach of a fiduciary duty when it provides "substantial assistance" to the primary violator. *Kaufman*, 307 A.D.2d at 126. "Substantial assistance" occurs when the aider and abettor "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables" the breach. *See Cromer Finance Ltd v. Berger*, 127 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). The Third-Party Complaint states that "Plaintiffs' breach of their fiduciary obligations to SIS would never have occurred without the material assistance and/or inducement of BTIS . . . ." Third-Party Compl., ¶ 126. SIS also alleged that BTIS knew of the fiduciary relationship. *See id.*, ¶ 111. Moreover, SIS sufficiently pled that BTIS knew of Plaintiffs' breach of its fiduciary duty by alleging that Plaintiffs provided confidential and proprietary policyholder information to BTIS. *See id.*, ¶ 114. The propriety of the aiding and abetting claim could not be any clearer.

**IV.    AMTRUST AND BTIS LACK STANDING TO SEEK DISMISSAL OF COUNTS ONE, TWO, AND SIX OF THE THIRD-PARTY COMPLAINT, AND FOR THOSE PARTS OF COUNTS SEVEN AND EIGHT NOT DIRECTED AT BTIS**

It is axiomatic that a party may not move for relief from claims that are not asserted directly against that party.  *See Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366 (FM), 2006 WL 2987054, *8 (S.D.N.Y. Oct. 18, 2006) (citing *Standard Chlorine of Del., Inc. v. Sinibaldi*, No. 91-188-SLR, 1994 WL 796603 (D. Del. Dec. 8, 1994)); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 455 (E.D.N.Y. 2009) ("**Movants do not have standing to move on behalf of other defendants to this action.**") (emphasis added); *Hindin v. N.Y. Lutheran Med. Ctr.*, No. 00-CV-7499(FB)(JMA), 2009 WL 366490, at *1 (E.D.N.Y. Feb. 13, 2009).

Thus, in *Dover* defendant was barred from moving to dismiss six counts of the third amended complaint where defendant was only named as a defendant in the seventh count. *Dover*, 2006 WL 2987054, *8.  Similarly, in *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 455 (E.D.N.Y. 2009), three defendants moved to dismiss claims asserted against other defendants. *Id*.  The District Court rejected the moving defendants' arguments, holding that "[m]ovants do not have standing to move on behalf of other defendants to this action." *Id*.

Here, the entirety of Point III of AmTrust and BTIS's memorandum of law is devoted to arguing for dismissal of claims asserted against Preferred Re, Sanders, and Network.  *See* Motion at 15-20.  Counsel for AmTrust and BTIS does not represent any of these parties, each of which is represented by able counsel whose notices of appearance are on the record, and who may bring motions of their own as they deem necessary and appropriate.  *See* ECFs 83, 89-90, 97-98.  BTIS lacks standing to move to dismiss Counts One, Two, and Six of the Third-Party Complaint, and further lacks standing to seek dismissal of those portions of Counts Seven and Eight that refer to

parties other than BTIS, while Plaintiffs lack standing to move to dismiss any portion of the Third-Party Complaint.  Simply put, pages 15 through 20 of the Motion should be disregarded.

**V.     SIS PROPERLY PLED CLAIMS AGAINST PREFERRED RE AND ROBERT SANDERS BECAUSE SIS IS A THIRD-PARTY BENEFICIARY OF ANY CONTRACT BETWEEN PLAINTIFFS AND PREFERRED RE/SANDERS**

Based on the above, there is no question that the portion of the Motion seeking dismissal of the claims against Preferred Re and Roberts Sanders is improper and should be disregarded. *See supra* at Point V.  To the extent the Court opts to address the Motion's improperly-asserted arguments, Defendants/Third-Party Plaintiffs respectfully submit the below.  Defendants/Third-Party Plaintiffs do not waive their argument regarding the impropriety of these arguments.

