UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.

                          Plaintiffs,                         Case No.: 14-CV-9494

      -against-

SAFEBUILT INSURANCE SERVICES, INC.
a/k/a SAFEBUILT WHOLESALE INSURANCE
SERVICES, INC., THE TAFT COMPANIES,
LLC, PREFERRED GLOBAL HOLDINGS, INC.,
DAVID E. PIKE, DAVID E. PIKE, INC., PHILIP
SALVAGIO, SALMEN INSURANCE SERVICES,
INC. f/k/a SALVAGIO, INC., CARL M. SAVOIA,
JOHN DOE CORPORATIONS 1-5, and JOHN
DOES 1-5,

                      Defendants.
------------------------------------------------------------X
SAFEBUILT INSURANCE SERVICES, INC.,
THE TAFT COMPANIES, LLC, PREFERRED
GLOBAL HOLDINGS, INC., DAVID E. PIKE,
DAVID E. PIKE, INC. d/b/a PIKE INSURANCE
SERVICES, PHILIP SALVAGIO, and SALMEN
INSURANCE SERVICES, INC.

                    Third Party Plaintiffs,

      -against-

NETWORK ADJUSTERS, INC., ROBERT SANDERS,
PREFERRED REINSURANCE INTERMEDIARIES,
BUILDERS & TRADESMEN'S INSURANCE
SERVICES, INC., JOHN DOE  BROKERAGES 1-5,
JOHN DOE BROKERS 1-5, JOHN DOE
CORPORATIONS 6-15, AND JOHN DOES 6-15,

                  Third-Party Defendants.

------------------------------------------------------------X


**THIRD PARTY DEFENDANT NETWORK ADJUSTERS, INC.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.     Preliminary Statement ................................................................................. 1

II.    Statement Of Allegations ........................................................................... 2

III.   Standard ..................................................................................................... 3

IV.   Argument .................................................................................................... 3

     A.    New York Law Applies To Third Party Plaintiffs' Causes Of
           Action .................................................................................................. 3

     B.    Third Party Plaintiffs Lack Standing Under the Reinsurance
           Agreement Between SIS and AmTrust to Assert Any Claims
           Against Network. .............................................................................. 7

     C.    SIS's And Taft's Breach of Contract Claim Is Without Merit. ...................... 12

           1.    SIS and Taft Do Not Have Prudential Standing To Assert A
                   Claim .............................................................................................. 12

           2.    SIS and Taft Have Failed To Cite Specific Sections Of A
                   Contract .......................................................................................... 15

           3.    SIS and Taft Cannot Establish Damages. ............................................ 16

     D.    SIS's and Taft's Negligence Claim Is Without Merit ...................................... 16

           1.    The Economic Loss Doctrine Bars SIS's And Taft's
                   Negligence Claim ............................................................................ 16

            2.    SIS And Taft Do Not Have Prudential Standing To Assert
                   A Claim. .......................................................................................... 17

           3.    SIS's and Taft's Negligence Claim Does Not Allege A
                   Viable Tort Claim. ........................................................................... 18

           4.    Network Did Not Owe SIS And Taft A Duty Of Care. ......................... 18

           5.    SIS And Taft Cannot Establish Damages. ............................................ 19

     E.    Third Party Plaintiffs' Contribution  Claim Is Without Merit. ......................... 19

     F.    Third Party Plaintiffs' Common Law Indemnification Claim Is
           Without Merit ...................................................................................... 22

           1.    Third Party Plaintiffs Cannot Recover For Common Law
                   Indemnification Because They Participated In Wrongdoing ............... 22

2. Third Party Plaintiffs' Common Law Indemnification Claim Must Be Dismissed Because Network Did Not Owe A Duty Of Care. ........................................................................................ 24

G. Third Party Plaintiffs' Contractual Indemnification Claim Is Without Merit. .................................................................................................... 24

1. Third Party Plaintiffs Are Not Parties Or Intended Beneficiaries To Any Contract With Network Providing Contractual Indemnification. ............................................................ 25

2. Third Party Plaintiffs Cannot Obtain Contractual Indemnification For Their Intentional Conduct. ................................. 25

V. Conclusion ........................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*,
    2015 U.S. Dist. LEXIS 43026 (S.D.N.Y. Mar. 31, 2015) ................................................3, 5, 6

*Allstate Ins. Co. v. Am. Home Assur. Co.*,
    43 A.D.3d 113 (N.Y. App. Div. 1st Dep't 2007)....................................................................10

*Arch Ins. Co. v. Harleysville Worcester Ins. Co.*,
    2014 U.S. Dist. LEXIS 91928 (S.D.N.Y. July 7, 2014) ..........................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................3, 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................................3

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*,
    692 F.3d 42 (2d Cir. 2012)....................................................................................................18

*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*,
    59 Cal. 4th 568 (Cal. 2014)....................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................3

*British Int'l Ins. Co. v. Seguros La Republica, S.A.*,
    342 F.3d 78 (2d Cir. 2003)......................................................................................................8

*CAMOFI Master LDC v. College P'ship*,
    452 F. Supp. 2d 462 (S.D.N.Y. 2006)...................................................................................20

*Christiania General Ins. Corp. of New York v. Great American Ins. Co.*,
    979 F.2d 280 (2d Cir. 1992)....................................................................................................8

*Colden v. West Coast Life Ins. Co.*,
    2013 U.S. Dist. LEXIS 37817 (D. Md. Mar. 19, 2013).........................................................4

*Conestoga Title Ins. Co. v. ABM Title Servs.*,
    2012 U.S. Dist. LEXIS 86614 (S.D.N.Y. June 20, 2012)...........................................20, 21, 23

*Davis v. Brown*,
   2014 U.S. Dist. LEXIS 130514 (E.D.N.Y. Sept. 15, 2014)...................................................17

*Fox v. Idea Sphere, Inc.*,
   2013 U.S. Dist. LEXIS 42674 (S.D.N.Y. Mar. 21, 2013) ......................................................15

*Galeotti v. Cianbro Corp.*,
   2013 U.S. Dist. LEXIS 88244 (N.D.N.Y June 24, 2013) ........................................................6

*Goodman v. Port Auth. of N.Y. & N.J.*,
   850 F. Supp. 2d 363 (S.D.N.Y. 2012)...................................................................................25

*Gray v. Wackenhut Servs.*,
   721 F. Supp. 2d 282 (S.D.N.Y. 2010)...................................................................................18

*Jones v. Hyatt Ins. Agency, Inc.*,
   356 Md. 639 (Md. 1999).........................................................................................................4

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
   742 F.3d 42 (2d Cir. 2014).....................................................................................................5

*King County v. IKB Deutsche Industriebank AG*,
   863 F. Supp. 2d 288 (S.D.N.Y. 2012)...............................................................................4, 16

*Licci v. Lebanese Canadian Bank, SAL*,
   672 F.3d 155 (2d Cir. 2012)................................................................................................4, 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..............................................................................................................10

*Mendel v. Henry Phipps Plaza W., Inc.*,
   6 N.Y.3d 783 (2006) .............................................................................................................13

*Mentor Ins. Co. (U.K.) v. Norges Brannkasse*,
   996 F.2d 506 (2d Cir. 1993)...................................................................................................8