Third-party beneficiary status is conferred where a contract was made for the third party's direct benefit.  *See DFP Manuf'g Corp. v. Northrop Grumman Corp.*, No. 97 Civ. 4494 (JS), 1999 WL 33458384, *7 (E.D.N.Y. Mar. 23, 1999).  The fact-specific inquiry requires:  (1) a valid contract between two other parties; (2) that the contract was intended to benefit the third-party beneficiary, and (3) that the benefit is more than incidental.  *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 335 (1983); *OTG Brands*, 2015 WL 1499559, *8; *DFP Manuf'g Corp.*, 1999 WL 33458384, *7.  The agreement need not specifically mention the third party.  *Newman & Schwartz v. Asplundh Tree Expert Co, Inc.*, 102 F.3d 660, 663 (2d Cir. 1996).  However, to survive a motion to dismiss, the party claiming third-party beneficiary status must be able to plead the pertinent terms of the agreement.  *See OTG Brands*, 2015 WL 1499559, at *8 (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011)).

In *DFP*, there was a contract between Northrop and the Department of Defense, and DFP was held to be the beneficiary of the contract because the contract inured to the benefit of DFP. 1999 WL 33458384, at *7.  Under the contract, Northrop received payment from the Department

of Defense based upon its assistance to DFP.  *Id*.  Thus, the District Court concluded DFP was a

third-party beneficiary of the contract.  *Id*.

Plaintiffs do not dispute a valid contract with Preferred Re and Sanders, *see* Motion at 7,

which, as extended by the October 2010 addendum, was intended to benefit SIS, *see* Bryant

Decl., Ex. 13, Amendment No. 1.  The addendum to the agreement between Plaintiffs and

Preferred Re and Sanders states that "[Preferred Re] introduced [SIS] to AmTrust with the

intention that [SIS] would produce business on behalf of AmTrust with respect to [the AmTrust

Insurance Program]."  *See id.*  Further, the agreement between Plaintiffs and Preferred Re and

Sanders directly benefited SIS in that it provided SIS with the ability to offer "A-rated"

commercial general liability insurance policies to existing customers.  *See id.*  Lastly, the benefit

to SIS is not incidental – it was the essential purpose of the addendum.

## VI.   THIRD PARTY PLAINTIFFS' CLAIMS AGAINST NETWORK ARE PROPERLY PLED AND PROPERLY BEFORE THIS COURT

Again, there is no question that the Court should deny the Motion with respect to

Preferred Re, Robert Sanders, and Network.  *See supra* at Point V.  To the extent the Court opts

to address the Motion's improperly-asserted arguments, Defendants/Third-Party Plaintiffs

respectfully submit the below, without waiving the argument that the Motion is improper.

### A.   Third-Party Plaintiffs Sufficiently Alleged Third-Party Beneficiary Status Under the AmTrust/Network Master Claims Services Agreement

The Motion misstates entirely the basis of the breach of contract claim against Network.

The Motion:  (1) suggests that SIS is "alleging that it was the real party in interest all along";

(2) conflates the Third-Party Complaint and the Counterclaim; (3) fails to account for the

permissibility of alternative pleading; (4) conflates admissions and allegations in complaint; and

(5) generally fails to raise a cognizable challenge to the claims against Network.

The Third-Party Complaint clearly alleges the basis for breach of contract liability, specifically that "**Network knew or should have known that SIS and Taft are intended beneficiaries under the MCSA**," and that "Network's knowledge of SIS and Taft's status as beneficiaries under the MCSA stems from . . . knowledge that SIS and Taft would benefit from Network's compliance and satisfaction with the terms of the MCSA, by reducing exposure associated with proper fees charged by Network and/or by reducing reserve or real exposure and loss associated with the program."  Third-Party Compl., ¶¶ 86-87 (emphasis added).  SIS thus clearly alleges that it was a third-party intended beneficiary of the Master Claims Services Agreement between Plaintiffs and Network, including the necessary elements:  (1) the existence of a valid contract between two other parties; (2) intended third-party beneficiary status arising from the contract, and (3) a more than incidental benefit.  *Burns Jackson*, 59 N.Y.2d at 335.