*Mitchell v. Icolari*,
   969 N.Y.S.2d 503 (N.Y. App. Div. 2d Dep't 2013)....................................................4, 18, 19

*Nat'l Union Fire Ins. Co. v. Am. Re-Insurance Co.*,
   441 F. Supp. 2d 646 (S.D.N.Y. 2006)................................................................................8, 9

*Neumeier v. Kuehner*,
   31 N.Y.2d 121 (N.Y. 1972) ....................................................................................................6

*North River Ins. Co. v. ACE Am. Reinsurance Co.*,
   361 F.3d 134 (2d Cir. 2004)................................................................................................7, 8

iv

*Nyu Hosps. Ctr. v. HRH Constr. LLC (In re HRH Constr. LLC)*,
    2015 U.S. Dist. LEXIS 31967 (S.D.N.Y. Mar. 12, 2015) .......................................................23

*Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*,
    769 F. Supp. 2d 322 (S.D.N.Y. 2011)....................................................................19, 22, 24

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
    757 F.3d 79 (2d Cir. 2014)...................................................................................12, 14

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
    2015 U.S. Dist. LEXIS 70675 (S.D.N.Y. June 1, 2015)..........................................................16

*Spinelli v. NFL*,
    2015 U.S. Dist. LEXIS 40716 (S.D.N.Y. Mar. 27, 2015) .......................................................15

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het*
    *Kapitaal Van Saybolt International B.V. v. Schreiber*,
    407 F.3d 34 (2d Cir. 2005)...............................................................................................6

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
    425 F.3d 119 (2d Cir. 2005).........................................................................13, 14, 15

*Swan Media Group, Inc. v. Staub*,
    841 F. Supp. 2d 804 (S.D.N.Y. 2012)....................................................................................16

*TeeVee Toons, Inc. v. Gerhard Schubert GmbH*,
    2006 U.S. Dist. LEXIS 59455 (S.D.N.Y. Aug. 22, 2006)...........................................4, 17, 18

*Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.*,
    419 F.3d 181 (2d Cir. 2005)...............................................................................................9

*Travelers Cas. & Sur. Co. v. Ins. Co. of North America*,
    609 F.3d 143 (3d Cir. 2010)............................................................................................10

*Trump Vill. Section 3, Inc. v. N.Y. State Hous. Fin. Agency*,
    764 N.Y.S.2d 17 (N.Y. App. Div. 1st Dep't 2003) .................................................................21

*UBS Fin. Servs. v. Thompson*,
    217 Md. App. 500 (Md. Ct. Spec. App. 2014) ......................................................................4

*United States Bank v. Commonwealth Land Title Ins. Co.*,
    2015 U.S. Dist. LEXIS 36131 (S.D.N.Y. Mar. 23, 2015) ..........................................20, 22, 23

*United States Fid. & Guar. Co. v. American Re-Ins. Co.*,
    20 N.Y.3d 407 (2013) ..............................................................................................8, 9, 10

*W&W v. Rancho Del Lago Homeowner's Ass'n*,
    2013 Cal. App. Unpub. LEXIS 4288 (Cal. App. 4th Dist. June 19, 2013)................................4

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    44 F. Supp. 3d 409 (S.D.N.Y. 2014) ...................................................................................19

*Yost v. Nationstar Mortg., LLC*,
    2013 U.S. Dist. LEXIS 128504 (E.D. Cal. Sept. 6, 2013) ............................................4

*Zaretsky v. William Goldberg Diamond Corp.*,
    2014 U.S. Dist. LEXIS 114636 (S.D.N.Y. Aug. 18, 2014) .........................................16

**Statutes**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 3, 25

I.      **Preliminary Statement**

This matter arises out of an insurance/reinsurance dispute between Plaintiffs AmTrust North America, Inc. and Technology Insurance Company, Inc. and Defendants/Third Party Plaintiffs Safebuilt Insurance Services, Inc. ("SIS"), The Taft Companies, LLC ("Taft"), Preferred Global Holdings, Inc., David E. Pike, David E. Pike, Inc. d/b/a Pike Insurance Services, Philip Salvagio, Salmen Insurance Services, Inc., and Carl M. Savoia.

Plaintiffs and Third Party Plaintiffs entered into a series of agreements whereby insurance policies underwritten by Third Party Plaintiffs would be issued, reinsured by Plaintiffs, adjusted by Plaintiffs and then reinsured by Third Party Plaintiffs. Plaintiffs contracted with Third Party Defendant Network Adjuster's Inc. ("Network") to adjust claims under these policies. Plaintiffs contend that Third Party Plaintiffs have failed to meet their reinsurance obligations under these agreements. Third Party Plaintiffs filed a Third Party Complaint, and Proposed Amended Third Party Complaint, against Network, as a result of its claims handling.

Network now respectfully submits this memorandum of law in support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of all claims against it in the Third Party Complaint and Proposed Amended Third Party Complaints. Third Party Plaintiffs do not have any relationship, contractual or otherwise, with Network and have no basis to assert claims against it due to the lack of relationship and basic principles of reinsurance law.

More specifically, the Third Party and Amended Third Party Complaints should be dismissed because (1) Third Party Plaintiffs lack standing to assert any claims against Network because they have not suffered an injury upon which they can bring a third-party action based on the follow the fortunes doctrine; (2) the breach of contract claim is without merit because SIS and Taft are not parties or third party beneficiaries of a contract with Network, they failed to cite specific contract language, and they cannot establish damages; (3) the negligence claim is

1

without merit because it is barred by the economic loss doctrine, SIS and Taft do not have standing to assert the claim, the claim does not allege a viable tort, Network did not owe them a duty of care and they cannot establish damages; (4) the contribution claim is without merit because Third Party Plaintiffs seek only economic loss and do not allege a duty of care; (5) the common law indemnification claim is without merit because Third Party Plaintiffs participated in the alleged wrongdoing and Network does not owe a duty of care, and (6) the contractual indemnification claim is without merit because they are not parties or third party beneficiaries to any contract with Network and they engaged in intentional conduct.

## II.    <u>Statement Of Allegations</u>

On May 15, 2015, Third Party Plaintiffs, not including Carl Savoia, filed a Third Party Complaint against Network alleging claims for negligence, breach of contract, contribution and indemnification. (T.P. Compl., Doc. 58). On June 24, 2015, Third Party Plaintiffs, including Carl Savoia, moved to file an Amended Third Party Complaint. (Mot. To Amend, Docs. 79-82). As part of their motion, Third Party Plaintiffs included a Proposed Amended Third Party Complaint. (Am. T.P. Compl., Doc. 80-1). Other than adding Carol Savoia as a Third Party Plaintiff, the allegations were substantially similar to the Third Party Complaint. The motion is pending.

In 2010, Third Party Plaintiffs and Plaintiffs entered into a series of agreements whereby insurance policies were unwritten by Third Party Plaintiffs and insured by non-party USIC. (Pls.' Sec. Am. Compl. ¶¶ 24-25, Doc. 54). These policies were then reinsured by Plaintiffs, who were given oversight of claims handling and the authority to appoint a third party administrator. (*Id.* at ¶ 25). Plaintiffs' exposure was then reinsured by Third Party Plaintiffs. (*Id.* at ¶ 25).