There is no dispute there was a valid contract between Plaintiffs and Network.  Schedule C to the Master Claims Services Agreement specifically states that Plaintiffs, SIS, and USIC entered into agreements, referred to in those documents as the "SIS Agreements."  *See* Bryant Decl., Ex. 14.  According to "Schedule C," Plaintiffs retained Network "in accordance with the in the [sic] Quota Share Agreement" to serve as the claims adjuster.  *See id.*  Network was to adjust claims filed under the "SIS Policies."  *See id.*  SIS was specifically mentioned in Schedule C, and the entire purpose of Schedule C was to designate the claims adjuster for the AmTrust Insurance Program that was created, at least in part, for the direct benefit of all those involved – including SIS.  SIS was an intended beneficiary of Schedule C.

**B.      Third-Party Plaintiffs' Claims Against Network Are Distinct From Any Such Claims Raised In The Arbitration**

While a District Court has the discretion to stay claims (or an entire action) brought before it related to an arbitration, such a harsh remedy is only appropriate when the stayed issue

19

is referable to the arbitration.  *See Chartis Seguros Mexico, S.A. v. HLI Rail & Rigging, LLC*, 967

F. Supp. 2d 756, 767 (S.D.N.Y. 2014) (citing *Montauk Oil Transp. Corp. v. Steamship Mut.*

*Underwriting Ass'n (Bermuda) Ltd.*, 859 F. Supp. 669, 677 (S.D.N.Y. 1994) and *HG Estate,*

*LLC v. Corporacion Durango S.A. De de C.V.*, 271 F. Supp. 2d 587, 596 (S.D.N.Y. 2003)).

Whether a matter is referable to arbitration is determined by whether that issue is "inextricably

intertwined" with the arbitral claims.  *Chartis*, 967 F. Supp. 2d at 767.

Third-Party Plaintiffs' claims are "not inextricably intertwined" with the arbitration.

Article VII of the GAA purports to require SIS to indemnify and hold harmless TIC for, *inter*

*alia*, "losses, claims, damages" incurred in relation to the GAA.  *See* Bryant Decl., Ex. 1-1.

Plaintiffs invoked this very provision as support for their claim that SIS is responsible, **in this**

**action**, for the actual fees paid to Network for Network's work as the TPA and for the alleged

underfunding of the Loss Fund and the Loss Corridor.  *See* Bryant Decl., Ex. 1, ¶¶ 58-69.

Plaintiffs' own pleadings placed this issue squarely before the Court.  That this *may* be a defense

for the arbitral Respondents is not a factor in determining whether SIS – which is *not* a party to

the arbitration – has a claim against Network before this Court.  In fact, as Plaintiffs well know,

the GAA, and SIS's alleged obligations thereunder, are not the subject of the arbitration; as

Plaintiffs vigorously asserted in their Opposition to Defendants' Motion to Dismiss (and as the

Court ultimately ruled), the issues framed by Plaintiffs' Complaint (and the subsequent

amendments), including by definition liabilities arising under and related to the GAA, are

entirely independent of the arbitration, and properly litigated before this Court.  *See* Berger

Decl., Ex. E at 20.

Even if the issues raised by the claims against Network were directly related to the

arbitration, the actual claims themselves are not referable to arbitration.  The arbitral Panel's

responsibilities are defined by Article 22 of the Captive Reinsurance Agreement, which states that all disputes "**between [Plaintiffs] and [Pac Re and Cell 5] arising out of the provision of this Agreement . . . shall be submitted to arbitration**."  *See* Bryant Decl., Ex. 1-2, Article 22. By its express terms, the assignment clause precludes arbitration of SIS's and Taft's claim against Network.  *See* Bryant Decl., Ex. 1-2, Article 27 ("This Agreement shall not be delegated or assigned in whole or in part by either party.").  In addition, the claims against Network are premised on allegations that Network breached its duties to a third-party beneficiary.  *See* Third-Party Compl, ¶¶ 86-87.  Nor have Plaintiffs cited *any* controlling authority that supports their position that SIS should not be permitted to assert its independent claim against the party whose negligent work is the fundamental factor underlying Plaintiffs' alleged damages.