Third Party Plaintiffs alleged that Plaintiffs entered into a Master Claims Services Agreement ("MCSA") with Network for it to act as the third party administrator for the

insurance program. (T.P. Compl. ¶¶ 13-14; Am. T.P. Compl. ¶¶ 14-15).[1] Third Party Plaintiffs contend that Plaintiffs' alleged damages consistent of millions of dollars in fees allegedly charged by Network. (T.P. Compl. ¶¶ 32, 38-41; Am. T.P. Compl. ¶¶ 34, 40-43). Third Party Plaintiffs do not allege any direct relationship with Network.

## III.   __Standard__

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Accordingly, a district court must accept as true all well-pled factual allegations in the complaint, and draw all inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV.   __Argument__

### A.   _New York Law Applies To Third Party Plaintiffs' Causes Of Action._

New York choice of law principles apply to this matter because the matter is premised on diversity jurisdiction. *See 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 2015 U.S. Dist. LEXIS 43026, *29 (S.D.N.Y. Mar. 31, 2015) ("A federal court sitting in

---

[1] All references to Third Party Plaintiffs' Third Party Complaint and Amended Third Party Complaint refer to Document Nos. 58 and 80-1, respectively.

diversity jurisdiction must apply the choice-of-law principles of the forum state….").

"A choice-of-law analysis need not be performed unless there is an 'actual conflict' between the applicable rules of two relevant jurisdictions. If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (internal quotations and citations omitted). If a conflict exists, "New York conflicts law directs that '[t]he law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Id.*

New York law applies to SIS's and Taft's negligence claim. The only relevant jurisdictions for a choice of law analysis are New York, California and Maryland. (T.P. Compl. ¶¶ 1, 3, & 12; Am. T.P. Compl. ¶¶ 1, 3, & 13).

All three jurisdictions similarly define negligence claims. *Mitchell v. Icolari*, 969 N.Y.S.2d 503, 505 (N.Y. App. Div. 2d Dep't 2013); *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (Cal. 2014); *UBS Fin. Servs. v. Thompson*, 217 Md. App. 500, 525 (Md. Ct. Spec. App. 2014). All three jurisdictions apply the economic loss doctrine to negligence claims seeking purely economic recovery. *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302 (S.D.N.Y. 2012); *Yost v. Nationstar Mortg., LLC*, 2013 U.S. Dist. LEXIS 128504, *32 (E.D. Cal. Sept. 6, 2013); *Colden v. West Coast Life Ins. Co.*, 2013 U.S. Dist. LEXIS 37817, *17 (D. Md. Mar. 19, 2013). All three jurisdictions hold that a simple breach of contract generally does not give rise to a tort claim. *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, 2006 U.S. Dist. LEXIS 59455, *56 (S.D.N.Y. Aug. 22, 2006); *W&W v. Rancho Del Lago Homeowner's Ass'n*, 2013 Cal. App. Unpub. LEXIS 4288, *29 (Cal. App. 4th Dist. June 19, 2013); *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 653 (Md. 1999). Therefore, New York law applies.

Even if there was a conflict, New York law applies. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012). Here, SIS and Taft allege that Network, a domestic New York corporation that has its home office in New York, negligently performed services. (T.P. Compl. ¶¶ 12, 78-79; Am. T.P. Compl. ¶¶ 13, 82-83). Thus, it alleges that the tort occurred in New York requiring application of New York law.

New York law applies to the breach of contract and contractual indemnification claims. The breach of contract claim against Network by SIS and Taft is predicated on the MCSA. (T.P. Compl. ¶¶ 86-91; Am. T.P. Compl. ¶¶ 90-95). Third Party Plaintiffs have not identified the contractual basis for the contractual indemnification claim. (T.P. Compl. Ct. 8; Am. T.P. Compl. Ct. 8). However, the only contract with Network identified is the MCSA. (*See* T.P. Compl. Cts. 1 & 2; Am. T.P. Compl. Cts. 1 & 2). The MCSA provides that it "shall be governed by, construed and enforced in accordance with, the laws of the State of New York (without regard to its conflicts or choice of laws principles that could or would cause the application of any other laws)." MCSA, § 10.11, Exhibit A.[2]

"New York law provides that, as a general matter, the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored." *2002 Lawrence*

---

[2] "In ruling on a 12(b)(6) motion, . . . a court may consider … documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 2015 U.S. Dist. LEXIS 43026, *27-28 (S.D.N.Y. Mar. 31, 2015) (internal quotations omitted) quoting *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). Here, it is clear that Third Party Plaintiffs relied on the MCSA when drafting the Third Party and Amended Third Party Complaintd since they alleged obligations Network allegedly had pursuant to the MCSA and conduct that allegedly breached Network's obligations. (*See* T.P. Compl., Ct. 2; Am. T.P. Compl., Ct. 2). Therefore, while not attached to a complaint, the Court may still consider the MCSA in deciding this Motion to Dismiss.

*R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 2015 U.S. Dist. LEXIS 43026, *50 (S.D.N.Y. Mar. 31, 2015) (internal quotations omitted). "[A]bsent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Id.* at *51. New York has sufficient contacts because Third Party Plaintiffs allege that Network is a domestic New York corporation and has its home office in New York. (T.P. Compl. ¶ 12; Am. T.P. Compl. ¶ 13).

New York law applies to the common law indemnification and contribution claims. There are numerous state laws that potentially apply to the common law indemnification and contribution claims since the claims are by all Third Party Plaintiffs against all Third Party Defendants. (T.P. Compl. ¶¶ 1-12, 143-150; Am. T.P. Compl. ¶¶ 1-14, 147-54). Even assuming a conflict exists among the numerous jurisdiction, New York law still applies.

"[W]hen a conflict concerns a loss-allocating rule, including a claim for contribution or indemnification, the court applies the three-part interest analysis rule established in *Neumeier v. Kuehner* … to determine the state with the greatest interest or concern with the specific issues raised in the litigation." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005). The third *Neumeier* rule, which applies that the law of the locus state, applies to all split domicile cases that do not fit within the other rules, as in this matter. *Galeotti v. Cianbro Corp.*, 2013 U.S. Dist. LEXIS 88244, *25 (N.D.N.Y June 24, 2013). Here, the locus state is New York as Third Party Plaintiffs allege that Network is a New York corporation with a principal place of business in New York. (T.P. Compl. ¶ 12; Am. T.P. Compl. ¶ 13).

Notwithstanding the foregoing, "[u]nder New York choice of law rules . . . where the parties agree that New York law controls, this is sufficient to establish choice of law." *Arch Ins.*

*Co. v. Harleysville Worcester Ins. Co.*, 2014 U.S. Dist. LEXIS 91928, *10 (S.D.N.Y. July 7, 2014). Here, Plaintiffs and Third Party Defendant Builders & Tradesman's Insurance Services as well as Third Party Plaintiffs have applied New York law to the interpretation of the Third Party and Amended Third Party Complaints in their respective motions. (*See* Pls.' Mot. To Dismiss, Doc. 93; T.P. Pls.' Obj., Doc. 100; Pls.' Reply, Doc. 101). Therefore, New York law applies.