## VII.   DEFENDANTS/THIRD-PARTY PLAINTIFFS' CLAIMS FOR CONTRIBUTION AND INDEMNITY ARE PROPERLY PLED

Defendants/Third-Party Plaintiffs have properly pled causes of action for contribution, common law indemnification, and contractual indemnification.  *See* Third-Party Compl., ¶¶ 143-50.  AmTrust and BTIS improperly argue (without any standing to do so as to Network, Sanders, and Preferred Re) that the contribution claims must be dismissed because contribution claims are not available for "purely economic injuries absent independently actionable tort duties."  Motion at 20.  However, when the underlying complaint sounds in both contract and tort, the necessary predicate tort liability exists for a defendant to bring a claim for contribution.  *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp. 2d 322, 327 (S.D.N.Y. 2011) (quoting *Tower Bldg. Restoration, Inc. v. 20 E. 9th St. Apartment Corp.*, 295 A.D.2d 229, 230 (1st Dep't 2002); *see also Sound Refrigeration & Air Conditioning, Inc. v. All City Testing & Balancing Corp.*, 84 A.D.3d 1349, 1350 (2d Dep't 2011).

To support the request for dismissal of the contribution claims, **the Motion overlooks the fact that the majority of Plaintiffs' claims against Defendants/Third-Party Plaintiffs (8 out of 10) are not contract claims, but rather are tort-based claims, including negligence**. *See* Second Am. Compl. at Counts Three (Breach of Fiduciary Duty); Four (Veil Piercing and Alter Ego); Five (Fraudulent Conveyance); Six (Conversion); Seven (Conversion); Eight (Aiding and Abetting Breach of Fiduciary Duty); Nine (Negligence); Ten (Declaratory Judgment).   As long as these tort-based claims are pending, the contribution claim is proper.

Dismissal of the indemnification claims is not appropriate.   First, the Motion fails to address contractual indemnification.   Motion at 20-21.   On that basis alone, the claim should survive. *See supra* Point VII.

Second, the Motion incorrectly suggests that the indemnification claim fails because it does not allege Third-Party Defendants' potential vicarious liability. *See* Motion at 20.   This is a misstatement of New York law, which only requires a plaintiff to allege defendant owed a duty. *See, e.g.*, *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp. 2d 322, 329-30 (S.D.N.Y. 2011); *Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture,* No. 06 Civ. 181(GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007).   Defendants/Third-Party Plaintiffs pled a duty existed as between Third-Party Defendants and Plaintiffs, *see, e.g.*, Third Party Compl. at ¶¶ 74, & 76, and between Third-Party Defendants and Defendants/Third-Party Plaintiffs, *see, e.g.*, Third Party Compl. at ¶¶ 78, 79, 136, 137, 139, & 140.   The claim is proper.

Interpreting New York law, the Second Circuit has identified two sets of circumstances in which a right to implied indemnification may exist:  (1) from the special nature of a contractual relationship between two parties (referred to as the "implied contract theory"); and (2) where there is great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss

that was primarily the responsibility of the other (referred to as the "implied-in-law" indemnity). *Fromer v. Yogel*, 50 F. Supp. 2d 227, 240 (S.D.N.Y. 1999) (citing *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir. 1986)).   Under New York Law, implied indemnity is a restitution concept that permits shifting the loss in order to preclude unjust enrichment of one tortfeasor at the expense of the other.   *Fromer v. Yogel*, 50 F. Supp. 2d 227, 240 (S.D.N.Y. 1999) (citing *Mas v. Two Bridges Assocs.,* 75 N.Y.2d 680 (1990)).

Here, denying Defendants/Third-Party Plaintiffs' indemnification claims before any substantive discovery of the Third-Party Defendants has gone forward would result in the unjust enrichment of Third-Party Defendants, as well as Plaintiffs.   Not all of the Third-Party Defendants have even answered yet; a pre-answer motion, before discovery has been had on these issues, is not the proper vehicle for handling these claims.