      B.      *Third Party Plaintiffs Lack Standing Under the Reinsurance Agreement Between SIS and AmTrust to Assert Any Claims Against Network.*

Third Party Plaintiffs are required to follow the fortunes of Plaintiffs and Third Party Plaintiffs cannot challenge Plaintiffs' decisions unless Third Party Plaintiffs are able to demonstrate proof of an extraordinary showing of disingenuous or dishonest failure on Plaintiffs' part. Even if Third Party Plaintiffs are able to demonstrate proof of an extraordinary showing of disingenuous or dishonest failure on Plaintiffs' part, Third Party Plaintiffs have not suffered damages upon which a third party action can be sustained. The most extreme remedy available to the Third Party Plaintiffs would be for Third Party Plaintiffs to challenge the indemnification request of the Plaintiffs. The reinsurance contract is between Plaintiffs and Third Party Plaintiffs for indemnification and Third Party Plaintiffs do not have standing to maintain a separate action against Network, a third party adjuster.

A reinsurer is bound by the decisions of the ceding insurer and cannot challenge good faith decisions of the ceding insurer in the handling of claims. Even if the ceding insurer made bad faith decisions in the claims handling process, the reinsurer does not suffer damages, but is merely allowed to challenge the decisions of the ceding insurer. If the ceding insurer acted in bad faith, the bad faith simply acts as an offset regarding what the reinsurer owes the ceding insurer. It does not constitute damages recoverable against a third party adjuster.

The follow the fortunes doctrine, as noted in *North   River Ins.   Co.   v.   ACE   Am.*

*Reinsurance Co.,* 361 F.3d 134 (2d Cir. 2004), "binds a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation." *Id.* at 139. This doctrine insulates a reinsured's liability determinations from challenge by a reinsurer unless they are fraudulent, in bad faith, or the payments are "clearly beyond the scope of the original policy" or "in excess of [the reinsurer's] agreed-to exposure." *Id.* at 140. The court went on to note: "[i]t is well-established that a follow-the-fortunes doctrine applies to all outcomes, including settlements and judgments." *Id.* The court relied on *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78,85 (2d  Cir. 2003) and *Christiania General Ins. Corp. of New York v. Great American Ins. Co.*, 979 F.2d 280 (2d Cir. 1992).

The Second Circuit has held that the follow the fortunes doctrine "simply requires payment where the cedent's good-faith payment is at least arguably within the scope of the insurance coverage that was reinsured." *Mentor Ins. Co. (U.K.) v. Norges Brannkasse,* 996 F.2d 506, 517 (2d Cir. 1993). "This standard is purposefully low and the decision making process of the ceding insurer is not subject to de novo review." *Nat'l Union Fire Ins. Co. v. Am. Re-Insurance Co.*, 441 F. Supp. 2d 646, 650-51 (S.D.N.Y. 2006).

In the New York Court of Appeals case, *United States Fid. & Guar. Co. v. American Re-Ins. Co.*, 20 N.Y.3d 407 (2013), the follow the fortunes clause in the reinsurance contracts provided that: "All claims in which this reinsurance is involved, when allowed by the Company [USF & G], shall be binding upon the Reinsurers, which shall be bound to pay or allow, as the case may be, their proportion of such loss." *Id.* at 418. The court found that the reinsurance contract required the reinsurer to follow the ceding insurer's fortunes, stating:

> It is well established, and the parties here do not dispute, that a clause like this ordinarily bars challenge by a reinsurer to the decision of a party in USF & G's

position - called in reinsurance jargon the 'cedent,' because it has ceded part of its risk to its reinsurers - to settle a case for a particular amount. That rule usually creates little risk of unfairness because, in deciding whether and for how much to settle, the interests of cedent and reinsurer will normally be aligned; both will want the cheapest settlement possible. . . .

*Id.* at 418.

*United States Fid. & Guar. Co.* involved a conflict between the reinsurer and ceding insurer over settlement allocation decisions. Under the reinsurance treaty, the first $100,000 of every loss was to be borne by USF&G, and the second $100,000 by the reinsurers. If the settlement were allocated entirely to losses amounting to $100,000 or less, the entire cost would be borne by USF&G and the reinsurers would pay nothing; but if it were allocated entirely to losses of $200,000 each, the reinsurers would bear half the cost. Accordingly, USF&G was inclined to allocate losses so that each was $200,000 or more while the reinsurer would prefer that each loss was allocated to $100,000. Even with this inherent conflict, the court found:

a follow the settlements clause does require deference to a cedent's decisions on allocation… To review each decision de novo would invite long litigation over complex issues that courts may not be well equipped to resolve, creating cost and uncertainty and making the reinsurance market less efficient. Deference to a cedent's decisions makes for a more orderly and predictable resolution of claims.

*Id.* at 419.

In order for a reinsurer to challenge the ceding insurer's settlement and allocation decisions, the reinsurer must demonstrate proof of an "extraordinary showing of disingenuous or dishonest failure." *Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.,* 419 F.3d 181, 191 (2d Cir. 2005). In fact, a ceding insurer's indifference to an improper allocation does not rise to the extraordinary showing of bad faith required to avoid the application of the follow the fortunes doctrine. *Nat'l Union Fire Ins. Co.*, 441 F. Supp. 2d at 652.

Most importantly, even if a reinsurer were able to raise a question of bad faith in the

9

ceding insurer's claims handling process, the reinsurer's remedy is to seek an offset from the amount it must indemnify the ceding insurer. The reinsurer does not incur damages based on bad faith in the claims handling process and does not have standing to bring suit. The reinsurer can contest its indemnification requirement toward the cedent, but has no standing to bring suit against any other party. If the reinsurer were able to establish bad faith on the part of the ceding insurer, the follow the fortunes doctrine would not apply and the reinsurer would have the ability to dispute the indemnification of the ceding insurer. *Travelers Cas. & Sur. Co. v. Ins. Co. of North America*, 609 F.3d 143, 158 (3d Cir. 2010), *United States Fid. & Guar. Co.*

For example in *Allstate Ins. Co. v. Am. Home Assur. Co*., 43 A.D.3d 113, 124 (N.Y. App. Div. 1st Dep't 2007), the court found bad faith where the cedent was "playing by two sets of rules" by allocating claims to minimize the amount of the insurer's exposure and loss, and "to maximize the reinsured's recovery against the reinsurer." *Id.* The court granted the reinsurer summary judgment, finding that it did not have an obligation to indemnify the cedent. The reinsurer was not entitled to any sort of damages for the cedent's bad faith, but was entitled to a finding that it did not owe indemnification on those claims where the cedent acted in bad faith.

Regarding standing in general, "[T]he irreducible constitutional minimum of standing" under Article III of the Constitution includes the requirement that a plaintiff has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not merely conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 563.

In the present matter, Plaintiffs brought suit against Third Party Plaintiffs for reimbursement as contracted in various insurance/reinsurance agreement. (*See* Pls.' Sec. Am.

Compl., Doc. 54). Under the applicable agreements, Third Party Plaintiffs are required to follow the fortunes of Plaintiffs unless the Third Party Plaintiffs can meet the aforementioned heavy burden of demonstrating bad faith on the Plaintiff's part.