## VIII.   THIS COURT SHOULD IGNORE PLAINTIFF'S AND THIRD-PARTY DEFENDANT'S SPECIOUS "DELAY" ARGUMENT

AmTrust and BTIS would have this Court believe that the Counterclaim and the Third-Party Complaint were filed for harassment and/or delay.  *See* Motion at 1.  Indeed, throughout the relatively brief timeframe of this litigation, Plaintiffs (and now apparently BTIS, coincidentally represented by Plaintiffs' counsel) have been fond of accusing Defendants/Third-Party Plaintiffs of delaying the proceedings and obfuscating progress.

The Motion's cry of delay is a veneer consistently applied in order to attempt to exert pressure on Defendants/Third-Party Plaintiffs.  The narrative is a tired advocatory trick that long ago ran its course.  Plaintiffs and BTIS appear to be adhering to the belief that any exertion of Defendants' legal or equitable rights is tantamount to contumacious conduct.  The clear and unequivocal litigation timelines as stated by the Court make it evident that delay will not be tolerated.  Between the time that Plaintiffs agreed to an arbitral stay and the April 10, 2015 Initial

Conference in this proceeding, *both sides* tried (unsuccessfully) to agree on an approach to document collection.  The parties negotiated and agreed upon a Proposed Scheduling Order that allowed 12 months for discovery.  When the Court ordered a seven month discovery period (from the April 10 conference date), Plaintiffs began to leverage the situation by accusing Defendants of delay.  That narrative miscasts the events leading up to the Initial Conference, and makes no effort whatsoever to acknowledge the extensive, expensive, and consistent work done by Defendants to meet their discovery obligations in good faith.  Defendants have collected some 10 million pages and produced approximately 1 million.  Plaintiffs have received Defendants document demands and interrogatories, which come due shortly.  Defendants are firing on all cylinders in order to satisfy the discovery obligations of the Court's April 10, 2015 Order and Plaintiffs' own broad discovery demands.

Even assuming, *arguendo*, that Defendants were interested in delaying proceedings – which they are not – they would not be able to do so.  The discovery and scheduling order issued by the Court was quite clear – discovery will continue, it will be broad, and it will be complete by November 20.  If Plaintiffs and/or BTIS disagree with a position taken by Defendants (or any other party) they are within their rights to raise an objection at the appropriate time.  The constant cry of delay, however, is an empty mantra; AmTrust and BTIS would be better served litigating the issues, as opposed to asserting specious arguments about fictional delay tactics.

## IX.   IN THE ALTERNATIVE, DEFENDANTS/THIRD-PARTY PLAINTIFFS SHOULD BE PERMITTED TO AMEND

Defendants/Third-Party Plaintiffs specifically request that they be allowed to amend the Counterclaim and Third-Party Complaint in the event that the Court credits the Motion.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint should be freely given to further the policy of allowing parties "an opportunity to test [their] claim[s] on the

merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In fact, in the Second Circuit, the "usual practice upon granting a motion to dismiss to allow leave to replead." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198-199 (2d Cir. 1990).  In *Ronzani*, plaintiff offered to amend the complaint to correct any deficiencies with respect to his federal securities law claim, and it was deemed an abuse of discretion to dismiss the complaint without granting leave to amend.   *Id*. Plaintiffs/Third-Party Defendants respectfully request to replead any claim deemed deficient.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants/Third-Party Plaintiffs respectfully request that the Court enter an order denying Plaintiff AmTrust and Third-Party Defendant BTIS's motion to dismiss and denying the Motion's alternative request for a stay.

Dated: New York, New York
      July 15, 2015

By:    /s/ Peri A. Berger
       Abbie Eliasberg Fuchs, Esq.
       Brian A. Bender, Esq.
       Peri A. Berger, Esq.
       **HARRIS BEACH PLLC**
       100 Wall Street, 23rd Floor
       New York, New York 10005
       Telephone: (212) 687-0100
       Fax: (212) 687-0659
       afuchs@harrisbeach.com
       bbender@harrisbeach.com
       pberger@harrisbeach.com
       *Attorneys for Defendants/Third-Party Plaintiffs*