The Safebuilt Insurance Services, Inc. Captive Reinsurance Agreement between AmTrust and Pacific Re, Inc. (a captive insurance company created by SIS) ("Captive Agreement") states: "The Reinsurer hereby agrees to reinsure the Company [Amtrust] to the extent and on the terms and conditions, and subject to exceptions, exclusions and limitations hereinafter set forth…" Captive Agreement, P.1, Exhibit B.[3]

Moreover, the California Quota Share Reinsurance Agreement entered into between Technology Insurance Company and United Specialty Insurance Company and SIS ("Cal. Quota Agreement") states:

> the Company obligates itself to cede to the Reinsurer, and the Reinsurer obligates itself to accept, the Company's gross liability, subject to the Retention, under all policies, certificates, contracts, binders, agreements and other proposals or evidences of insurance, new and renewal policies, binders, and contracts of insurance (hereinafter called 'Policies') issued by and on behalf of the Company, in its sole discretion….

Cal. Quota Agreement, Art. 1.01, Exhibit C.[4]

It went on to state that in Section 2.04:

> All Reinsurance for which the Reinsurer shall be liable, by virtue of this Agreement, shall be subject, in all respects, to the same rates, terms, conditions, interpretations and waivers paid to the Company without any deduction for brokerage, and to the same modifications, alterations and cancellations, as the respective insurance of the Company to which such reinsurance relates, the *true intent of this Agreement being that the Reinsurer shall, in every case to which this Agreement applies, follow the fortunes of the Company*." (Emphasis added).

In light of the foregoing contractual language and case law, deference is given to

---

[3] The Captive Agreement was attached at Exhibit 2 to Plaintiffs' Second Amended Complaint, Doc. 54-2.
[4] The Cal. Quota Agreement was incorporated and made part of the California General Agency Agreement, which was attached at Exhibit 1 to Plaintiffs' Second Amended Complaint, Doc. 54-1.

Plaintiffs' claims handling and Third Party Plaintiffs are required to follow the fortunes of Plaintiffs. Based on the follow the fortunes doctrine, Third Party Plaintiffs cannot challenge Plaintiffs' decisions unless Third Party Plaintiffs are able to demonstrate proof of an extraordinary showing of disingenuous or dishonest failure on Plaintiffs' part.

Most importantly, even if Third Party Plaintiffs are able to demonstrate proof of an extraordinary showing of disingenuous or dishonest failure on Plaintiffs' part, Third Party Plaintiffs may be able to challenge the decision making of the cedent, but have not suffered an injury upon which they can mount a third-party action. The most extreme remedy available to the Third Party Plaintiffs would be for Third Party Plaintiffs to challenge and potentially not indemnify the Plaintiffs.

The reinsurance contract is between Plaintiffs and Third Party Plaintiffs for indemnification and Third Party Plaintiffs do not have standing to maintain a separate action against Network, a third party adjuster. Third Party Plaintiffs have not suffered cognizable damages which can be asserted against Network, a third party adjuster. Therefore, Third Party Plaintiffs lack standing to assert claims against Network because they have not suffered an injury in fact and have suffered no damages.

C.   _SIS's And Taft's Breach of Contract Claim Is Without Merit._

1.   *SIS and Taft Do Not Have Prudential Standing To Assert A Claim.*

The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014). "[T]he plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties." *Id.* A contract only may be enforced by contracting parties or intended third-party beneficiaries of the contract. *Id.*

12

SIS's and Taft's breach of contract claim is predicated solely on the MCSA. (T.P. Compl. ¶ 90; Am. T.P. Compl. ¶ 94). SIS and Taft do not allege that they are parties to the MCSA; they only allege that they are intended beneficiaries. (T.P. Compl. ¶ 86; Am. T.P. Compl. ¶ 90).

In order to be considered a third party beneficiary, a party must establish: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost." *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006); *see Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party.").

"[D]ismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant … or where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant…." *Subaru Distribs. Corp.*, 425 F.3d at 124.

For example, in *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2d Cir. 2005), plaintiff brought suit against Subaru of America, Inc., Fuji Heavy Industries Ltd., and others to prevent the defendants from selling "rebadged" cars. *Id.* at 121. Plaintiff's complaint alleged that Subaru of America had a contract with Fuji, the manufacturer of the Subaru vehicles, granting Subaru of America the exclusive right to distribute Subaru products in the United States. *Id.* It further alleged that Subaru of America subsequently entered a Distribution Agreement with plaintiff, granting plaintiff the exclusive right to distribute Subaru vehicles, parts, and accessories in New York state and northern New Jersey. *Id.* It alleged that Fuji then

13

agreed to sell Saab vehicles that were substantially similar to Subaru vehicles in plaintiff's area and that Subaru of America acquiesced to the plan. *Id.* Plaintiff argued that it was a third-party beneficiary of the contract between Fuji and Subaru of America and was entitled to enforce the exclusive-distribution rights granted under that contract. *Id.* at 124.

The Second Circuit held that the contract language and allegations failed to demonstrate that plaintiff was a third party beneficiary to the Fuji - Subaru of America contract. *Id.* at 126. The Court cited to the language in the contract that stated that the purpose of the contract was to "set forth the functions and responsibilities of the parties hereto" and noted that the contract did not mention any purpose of benefiting plaintiff. *Id.* at 125. It also noted that the contract contained anti-assignment and arbitration clauses that did not include third parties. *Id.*

Finally, the Court rejected the claim that because the contract contemplated Subaru of America appointing sub-dealers, that subdealers, such as plaintiff, were third party beneficiaries. *Id.* at 125. The Court stated that "in instances where the contract in issue makes clear that a third party will be retained to assist in the performance by the promisee that such third parties are not intended beneficiaries of the main contract." *Id.*

*See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 87 (2d Cir. 2014) (concluding that the district court properly dismissed plaintiffs' contract claim because it found that plaintiffs lacked standing to enforce contracts to which they were not parties and of which they were not third party beneficiaries).

SIS and Taft fail sufficiently to allege that they are third party beneficiaries of the MCSA. They do not explicitly allege that Network and Plaintiffs, as parties to the MCSA, intended to confer them a benefit. (T.P. Compl. Ct. 2; Am. T.P. Compl. Ct. 2). They merely allege that they are "intended beneficiaries" because Network knew that complying with the MCSA would

14

benefit them and/or that non-compliance would damage them. (T.P. Compl. ¶¶ 86-87, 89; Am. T.P. Compl. ¶¶ 90-91, 93). As discussed in *Subaru Distribs. Corp.*, this is insufficient.

Additionally, SIS and Taft fail to allege an immediate, rather than incidental, benefit from the MCSA. They allege that they would benefit by reduced exposure to proper fees and reduced reserve/real exposure and losses. (T.P. Compl. ¶ 87; Am. T.P. Compl. ¶ 91). These benefits would first inure to Plaintiffs, as parties to the MCSA with Network, and only indirectly/incidentally extend to SIS and Taft pursuant to their agreements with Plaintiffs. (*See* T.P. Compl. ¶¶ 39-45; Am. T.P. Compl. ¶¶ 41-47).

Furthermore, the MCSA, like the contract in *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2d Cir. 2005), demonstrates that SIS and Taft are not intended beneficiaries. SIS and Taft are not mentioned in the preamble and not included in the definition of "parties." MCSA, P. 1, Preamble, Exhibit A. Also, the MCSA makes clear that it was retaining Network to administer claims arising under various policies. *Id.* at Preamble and Section 2.1. Finally, the MCSA did not mention any purpose of benefiting SIS or Taft. *See id.*

Therefore, SIS and Taft lack standing to assert a breach of contract claim against Network because they are not parties or third party beneficiaries of the MCSA.

2. *SIS and Taft Have Failed To Cite Specific Sections Of A Contract.*

"New York law and the Twombly-Iqbal standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed." *Spinelli v. NFL*, 2015 U.S. Dist. LEXIS 40716, *113-14 (S.D.N.Y. Mar. 27, 2015); *Fox v. Idea Sphere, Inc.*, 2013 U.S. Dist. LEXIS 42674, *41-42 (S.D.N.Y. Mar. 21, 2013) ("The claimant must allege the specific provisions of the contract upon which the breach of contract claim is based.").

SIS and Taft have not alleged any specific terms of the MCSA. They generally allege that

Network had various obligations under the MCSA, such as timely responding to claims and negotiating and resolution of claims, and that the MCSA was breached. (T.P. Compl., ¶¶ 88-9; Am. T.P. Compl., ¶¶ 92-94). However, SIS and Taft do not allege any specific MCSA sections enumerating these alleged duties or what sections were breached.

Therefore, SIS and Taft have failed to allege the breach of contract claim with the requisite specificity.

3. *SIS and Taft Cannot Establish Damages.*

"Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Group, Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012).

As discussed above, Third Party Plaintiffs cannot establish damages. Any financial consequences from Network's consequences would flow to Plaintiffs. *See* Section IV(B), *supra*.

Therefore, SIS and Taft cannot establish a breach of contract claim.

D.   *SIS's and Taft's Negligence Claim Is Without Merit.*

1. *The Economic Loss Doctrine Bars SIS's And Taft's Negligence Claim.*

"Under New York's 'economic loss' rule, a plaintiff cannot recover in tort for purely economic losses caused by a defendant's negligence." *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302 (S.D.N.Y. 2012); s*ee e.g.*, *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 2015 U.S. Dist. LEXIS 70675, *10 (S.D.N.Y. June 1, 2015) ("Plaintiffs who enter into transactions that are of a contractual nature … are limited to 'the benefits of their bargains' unless they can show 'a legal duty separate and apart from obligations bargained for and subsumed within the transaction.'"); *Zaretsky v. William Goldberg Diamond Corp.*, 2014 U.S. Dist. LEXIS 114636, *10, n.32 (S.D.N.Y. Aug. 18, 2014) ("[T]o the extent

16

plaintiffs' claim sounds in negligence, because plaintiffs seek only monetary damages against S&S, such recovery is barred under New York's economic loss rule.").

SIS and Taft allege that Network's conduct "constitutes negligence in its performance of the MCSA." (T.P. Compl. ¶ 81; Am. T.P. Compl. ¶ 85). They further allege that Network created "increased amounts for which SIS and/or Taft may be liable for" and that as a result "of Network's acts and omissions, SIS and Taft have suffered substantial monetary losses." (T.P. Compl. ¶¶ 82-83; Am. T.P. Compl. ¶¶ 86-87). They further allege that Plaintiffs claim SIS and Taft may be liable for amounts owed pursuant to insurance/reinsurance agreements between Plaintiffs and Third Party Plaintiffs. (T.P. Compl. ¶¶ 31-49; Am. T.P. Compl. ¶¶ 33-53).

Therefore, SIS and Taft simply allege economic loss arising out of various actual and alleged contractual relationships, which they cannot recover in tort.

### 2. *SIS And Taft Do Not Have Prudential Standing To Assert A Claim.*

A plaintiff lacks standing to assert a negligence claim predicated on a breach of a contract where the plaintiff is not a party to or third party beneficiary of the contract. *See e.g.*, *Davis v. Brown*, 2014 U.S. Dist. LEXIS 130514, *17-18 (E.D.N.Y. Sept. 15, 2014) (holding that plaintiff lacked standing to assert a negligence claim against defendant because the negligence claim stemmed from the contract between defendant and co-defendant, plaintiff was not a party to that contract and plaintiff was not a third party beneficiary to that contract); *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, 2006 U.S. Dist. LEXIS 59455, *10-11 (S.D.N.Y. Aug. 22, 2006) ("Because Plaintiffs' negligence claim is based on the February 1995 Quotation Contract between TVT and Schubert, SGI lacks standing to assert the negligence claim for the same reasons that SGI lacks standing to assert the breach-of-contract claims.").

SIS's and Taft's negligence claim is predicated on the alleged breach of the MCSA. (T.P. Compl. ¶ 79; Am. T.P. Compl. ¶ 83) (alleging that "Network breached that duty by failing to

17

perform services under the MCSA….”). As discussed in Section IV(C)(1), *supra*, SIS and Taft are neither parties nor third party beneficiaries of the MCSA.

Therefore, SIS and Taft lack standing to assert a negligence claim against Network predicated on the alleged breach of the MCSA.

        3.        *SIS's and Taft's Negligence Claim Does Not Allege A Viable Tort Claim.*

New York law allows limited recovery of economic loss for negligent performance of contractual services. *TeeVee Toons, Inc. v. Gerhard Schubert GmbH*, 2006 U.S. Dist. LEXIS 59455, *56 (S.D.N.Y. Aug. 22, 2006). However, “a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself (i.e., a duty spring[ing] from circumstances extraneous to, and not constituting elements of, the contract) has been violated.” *Id.* (internal citations omitted). *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) (“If, however, the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative.”).

SIS's and Taft's negligence claim is predicated on the alleged breach of the MCSA. (T.P. Compl. ¶ 79; Am. T.P. Compl. ¶ 83) (alleging that “Network breached that duty by failing to perform services under the MCSA….”). There are no allegations of a duty independent of the MCSA. SIS and Taft allege solely a simple breach of contract.

Therefore, there is no merit to the negligence claim as it does not allege a viable tort.

        4.        *Network Did Not Owe SIS And Taft A Duty Of Care.*

The existence of a duty of care is essential to a negligence claim. *Mitchell v. Icolari*, 969 N.Y.S.2d 503, 505 (N.Y. App. Div. 2d Dep't 2013). “Absent a duty of care, there can be no breach thereof and no liability.” *Gray v. Wackenhut Servs.*, 721 F. Supp. 2d 282, 287 (S.D.N.Y. 2010).  The determination of whether a duty exists is an inquiry for the court. *Id.* at 288.

"As a general matter, [t]hose who perform work, or deliver services or products, pursuant to a contractual or other commercial relationship owe duties of care and proper performance to those entitled to receive the benefit of their work or services or products." *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 328 (S.D.N.Y. 2011) (internal quotations omitted). "[A]bsent a special relationship between the parties, no duty is owed to the public at large or to those outside the class of people entitled to expect the actor's due care to them." *Id. See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d 409, 429-30 (S.D.N.Y. 2014) ("[I]n general, a contracting party will not be liable to a non-contracting third party for claims arising from the negligent performance, or non-performance, of the contract.").

Here, there is no basis to depart from this general rule. As discussed extensively above, SIS and Taft are neither parties to nor third party beneficiaries of the MCSA. *See* Section IV(C)(1), *supra*. Additionally, they do not allege any other type of special relationship with Network. (*See* T.P. Compl. Ct. 1; Am. T.P. Compl. Ct. 2).

Therefore, SIS and Taft have not alleged a viable negligence claim because Network does not owe SIS and Taft a duty of care.

     5.    *SIS And Taft Cannot Establish Damages.*

The elements of a negligence claim are: the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and a showing that the breach proximately caused the injury. *Mitchell v. Icolari*, 969 N.Y.S.2d 503, 505 (N.Y. App. Div. 2d Dep't 2013).

As discussed above, SIS and Taft cannot establish damages. Any financial consequences from Network's consequences would flow to Plaintiffs.  *See* Section IV(B), *supra*.

Therefore, SIS and Taft cannot establish a negligence claim.

     E.    *Third Party Plaintiffs' Contribution  Claim Is Without Merit.*

19

1.     *Third Party Plaintiffs Are Not Entitled To Contribution Because They Only Seek Recovery Of Economic Loss.*

"[P]arties may not seek contribution for purely economic loss…." *United States Bank v. Commonwealth Land Title Ins. Co.*, 2015 U.S. Dist. LEXIS 36131, *5 (S.D.N.Y. Mar. 23, 2015). "[T]he touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein." *Conestoga Title Ins. Co. v. ABM Title Servs.*, 2012 U.S. Dist. LEXIS 86614, *16 (S.D.N.Y. June 20, 2012).

Multiple courts have explicitly held that this prohibition extends to contribution claims by defendants/third party plaintiffs predicated on breach of contract claims. *See e.g.*, *Conestoga Title Ins. Co. v. ABM Title Servs.*, 2012 U.S. Dist. LEXIS 86614, *15 (S.D.N.Y. June 20, 2012) ("A contribution claim is not available to one, like ABM, potentially liable only for breach of contract."); *CAMOFI Master LDC v. College P'ship*, 452 F. Supp. 2d 462, 483 (S.D.N.Y. 2006) ("under New York law there can be no contribution among two parties for purely economic loss that flows from a breach of contract.").

However, courts have extended the prohibition even where contribution claims are predicted on tort causes of action in addition to breach of contract claims. In *Conestoga Title Ins. Co. v. ABM Title Servs.*, 2012 U.S. Dist. LEXIS 86614 (S.D.N.Y. June 20, 2012), plaintiff was a title insurer and defendant was an issuing agent. *Id.* at *2. Plaintiff was required to indemnify its insured pursuant to a title insurance policy after its insured was prevented from foreclosing on property where it had secured mortgages. *Id.* at *2-3. It then brought suit against defendant seeking indemnification pursuant to its agency agreement and claiming that defendant was negligent. *Id.* at *4. Defendant/third party plaintiff filed a third party complaint against two attorneys involved in the underlying transaction seeking indemnification and contribution. *Id.* at

*5. One of the third party defendant attorneys moved for summary judgment on the contribution claim by defendant/third party plaintiff, which was granted. *Id.*

The Court held that even if plaintiff's negligence claim against defendant/third party plaintiff was proper, defendant/third party plaintiff could still not seek contribution because plaintiff sought purely economic damages. *Id.* at *16. The Court stated that in both its contract claim seeking indemnification and its negligence claim plaintiff sought purely economic damages from defendant/third party plaintiff - the amount it was forced to pay its insured because of defendant/third party plaintiff's conduct. *Id.* The Court further stated that this amount would place plaintiff in the same position it would have been in if defendant/third party plaintiff did not breach its agreement. *Id.* at *16-17. The Court concluded that this was a contract measure of damages and preventing defendant/third party plaintiff from obtaining contribution. *Id.* at *17.

*See Trump Vill. Section 3, Inc. v. N.Y. State Hous. Fin. Agency*, 764 N.Y.S.2d 17, 23 (N.Y. App. Div. 1st Dep't 2003) (stating that although plaintiff's complaint included tort claims addition to breach of contract claims "the damages sought by plaintiff on all of its causes of action are merely for economic loss. Where a plaintiff's direct claims against a codefendant seek only a contractual benefit of the bargain recovery, their tort language notwithstanding, contribution is unavailable[.]").

Plaintiffs' claims in the Second Amended Complaint, including the alleged tort claims, seek purely economic losses stemming from their insurance/reinsurance agreements with Third Party Plaintiffs. Plaintiffs have asserted two breach of contract claims against SIS alleging SIS's failure to fulfill its contractual obligations and seeking damages as a result. (*See* Pls.' Sec. Am. Compl. Cts. 1-2, Doc. 54). Plaintiffs' third through ninth counts are simply alternative arguments to recover the contract damages sought in the first two counts. (*See id.* at Cts. 3-9). For example,

21

Count three alleges that Third Party Plaintiffs SIS, Pike, Salvagio and Savoia breached their obligations under the applicable insurance/reinsurance agreements causing damages in the same amount as the breach of contract claims in counts one and two. (*Id.* at Ct. 3). Furthermore, the tenth count is simply a mechanism to seek to hold Third Party Plaintiffs SIS, Pike, Salvagio and Savoia liable for breach of the applicable contracts. (*Id.* at Ct. 10).

Therefore, Plaintiffs seeks solely economic losses in their Second Amended Complaint foreclosing Third Party Plaintiffs from seeking contribution.

> 2.  *Third Party Plaintiffs Cannot Maintain A Contribution Claim Against Network Because They Have Failed To Allege A Viable Duty Of Care.*

A "[t]hird-party defendant may be liable for contribution where it breaches a duty to either (a) the third-party plaintiff seeking contribution or (b) the first-party plaintiff seeking redress for the underlying tort." *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 327 (S.D.N.Y. 2011).

As discussed above, Network does not owe Third Party Plaintiffs SIS and Taft a duty of care. *See* Section IV(D)(4), *supra*. Furthermore, Third Party Plaintiffs do not allege that Network owes Preferred Global Holdings, Inc., David E. Pike, David E. Pike, Inc. d/b/a Pike Insurance Services, Philip Salvagio, Salmen Insurance Services, Inc. and Carl M. Savoia a duty of care. Finally, Third Party Plaintiffs do not allege in this count that Network owed Plaintiffs a duty of care. (*See* T.P. Compl. Ct. 7; Am. T.P. Compl. Ct. 7).

Therefore, Third Party Plaintiffs have not alleged a viable contribution claim because they failed to allege that Network owes the relevant parties a duty of care.

> F.   *Third Party Plaintiffs' Common Law Indemnification Claim Is Without Merit.*

> 1.  *Third Party Plaintiffs Cannot Recover For Common Law Indemnification Because They Participated In Wrongdoing.*

A party who has actually participated to some degree in the wrongdoing cannot recovery

under the theory of common law indemnification. *United States Bank v. Commonwealth Land Title Ins. Co.*, 2015 U.S. Dist. LEXIS 36131, *5 (S.D.N.Y. Mar. 23, 2015). *See Conestoga Title Ins. Co. v. ABM Title Servs.*, 2012 U.S. Dist. LEXIS 86614, *10 (S.D.N.Y. June 20, 2012) ("the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself [or herself] actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

Specifically, "where the underlying action is one for breach of contract, a defendant may not seek indemnification because the defendant, if found liable to the plaintiff in the underlying action, will have necessarily participated in the wrongdoing by breaching the contract." *United States Bank v. Commonwealth Land Title Ins. Co.*, 2015 U.S. Dist. LEXIS 36131, *7 (S.D.N.Y. Mar. 23, 2015). *See Nyu Hosps. Ctr. v. HRH Constr. LLC (In re HRH Constr. LLC)*, 2015 U.S. Dist. LEXIS 31967, *23 (S.D.N.Y. Mar. 12, 2015) ("A party may not bring common law indemnification claims when it is in breach of contract….").

Initially, Plaintiffs' first and second claims allege breach of contract against SIS, which as discussed above cannot be subject of a common law indemnification claim. (*See* Pls.' Sec. Am. Compl. Cts. 1-2, Doc. 54). Furthermore, none of the remaining claims in Plaintiffs' Second Amended Complaint seek to hold Third Party Plaintiffs vicariously liable for Network's alleged conduct and each will require a finding that Third Party Plaintiffs participated in wrongdoing. The third count alleges breach of fiduciary duties owed pursuant to the insurance/reinsurance agreements including the failure to accept adequate premiums, the fourth count alleges that Third Party Plaintiffs acted improperly in their operations, the fifth count alleges that Third Party Plaintiffs improperly moved assets, the sixth and seventh counts allege Third Party Plaintiffs have converted Pac Re's and Pac Re 5-AT's assets, the eighth count alleges that aiding and

abetting the breach of fiduciary duty, and the ninth count alleges failure to pay out of certain accounts. (*Id.* at ¶¶ 81-82, 85-88, 91-98, 108, 116-118, 122-123, & 133). The tenth count seeking a declaratory judgment does not seek damages and is not proper for indemnification. Thus, all require a finding of wrongful conduct by Third Party Plaintiffs in order to be actionable.

Therefore, Third Party Plaintiffs have failed to allege a viable claim.

> 2. *Third Party Plaintiffs' Common Law Indemnification Claim Must Be Dismissed Because Network Did Not Owe A Duty Of Care.*

"[A] cause of action for common-law indemnification can be sustained only if: (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011). A common law indemnification claim is not proper "against one who has not violated a duty owed to plaintiff in the primary action." *Id.* "However, the 'key element' of a common law indemnification claim 'is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor.'" *Id.*

As discussed above, Network does not owe SIS and Taft a duty of care. *See* Section IV(D)(4), *supra*. Furthermore, Third Party Plaintiffs do not allege that Network owes Preferred Global Holdings, Inc., David E. Pike, David E. Pike, Inc. d/b/a Pike Insurance Services, Philip Salvagio, Salmen Insurance Services, Inc. and Carl M. Savoia a duty of care. Finally, Third Party Plaintiffs do not allege in their common law indemnification claim that Network owes Plaintiffs a duty of care. (*See* T.P. Compl. Ct. 8; Am. T.P. Compl. Ct. 8).

Therefore, Third Party Plaintiffs have failed to allege a viable common law indemnification claim because Network does not owe a duty of care.

> G.   *Third Party Plaintiffs' Contractual Indemnification Claim Is Without Merit.*

       1. *Third Party Plaintiffs Are Not Parties Or Intended Beneficiaries To Any Contract With Network Providing Contractual Indemnification.*

Third Party Plaintiffs' contractual indemnification claim does not allege a contract that it purports to arise from or the language giving rise to the contractual indemnification. (*See* T.P. Compl. Ct. 8; Am. T.P. Compl. Ct. 8). The failure to allege any facts in support of the claim is fatal under the *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) requiring dismissal.

Furthermore, even assuming that Third Party Plaintiffs can bootstrap this claim onto the MCSA, their claim must fail. As discussed above, SIS and Taft are not parties or third party beneficiaries to the MCSA and there are no allegations the remaining Third Party Plaintiffs are. *See* Section IV(C)(1), *supra.* Therefore, they cannot seek to enforce its indemnity provisions.

       2. *Third Party Plaintiffs Cannot Obtain Contractual Indemnification For Their Intentional Conduct.*

"[U]nder New York law, indemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury." *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 390 (S.D.N.Y. 2012). Plaintiffs' Second Amended Complaint alleges in various claims that Third Party Plaintiffs acted intentionally. (*See* Pls.' Sec. Am. Compl. ¶¶ 63-68, 74-78, 82, 88, 91-98, 108-111, 117-118, 123, & 133).

To the extent that any of the Third Party Plaintiffs' conduct is found intentional they are not entitled to contractual indemnity.

## V.   <u>Conclusion</u>

For the reasons set forth above, Network is entitled to an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing of all claims by Third Party Plaintiffs in their Third Party and Amended Third Party Complaints together with such other, further and different relief as this Court may deem just and proper.

Dated:  New York, NY
        August 3, 2015

**GOLDBERG SEGALLA, LLP**

By    <u>/s/  *Dove A.E. Burns*</u>
       Dove A.E. Burns, Esq.
       Daniel Gerber, Esq.
       Michael Lettiero, Esq.
       600 Lexington Avenue
       New York, New York 10022
       Tel:  (646) 292-8700
       Fax:  (646) 292-8701
       dburns@GoldbergSegalla.com
       dgerber@GoldbergSegalla.com
       mlettiero@GoldbergSegalla.com

**CERTIFIATE OF SERVICE**

      The undersigned hereby certifies that on August 3, 2015, true and accurate copies of the Memorandum in Support of Motion to Dismiss, were served via the Court's ECF system on the following parties.  If service via ECF was not available to a party, a copy was sent via U.S. Regular mail.

| | |
|---|---|
| Matthew Bryant, Esq.<br>Michael D. Brown, Esq.<br>OHRENSTEIN & BROWN, LLP<br>*Attorneys for AMTRUST NORTH AMERICA, INC., TECHNOLOGY INSURANCE COMPANY, and BUILDERS AND TRADESMEN'S INSURANCE SERVICES, INC.*<br>1305 Franklin Ave. Suite 300<br>Garden City, NY  11530<br>Tel: (516) 873-8912 | Steven A. Stadtmauer, Esq.<br>Abbie Lynn Eliasberg Fuchs, Esq.<br>Brian Andrew Bender, Esq.<br>Peri Avishai Berger, Esq.<br>HARRIS BEACH, PLLC<br>*Attorneys for DAVID E. PIKE, INC., DAVID E. PIKE, PREFERRED GLOBAL HOLDINGS, INC., SAFEBUILT INSURANCE SERVICES, INC., SALMEN INSURANCE SERVICES, INC., THE TAFT COMPANIES, LLC, PHILIP SALVAGIO and CARL M. SAVOIA*<br>100 Wall Street, 23rd Floor<br>New York, NY 10005<br>Tel: (212) 687-0100 |
| Gerard Craig Morici, Esq.<br>MENDES & MOUNT, LLP<br>*Attorneys for PREFERRED REINSURANCE INTERMEDIARIES, and ROBERT SANDERS*<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8101 | |

/s/  *Dove A.E. Burns*
Dove A.E. Burns