UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.,

                        Plaintiffs,

        -against-

SAFEBUILT INSURANCE SERVICES, INC. a/k/a
SAFEBUILT WHOLESALE INSURANCE SERVICES,
INC., THE TAFT COMPANIES, LLC, PREFERRED
GLOBAL HOLDINGS, INC., DAVID E. PIKE, DAVID E.
PIKE, INC., PHILIP SALVAGIO, SALMEN INSURANCE
SERVICES, INC. f/k/a SALVAGIO, INC., CARL
M.SAVOIA, JOHN DOE CORPORATIONS 1-5, and JOHN
DOES 1-5,                                                                    Case No.: 14-CV-9494

                        Defendants,
-------------------------------------------------------------------X

SAFEBUILT INSURANCE SERVICES, INC., THE
TAFT COMPANIES, LLC, PREFERRED GLOBAL
HOLDINGD, INC., DAVID E. PIKE, DAVID E. PIKE, INC.
d/b/a PIKE INSURANCE SERVICES, PHILIP SALVAGIO,
and SALMEN INSURANCE SERVICES, INC.

                    Third Party Plaintiffs,

        -against-

NETWORK ADJUSTERS, INC., ROBERT SANDERS,
PREFERRED REINSURANCE INTERMEDIARIES,
BUILDERS & TRADESMEN'S INSURANCE SERVICES,
INC., JOHN DOE BROKERAGES 1-5, JOHN DOE
BROKERS 1-5, JOHN DOE CORPORATIONS 6-15, and
JOHN DOES 6-15,

                    Third-Party Defendants.
-------------------------------------------------------------------X

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR AN ORDER TO SHOW CAUSE WHY CERTAIN DEFENDANTS' ANSWERS
SHOULD NOT BE STRICKEN, OR IN THE ALTERNATIVE, BE PRECLUDED
FROM CONTESTING PLAINTIFFS' ALTER EGO/VEIL PIERCING CLAIMS**

---

**OHRENSTEIN & BROWN, LLP**
*Attorneys for Plaintiffs and Third-Party Defendant*
*Builders & Tradesmen's Insurance Services, Inc.*
1305 Franklin Avenue, Suite 300
Garden City, NY 11530

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

    A.  Background ............................................................................................................ 3

    B.  Background to Defendant Safebuilt, Preferred Global, Pike, Inc. and
        Salvagio, Inc.'s Discovery Abuses ....................................................................... 6

ARGUMENT ....................................................................................................................... 10

POINT I ............................................................................................................................... 10

    THE FACTS JUSTIFY THE SANCTION OF EITHER STRIKING THE ANSWERS OF
    THE VEIL PIERCING DEFENDANTS, OR PRECLUDING THEIR OPPOSITION TO
    PLAINTIFFS' VEIL PIERCING ALTER EGO CLAIMS ................................................ 10

POINT II .............................................................................................................................. 11

    THE VEIL PERCING DEFENDANTS ARE INTENTIONALLY WITHOLDING THE
    SAFEBUILT GENERAL LEDGERs TO OBSTRUCT AMTRUST FROM
    INVESTIGATING AND PROVING ITS VEIL PIERCING CLAIMs .............................. 11

POINT III ............................................................................................................................ 14

    AMTRUST AND THEIR EXPERTS ARE SEVERLY PREJUDICED BY THE
    WITHOLDING OF THE Safebuilt GENERAL LEDGER ............................................. 14

    A.  Rule 37 Sanctions are Warranted ....................................................................... 15

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Daval Steel Products v. M/V Fakredine,*
  951 F.2d 1357 (2d. Cir. 1991)..................................................................15, 16, 19

*Ebewo v. Martinez,*
  309 F.Supp.2d 600 (S.D.N.Y.2004)..................................................................10

*Genger et al. v. Sharon,*
  No. 10 Civ. 4506 (SAS), 2012 WL 3854883 (S.D.N.Y. Sept. 5, 2012)....................20

*In re September 11th Liab. Ins. Coverage Cases,*
  243 F.R.D. 114 (S.D.N.Y. 2007) ..................................................................17

*Insurance Corp. of Ireland v. Compagnie des Bauxites,*
  456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)..................................................................16

*Karaha Bodas Co., LLC v. Minyak,*
  No. 21 MC 98(TPG), 2007 WL 1284903 (S.D.N.Y. Apr. 30, 2007) ........................18

*Lodge v. United Homes, LLC,*
  *et al.*, 787 F. Supp. 2d 247 (E.D.N.Y. 2011) ..................................................................19

*Nat'l Hockey League v. Metro. Hockey Club, Inc.,*
  427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)..................................................................16

*Reilly v. Natwest Mkts. Grp. Inc.,*
  181 F.3d 253 (2d Cir.1999)..................................................................19

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
  306 F.3d 99 (2d Cir. 2002)..................................................................17, 18

*Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,*
  280 F.R.D. 147 (S.D.N.Y.2012) ..................................................................10

*S. New England Tel. Co. (SNET) v. Global NAPs Inc.,*
  624 F.3d 123 (2d Cir. 2010)..................................................................14, 19

*Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.,*
  295 F.R.D. 1 (E.D.N.Y. 2013) ..................................................................14, 19

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.,*
  490 F.3d 130 (2d Cir. 2007)..................................................................15

*Update Art, Inc. v. Modiin Publ'g Ltd.,*
  843 F.2d 67 (2d Cir. 1988)..................................................................20

**Statutes**

N.Y. Ins. Law §1213(c)(1) ..................................................................10
Section 33-15-102 of Montana Code..................................................................5

**Rules**

Fed. R. Civ. P. 37(b)(2)(A)(ii) ..............................................................................16

Federal Rules of Civil Procedure Rule 37 ..........................................10, 15, 16, 17, 18

Rules 26 and 37 of the Federal Rules of Civil Procedure ...................................1, 16, 18

Pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, and upon the Declarations of Gary Osborne, Robert E. Hancock and Michael D. Brown and this accompanying Memorandum of Law, Plaintiffs AmTrust North America, Inc. and Technology Insurance Company, Inc. ("TIC") (collectively, "AmTrust") move this Court by Order to Show Cause for an Order requiring Defendants Safebuilt Insurance Services, Inc. a/k/a Safebuilt Wholesale Insurance Services, Inc. ("Safebuilt"), Preferred Global Holdings, Inc. ("Preferred Global"), David E. Pike, Inc. ("Pike, Inc."), David E. Pike ("Pike"), Philip Salvagio ("Salvagio"), Salmen Insurance Services, Inc. f/k/a Salvagio, Inc. ("Salvagio, Inc.") and Carl M. Savoia ("Savoia") (collectively, the "Veil Piercing Defendants") answers to be stricken, or alternatively, why they should not be precluded from contesting Plaintiffs' alter ego and veil piercing claims.  Finally, in the event Plaintiffs' motion for either striking the Veil Piercing Defendants' answers or precluding them from contesting Plaintiffs' alter ego and veil piercing claims is not granted, Plaintiffs seek an Order extending the Court's case management deadlines by an amount equal to the time lost due to Veil Piercing Defendants' misconduct and for Plaintiffs' costs and attorneys' fees associated with making this application

## PRELIMINARY STATEMENT

This dispute arises out of a general liability insurance and reinsurance program for small construction contractors ("SIS Reinsurance Program," or "Program").  In short, Plaintiffs allege that through their domination and control of Safebuilt, Preferred Global, Pike, Inc., Salvagio, Inc., and non-party owned and controlled reinsurers, Pacific Re, Inc. ("Pacific Re") and its "cell," Pac Re 5-AT, Pike, Salvagio and Savoia diverted to their privately owned brokerages and themselves millions of dollars paid by insureds that by contract were intended to be available to TIC in the event their owned and controlled reinsurer, Pacific Re, and its "cell," Pac Re 5-AT ("5-AT") did not pay its reinsurance obligations to Plaintiffs.  In addition, Plaintiffs allege that

Pike, Salvagio and Savoia caused Safebuilt to transfer millions of dollars of its earnings to themselves and their individual insurance brokerages, thus stripping Safebuilt of the capital needed to honor its indemnification and hold harmless obligation to TIC in the event TIC suffered any "loss," "claim" or "expense" as a result of Safebuilt's acting as General Agent for the Program.

Because Safebuilt, dominated, managed and controlled by Pike, Salvagio and Savoia, has now acknowledged that it has WITHHELD FOR MONTHS critical documents it previously represented had been produced, and because Preferred Global, Pike, Inc. and Salvagio, Inc. have failed to produce any financial records, claiming not to maintain ANY ordinary course financial records, a claim that defies belief, as explained in the accompanying Osborne and Hancock Declarations, the Veil Piercing Defendants – twice warned by this Court about their failure to make proper document productions – should have their Answers stricken, or alternatively, be precluded from defending against Plaintiffs' veil piercing claims.  However, in the event the Court decides not to either strike the Veil Piercing Defendants' answers, or preclude them as requested here, Plaintiffs respectfully request that the Court both order the immediate production of the requested documents and extend its case management deadlines by the roughly two and one-half months Plaintiffs have been deprived of documents that should have been produced on July 1, 2015 at the latest.

## STATEMENT OF FACTS[1]

### A.    *Background*

As described in the documents attached to the Brown Declaration ("Brown Dec."), AmTrust North America, Inc. through its affiliated insurer, TIC, agreed to reinsure the non-party "fronting" insurer, United Specialty Insurance Company ("USIC") for 100% of the liabilities resulting from the issuance of USIC policies solicited, underwritten, bound and issued by Safebuilt as the Program's General Agent.  (*See,* Brown Dec., at Exs. 1-1 and 2, copies of the Quota Share Agreement and General Agency Agreement.)[2]  As TIC was also to act as a "front," its financial exposure was protected in two ways.  First, while TIC reinsured USIC 100%, it ceded 100% of the first $250,000 of loss per occurrence (as well as a risk layer above that called the "Loss Corridor") to Pacific Re and 5-AT.[3]  The risks reinsured were to be collateralized in two Trusts to the level of reserves "expected" by Plaintiffs.  (*See,* Reinsurance Agreement, Art. 26.H, Brown Dec., at Ex. 1-2.)  While the "Loss Fund Trust" was to be collateralized by Program premium, the "Loss Corridor Trust" was to be funded by Pacific Re/5-AT.  (*See,* Reinsurance Agreement Art. 26, Brown Dec., at Ex. 1-2.)  As the "Participant" of 5-AT, Safebuilt was contractually required to fund all of 5-AT's liabilities.  (*See,* Participation Agreement, Brown Dec., at Ex. 1-3.)[4]

---

[1] In the interest of judicial efficiently, rather than annex copies of lengthy exhibits previously filed with this Court, Plaintiffs will cite to the Court's docket where appropriate.  If the Court so requires courtesy copies of any of these documents we will be happy to provide.

[2] The Program involved two Quota Share Agreements and two General Agency Agreements, and the Safebuilt Insurance Services, Inc. Captive Reinsurance Agreement ("Reinsurance Agreement").  In all respects relevant to the issues here, the only difference between the QSAs and General Agency Agreements is one set dealt with policies issued to California insureds while the other covered insureds in the other Program states.

[3] As determined by the United States District Court for the District of Montana, Billings Division, Pacific Re was liable to Plaintiffs under the Reinsurance Agreement for itself and on behalf of 5-AT.  *See,* Brown Dec., at Ex. 3, at 3.

[4] While a drafting error resulted in Safebuilt not executing the Participation Agreement, Pacific Re/5-At have admitted Safebuilt is the Participant in their Complaint filed in the previously cited Montana Action.  (Brown Dec., at Ex. 4, ¶7.)  Further, in Safebuilt's Answer in the instant Action, Safebuilt has also admitted it is the Participant for 5-AT.  (Brown Dec., Ex. 5, at 28.)

Second, to provide an extra layer of protection, Safebuilt provided a Hold Harmless and Indemnity Agreement to TIC against all "liabilities, losses, damages, costs or expenses (including attorneys' fees and expenses) … arising out of or relating in any way" to the General Agency Agreements. (*See,* Brown Dec., at Ex. 2, at Art. VII.)

Safebuilt was also to provide monthly reports relating to the policies and financial performance of the Program to AmTrust and USIC. (*See,* Brown Dec., at Ex. 2.) As the Program's losses for construction defect claims would not begin to become apparent for several years, in the fall of 2011 AmTrust conducted a "sample audit" of Safebuilt and discovered that Safebuilt had been diverting what appears to be the <u>majority</u> of money paid by insureds and that should have been available to AmTrust to pay the claims reinsured by Pacific Re/5-AT. This money taken by Safebuilt was in addition to the substantial commission to which Safebuilt was properly owed as a percentage of premium. (*See,* Brown Dec., at Ex. 1-2, Article VIII.)

Thus, AmTrust sent one of its underwriters, Stafford Chisholm, to inspect several files maintained by Safebuilt for insureds who purchased insurance from the program through Safebuilt. Mr. Chisholm took notes concerning the files for "Ark Builders Construction," "Robert Munoz" (a general contractor) and "Success Bid Management." What Mr. Chisholm found was that Safebuilt had created a new category of premiums: "Pure Premium," which for each of these three (3) insureds, was $350. (*See,* Brown Dec., at Ex. 6.) What was not reported to AmTrust, or USIC, was that in each case Safebuilt divided the payments by the insureds as consideration for their Policy into "pure premium" and "fees," that they kept and did not report to AmTrust or USIC – fees that for these insureds ranged from $650 to $700, nearly <u>twice</u> the size of the "pure premiums" reported to AmTrust. *Id.* Confirming that this was the general practice at Safebuilt are: 1) a sample "Contractors Gold Commission Report" ("For Broker

Review Only") (i.e., something not to be shared with the insured) and a sample "Platinum Commission Report" ("For Broker Review Only" (*See*, Brown Dec., at Ex. 7)[5]; and 2) an email dated October 19, 2011 from Safebuilt's Charles Lasher, requested by Mr. Chisholm earlier that day to confirm that what he found concerning the fees was the norm and not isolated to a few accounts. (*See*, Brown Dec., at Ex. 8.)

These "fee" charges were a shock to AmTrust as the monthly reports provided by Safebuilt to AmTrust and USIC not only did not report the "fees," but affirmatively misrepresented that "policy fees" were neither charged nor collected. (*See*, Brown Dec., at Ex. 9.)   AmTrust cancelled the Program shortly after this information was confirmed and the omissions from the reports also confirmed.[6]

Because the improper diversion of money, including fees, is at the core of the case, Magistrate Judge Cott ordered Safebuilt to provide to Plaintiffs the amount of "fees" taken by Safebuilt (as an element of damage) in the Program in dispute, as well as "distributions" made by Safebuilt to its shareholders.   However, at the time of the Magistrate's Order, Safebuilt affirmatively took the position that it had produced all of its ordinary course financial records, including its general ledgers.  A week later AmTrust learned this simply was not true.

During the evening of September 8, 2015, Safebuilt, through counsel, emailed Plaintiffs that:  1) Safebuilt did maintain general ledgers; 2) Safebuilt had not produced their general

---

[5] The Safebuilt Program was divided between "Gold" policies for smaller contractors and "Platinum" policies for larger contractors.

[6] Any claim that Safebuilt was entitled to take for itself, fees that dwarfed what they determined to be "pure premium" is quickly put to bed when the Quota Share Agreements are reviewed.  Section 8.01 of the QSAs states all policy fees were to be paid to "Reinsurers," defined as AmTrust's insurance affiliate, TIC.  Further, as discussed in the accompanying Declaration of Gary Osborne, Safebuilt and Taft knew that Pacific Re's and 5-AT's Montana regulators were so concerned by the size of the fees that they initially rejected the plan for 5-AT's creation. (*See*, Osborne Dec., at Ex. 8, ¶16, attached thereto.)  Indeed, Montana statutes define "premiums" as every charge made as consideration for the issuance of policy regardless of how described. (*See*, Section 33-15-102 of Montana Code.)

ledgers; and 3) as Safebuilt determined, it would not produce their general ledgers.  (*See,* Brown Dec., at Ex. 10.)

The importance of the withheld general ledgers and the other financial records the Veil Piercing Defendants claim they do not maintain are critical to Plaintiffs' proof of their alter ego/veil piercing claims, as fully described in the accompanying Declarations of Gary Osborne and Edward Hancock.  To establish their veil piercing claims to hold Pike, Salvagio and Savoia responsible for the financial obligations they had Safebuilt and Pacific Re/5-AT accept, Plaintiffs must have access to Safebuilt's general ledgers, not to mention the financial records of Pike, Inc., Salvagio, Inc., and of Savoia's privately owned brokerage, Target Financial and Insurance Services, Inc. ("Target").  To make use of these records in the litigation on the schedule as set by the Court, these records were needed by the time this Court Ordered Defendants to produce all of their non-privileged relevant documents.  As stated by Mr. Hancock in  his Declaration, even if the documents were to be produced now, sufficient time does not exist to do the forensic analysis required.[7]  (*See,* Hancock Dec. ¶20.)

### B.   *Background to Defendant Safebuilt, Preferred Global, Pike, Inc. and Salvagio, Inc.'s Discovery Abuses*

On April 10, 2015, the Court issued a broad order regarding discovery in this action, and warned the parties not to play games with discovery and that any non-compliance would be *prima facia* sanctionable (the "April 10th Order").  To that end, documents were initially to be produced by April 30, 2015.  (*See,* Brown Dec., at Ex. 13, 13:15.)

On June 9, Your Honor further admonished and cautioned the parties with respect to conducting discovery in this action, and noted the failure of Defendants to produce their

---

[7] Not only have Defendants failed to produce all of their documents by the Court's July 1, 2015 deadline, Defendants are still producing documents. *See,* their "Seventh" document production served on August 27, 2015. (Brown Dec., at Ex. 11.)  With another production promised by this coming Friday. *Id.,* at Ex. 12.

documents by April 30, and required their documents be produced by July 1, 2015.  As per the Minute Entry following the status conference, your Honor stated that "[s]hould either party engage in delay tactics or otherwise fail to proceed in a professional manner, the Court will not hesitate to impose sanctions. The Court also will entertain motions to preclude for any failure to abide by applicable discovery rules and deadlines." *See,* M.E. Jun. 9, 2015, emphasis added.

At the request of Defendants, including Safebuilt, Preferred Global, Pike, Inc., and Salvagio, Inc., to supplement the Court's April 10 Order, Plaintiffs served written document demands (the "Demands") and interrogatories on May 13, 2015. (*See,* Osborne Dec., at Ex. 5A-5E.)

Specifically, Request number 6 to the Demands requested production of the following:

> Your ordinary course financial documents and reports from 2009 to present such financial statements, cash flow reports, income and expense reports or statements, profit loss reports, general ledgers, and check registers or similar documents that You use to monitor, track, record, or report Your finances and/or financial performance for any purpose.

(*See,* Osborne Dec., Ex. 5-A, at Response 6.)  In response, Defendants Pike, Salvagio, Savoia, Preferred Global, Pike, Inc. and Salvagio, Inc. stated that they had "no documents." *Id.* Defendants Taft and Safebuilt stated that "responsive, non-privileged documents, if any, will be produced and identified in the annexed 'Schedule of Produced Documents'". *Id.*

Instead of heeding you Honor's April 10th and June 9th Orders, the simple facts are this: despite efforts by Plaintiffs since mid-July to now to locate within more than a million pages of documents for records Defendants repeatedly maintained contained all of Safebuilt's financial records, Safebuilt has refused to produce the most important financial records they possess (general ledgers) in order to prevent that Plaintiffs not only from determining for themselves the "fees" diverted and "distributions" made to shareholders, but of equal or even greater import, also to hide how much of the millions of dollars paid in producer commissions from 2010

through the present were taken out of Safebuilt and paid to producers, including Pike, Salvagio and Savoia through their personal insurance brokerages – when a document produced by Taft revealed in 2010 alone more than $7 million was paid by Safebuilt to producers, including Pike, Inc., Salvagio, Inc. and Target.[8]  Clearly, Pike, Salvagio and Savoia have directed Safebuilt to continue to withhold its general ledgers – they are its owners and managers.  When taken with the demonstrably unbelievable position that Pike, Inc. and Salvagio, Inc. claim to have no ordinary course financial documents, such as a general ledger, there can be only one explanation: that the Veil Piercing Defendants have intentionally withheld general ledgers and other financial documents to hinder Plaintiffs ability to make out their alter ego claims, as further explained in the Osborne and Hancock Declarations.

The Veil Piercing Defendants' withholding of critical documents is clearly intended to undermine Plaintiffs' alter ego allegations.  A lack of independence in terms of financial accounting is a typical area of inquiry for alter ego claims.  Yet, in violation of your Honor's Orders and Rule 26 discovery rules, the Veil Piercing Defendants have failed to produce any Safebuilt general ledgers and other verifiable financial documents these entities MUST have financial records.  (*See*, Osborne Dec. ¶10.)  As Edward Hancock observed and noted in his Declaration:

> 16.    Because of the importance of general ledgers in nearly every function of running an insurance or insurance brokerage business (or any business for that matter), the belated admission that SIS does have, but will not produce, the general ledgers, I can only conclude that the general ledgers were purposefully withheld in an attempt to hide transactions.  This became blatantly clear after consideration of a July 19, 2013 email recently identified in the 122 gigabyte issue bin into which Defendants included the financial records they did produce.

---

[8] The general ledgers of Safebuilt should reveal what Plaintiffs have seen reported, that the personal brokerages of Safebuilt's owners are by far the biggest producers.  The general ledgers will show the amounts paid out to producers, including Pike, Inc., Salvagio, Inc. and Savoia's brokerage, Target, how much they took out of Safebuilt in the subsequent years as losses paid by TIC grew with no further collateral paid by Pacific Re/5-AT and no indemnity provided by Safebuilt.

This is also a document that Taft produced.

17.     The July 19, 2013 email is from Mary Claire Goff (Senior Vice President of Taft) to Kelly Drouillard, whose relevant identity is not yet known to me or to Plaintiffs. *See*, Exhibit 10. In this email, Ms. Goff acknowledges that Safebuilt, principally owned and managed by Pike, Salvagio and Savoia, caused SIS to loan SIS funds to its individual owners' privately owned brokerages:

> As far as "Other Assets" these are all companies that the guys own in which SIS needed to loan to these [their separately owned brokerages] company funds. Except for the following:
>
>                 ***
>
> Due from Shareholders: This is taken care of every month. In the event a shareholder needs to take an "advance" of their monthly commission/distribution.

18.     Thus, it is apparent to me that the reason they have not turned over the general ledgers is because it will reveal ALL transactions like these, for ALL the years, and it will show that SIS's controlling owners drained necessary capital from SIS in an apparent disregard of the corporate formality and obligation of these entities, and the obligations they had SIS undertake, all to their personal advantage, and that Pike, Salvagio and Savoia operated SIS and the other entities as their alter egos.

(*See*, Hancock Dec. ¶¶16-18.)

The above cited document, again, was produced by Taft, but not by Safebuilt or any of the other Veil Piercing Defendants. Thus, it is clear that the Veil Piercing Defendants have engaged in the very conduct the Court has twice warned against – seeking to withhold critical documents until it is too late for Plaintiffs to make use of them.[9]

---

[9] The failure of Safebuilt to produce these documents also raises serious questions about counsel's role in collecting Safebuilt's, Pike, Inc.'s and Salvagio, Inc.'s documents. Clearly, no outside forensic collection was made of these entities.

**ARGUMENT**

**POINT I**

**THE FACTS JUSTIFY THE SANCTION OF EITHER STRIKING
THE ANSWERS OF THE VEIL PIERCING DEFENDANTS, OR PRECLUDING
THEIR OPPOSITION TO PLAINTIFFS' VEIL PIERCING ALTER EGO CLAIMS**

Simply stated, the documents that are being withheld from production will show: where the "fees" went; how much of the millions of dollars in producer commissions went to Pike, Inc., Salvagio, Inc., and Target; and what financial assets should have been available to pay claims, related expenses and TPA fees by funding Pacific Re and 5-AT's trust accounts and if that collateral failed to be sufficient, that Safebuilt would have been capitalized with sufficient money to honor its Hold Harmless and Indemnity obligations to TIC. Indeed, the general ledgers would have shown, had they been produced, how Safebuilt was drained of the capital it had by Pike, Salvagio, and Savoia, as they left Plaintiffs with only corporate shells to satisfy a nearly $9 million obligation.[10]

As an initial matter, this Court has the inherent authority to issue the requested relief. Federal Rules of Civil Procedure Rule 37 provides the district court with broad authority to issue harsh sanctions if a party fails to disclose information as required by Rule 26(a). The purpose of this rule is "to prevent the practice of 'sandbagging' an adversary with new evidence." *See, Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) ("Ritchie Risk") (quoting *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004)); *Ritchie Risk*, 280 F.R.D. at 156 ("imposition of the preclusion sanction remains within the trial court's discretion").

---

[10] On September 9, 2015, the Arbitration Panel Ordered Pacific Re and 5-AT, the cell of which Safebuilt is the Participant, to fund the Trusts with $6,373,244 and to pay to Plaintiffs $1,460,230.29 for TPA fees. (Brown Dec., at Ex. 14.) This Award followed Pacific Re's and 5-AT's failure to post security pursuant to N.Y. Ins. Law §1213(c)(1). That these reinsurers of Plaintiffs are insolvent was demonstrated by the rejection of their application for a bond. (Brown Dec., at Ex. 15.)

## POINT II

### THE VEIL PERCING DEFENDANTS ARE INTENTIONALLY WITHOLDING THE SAFEBUILT GENERAL LEDGERS TO OBSTRUCT AMTRUST FROM INVESTIGATING AND PROVING ITS VEIL PIERCING CLAIMS

The heart of Plaintiffs' Veil Piercing claims are the domination and control by Defendants Pike, Salvagio and Savoia of Safebuilt, Preferred Global, the Pacific Re vehicles, the personal brokerages of the individuals (Pike, Inc., Salvagio, Inc. and Target) and the use of their control to have these entities disregard their corporate formalities to the individuals' personal economic advantage. Plaintiffs allege they have undercapitalized Safebuilt, Pacific Re, and 5-AT, each of which accepted unlimited financial obligations to Plaintiffs. (*See,* Second Amended Compl. ¶¶33, 39 41, 48-49, 57; *see,* Osborne Dec. ¶8.) Pike, Salvagio and Savoia through their domination and control of Safebuilt diverted millions of dollars the individuals had Safebuilt characterize as "fees" so that they could be distributed out of Safebuilt to the individual brokerages and either left there for their owners use or distributed to their owners. Pike, Salvagio, Savoia and their affiliates are alleged to have engaged in self-dealing, improperly enriching themselves at the expense of Safebuilt, and ultimately to damage Plaintiffs (Second Amended Compl. ¶¶ 33, 39, 41, 48-49, 55-57, 85-88, 95).

In order to demonstrate that Pike, Salvagio and Savoia have abused their control of Safebuilt and their other corporate entities and prevented Safebuilt, Preferred Global and its owned reinsurers, Pacific Re and 5-AT from discharging their obligations to Plaintiffs, leaving the corporate obligors insolvent, Plaintiffs must have access to the financial records of the controlled entities, and at the center of that is Safebuilt which is the entity doing the billing and collecting of the payments made for the insurance policies issued in the Safebuilt Reinsurance Program. (*See,* Osborne Dec. ¶9.)

Thus, the essence of Plaintiffs' claims to pierce the corporate veils behind which the individual owners of Safebuilt, Pacific Re/5-AT and their individual brokerages seek to shield themselves from liability to Plaintiffs are the financial records demonstrating these individuals have taken money out of Safebuilt, depriving it of the ability to honor its obligations to 5-AT to fund its reinsurance obligations to Plaintiffs, and have likewise deprived Safebuilt of the funds to discharge its Hold Harmless and Indemnity obligations to TIC.

As demonstrated by the accompanying Declarations of Edward Hancock and Gary Osborne, Safebuilt (under the management of Pike, Salvagio and Savoia) first misrepresented that it had produced its financial records, but has now admitted it flaunted this Court's Orders by NOT producing its general ledger. (*See,* Osborne Dec. ¶14; Brown Dec., at Ex. 10.)

The general ledger is the basis and starting point from which all financial transactions are reconciled and the financial statements created.  (*See,* Hancock Dec. ¶¶12-13, 15.)  For each transaction, the general ledger will provide the date, account code, amount, classification, and any party related to the transaction.  *Id.*  Because the general ledger is the source document from which financial statements are created, the general ledger can in turn be used to verify and reconcile amounts presented in the financial statements.  *Id.*

For example, while Safebuilt has not produced a full set of its Balance Sheets, Plaintiffs did receive two accrual based Balance Sheets and Income Statements for the year ending December 31, 2010.  These Balance Sheets may be legitimate – or they may suggest the owner managers of Safebuilt have different books for different purposes. (*See,* Osborne Dec. ¶11.) Thus, while both Balance Sheets show the same amount of equity, a review identifies unexplained anomalies:  one set shows a current liability to David E. Pike, Inc. of $934,176, while the other, seemingly also reporting as of December 31, 2010, shows no liability to Mr.

Pike's personally owned brokerage. *Id.; see also* Hancock Dec. ¶13. Similarly, there is a material difference of $3,477,831 for current assets, and a difference of $3,504,527 for current liabilities. (*See,* Hancock Dec., at ¶13.) Another anomaly is demonstrated by the personal financial statements of Pike and Salvagio, produced by Taft for some financial entity in July 2013. There, while Pike and Salvagio have equal 1/3 shareholdings of Safebuilt, they report materially different "book values" for Safebuilt. (*See,* Hancock Dec., at ¶12.)

As the general ledgers of Safebuilt are the foundation for the creation of all of its other financial documents – and shows when, to whom and why money was disbursed, Safebuilt, which can only act as directed by its owners/managers, by withholding its general ledgers, and a full set of its financial records, has flaunted the Court's two prior Orders. Indeed, counsel for Plaintiffs, upon learning of the existence of the general ledgers and "Safebuilt's" decision to continue to withhold them, wrote to Safebuilt's counsel, both as counsel and as an officer of the Court, and implored him to produce the ledgers. (*See,* Brown Dec., at Ex. 16.) That request on September 10 has remained unanswered.

Further, the general ledgers of Safebuilt will disclose some of the material answers that would have been provided had Pike, Inc., Salvagio, Inc. and Preferred Global's refusal to produce ANY of their ordinary course financial records – as incredibly, they each responded to Document Demand "6" that they had no such records. That declination is simply incredible. (*See,* Osborne Dec. ¶12; Hancock Dec. ¶10.) How can the holding company of an insurer/reinsurer not have financial records? Do they claim to be immune from the insurance laws pertaining to Insurance Company Holding Systems? Are they immune from filing requirements of the IRS? Similarly, how do Pike, Inc. and Salvagio, Inc. claim not to have ordinary course financial records? As licensed insurance brokers, they receive premium

payments from insureds and make payments of those monies to insurers or to insurers' agents. They are required by their regulators to maintain premium trust accounts – to avoid co-mingling of their own operating funds with the premiums belonging to insurers.  (*See,* Osborne Dec. ¶12; Hancock Dec. ¶10.)  As Mr. Osborne has opined, to not have those records is on the one hand unbelievable, but if true, are admissions to have disregarded essential corporate formalities and obligations for insurance brokers.  (*See,* Osborne Dec. ¶12.)

## POINT III

### AMTRUST AND THEIR EXPERTS ARE SEVERLY PREJUDICED BY THE WITHOLDING OF THE SAFEBUILT GENERAL LEDGER

With so much riding on the Safebuilt General Ledgers, it is no wonder that the Veil Piercing Defendants have defied court orders and discovery rules to not produce them. However, such conduct is highly frowned upon in this Circuit and often brings with it the stiffest penalties, including default and preclusion.  *S. New England Tel. Co. (SNET) v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (granting default judgment for discovery violations: "dismissal or default is justified if the court finds that the failure to comply with the discovery orders was due to 'willfulness, bad faith, or any fault' of the party sanctioned); *Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*, 295 F.R.D. 1, 8 (E.D.N.Y. 2013) (precluding defendants "from offering evidence opposing Sentry's alter ego claim, for the purposes of both summary judgment and trial").

Such is the case here.  Consistent with the delay tactics Defendants have employed from the inception of this case, the Veil Piercing Defendants have intentionally, willfully, and in bad faith, not produced the Safebuilt general ledgers to hide their domination and control of Safebuilt (and their individual brokerages) by Defendants Pike, Salvagio and Savoia of Safebuilt.  This has severely prejudiced Plaintiffs from adequately preparing for their case-in-chief, and as a result,

pursuant to the law in this Circuit, this Court should strike the answers of the Veil Piercing

Defendants, or alternatively, preclude the Veil Piercing Defendants from contesting AmTrust's

claims that Safebuilt and Preferred Global together with non-defendant, Pacific Re, Inc. ("Pacific

Re") and its protected cell, Pac Re 5-AT ("5-AT") are the alter egos Pike, Salvagio and Savoia,

and that Pike, Inc. is the alter ego of Pike and that Salvagio, Inc. is the alter ego of Salvagio.

### A.    *Rule 37 Sanctions are Warranted*

For the discovery abuses described above, striking the Veil Piercing Defendants' answer

or preclusion is mandated.  Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, courts

enjoy broad discretion to sanction parties that fail to obey discovery orders; this discretion

includes, but is not limited to, the power to issue an order "prohibiting the disobedient party from

supporting or opposing designated claims or defenses."  Fed. R. Civ. P. 37(b)(2)(A)(ii); *Daval*

*Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d. Cir. 1991)( (affirming the sanction to

prohibit corporation from presenting evidence on issue of "alter ego" liability where there was a

court order requiring specified discovery and corporation did not comply with that order).

As the Second Circuit has long held: "[t]he discovery provisions of the Federal Rules of

Civil Procedure are "designed to achieve disclosure of all the evidence relevant to the merits of a

controversy.  It is intended that this disclosure of evidence proceed at the initiative of the parties,

free from the time-consuming and costly process of court intervention.  When a party seeks to

frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts

essential to an adjudication on the merits, severe sanctions are appropriate. *Id.* at 1365 (citations

omitted).  A court's discretion should be guided by the principle that "the severity of the sanction

must be commensurate with the non-compliance," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,

490 F.3d 130, 140 (2d Cir. 2007), such that sanctions are both "just ... and relate to the particular

claim to which the discovery order was addressed." *Daval Steel*, 951 F.2d at 1366 (citing

*Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). An order of preclusion "is strong medicine, [but] such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." *Id.* at 1367 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)).

Fed. R. Civ. Proc. Rule 37(b)(2) states in relevant part that if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders" including the following:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> *        *        *

> (vi) rendering a default judgment against the disobedient party; or

Fed. R. Civ. Proc. 37(b)(2).

As explained above, because of the egregious discovery conduct regarding the Veil Piercing Defendants concealment of financial documents, including the general ledgers, striking the Veil Piercing Defendants' answers and/or precluding them from contesting Plaintiffs' claims that Safebuilt, Preferred Global, together with non-defendant, Pacific Re and its protected cell, 5-AT, are the alter egos of Pike Salvagio and Savoia and that Pike, Inc. is the alter ego of Pike and that Salvagio, Inc. is the alter ego of Salvagio.

The party requesting sanctions under Fed. R. Civ. P. 37 bears the burden of showing that the opposing party failed to timely disclose information required by Fed. R. Civ. P. 26. To meet this burden, "the moving party must show: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the

evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Plaintiffs have satisfied its burden to obtain the foregoing Rule 37 sanctions by establishing that the Veil Piercing Defendants breached their discovery obligations, with a culpable state of mind, and that the missing evidence is undeniably relevant.

In satisfying the first element of its burden under Rule 37, Plaintiffs have documented above how the Veil Piercing Defendants were obligated to produce the general ledgers pursuant to the August 10th and June 9th Orders. However, instead of complying with their discovery requirements they chose to engage in a costly delay of resources to impede Plaintiffs from receiving crucial documents, which would reveal the truth about the Veil Piercing Defendants' control and domination of Safebuilt. *Supra*, at 6-9.

On the second element, despite the fact that only ordinary negligence need be proven (*see, Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002) (noting that negligence is enough to show a culpable mind)), the record clearly establishes the bad faith nature of Veil Piercing Defendants conduct by virtue of them providing untrue responses to Plaintiffs' Document Demands and Interrogatories, that they have no financial documents, obstructing discovery, burying any relevant documents in a data dump of 122 gigabytes of production, and recently admitting that in fact Safebuilt does in fact maintain general ledgers, but "SIS" refuses to produce them. *See, In re September 11th Cases*, 243 F.R.D. at 125 ("The 'culpable state of mind' element is satisfied by a showing that 'a party has breached a discovery obligation ... through bad faith or gross negligence [or] ordinary negligence.')

(quoting *Residential Funding,* 306 F.3d at 113). *See, e.g., Karaha Bodas Co., LLC v. Minyak,* No. 21 MC 98(TPG), 2007 WL 1284903 (S.D.N.Y. Apr. 30, 2007) (imposing sanctions in the amount of $500,000 against defendant due to the false deposition testimony given by one of the defendant's officials).

Though it seemed evident from the Veil Piercing Defendants' conduct, it was not until recently that Plaintiffs confirmed the reason Safebuilt wanted to hide the general ledgers.  (*See,* Brown Dec., at Ex. 10; Hancock Dec. ¶¶16-18.)  Namely, to hide the fact that Pike, Savoia, and Savagio were using Safebuilt as a piggybank by draining Safebuilt of capital sufficient to honor its obligations both as 5-AT's Participant and as the indemnitor of TIC pursuant to the General Agency Agreements.  Specifically, in an email dated July 19, 2013 from Mary Claire Goff (Senior Vice President of Taft) to Kelly Drouillard, Ms. Goff acknowledges that Safebuilt owned and managed by Pike, Salvagio and Savoia, caused Safebuilt (referred to in this email as "SIS") to loan Safebuilt funds to the individual owners' privately owned brokerages

> As far as "Other Assets" these are all companies that the guys own in which SIS needed to loan to these [their separately owned brokerages] company funds. Except for the following:
>
> * * *
>
> Due from Shareholders:  This is taken care of every month.  In the event a shareholder needs to take an "advance" of their monthly commission/distribution.

This email is *prima facie* evidence that the reason the Veil Piercing Defendants have not turned over the general ledgers is because it will reveal <u>all</u> similar transactions like these, evidencing the domination and control by Pike, Salvagio and Savoia of Safebuilt for their own personal benefit and disregarding Safebuilt's obligation to Plaintiffs in order that Safebuilt's shareholders may take "advances."

As to the third element, the missing evidence is relevant to Plaintiffs' Alter Ego claims, and its absence impedes Plaintiffs from doing any type of accurate accounting to follow the money that Pike, Salvagio and Savoia diverted from Plaintiffs through their domination of Safebuilt.

Thus, in order to demonstrate that Pike, Salvagio and Savoia have used their control of Safebuilt in furtherance of their diverting money contractually obligated to be collected for Plaintiffs' benefit to pay claims and other expenses, Plaintiffs must have access to all of the financial records of the controlled entities, especially Safebuilt, which is the entity doing the billing and collecting of the payments made for the insurance policies issued in the Safebuilt Reinsurance Program which is at issue in this litigation.  Because those have been denied, and because the case management schedule prevents their effective use even if now produced (*see,* Hancock Dec. ¶¶19-20), the Veil Piercing Defendants have earned the most severe sanctions. *Daval Steel Prods,* 951 F.2d at 1365 (affirming the sanction to prohibit corporation from presenting evidence on issue of "alter ego" liability); *SNET,* 624 F.3d at 149 (granting default judgment for discovery violations); *Sentry,* 295 F.R.D. at 8 (granting preclusion from opposing alter ego claim); *Lodge v. United Homes, LLC, et al.*, 787 F. Supp. 2d 247, 263 (E.D.N.Y. 2011) (stating that defendants "repeated and egregious disregard for the their continuing disclosure and discovery obligations, the multiple instances of misrepresentations and misconduct, and the duration of the offending conduct warrant the sanction of preclusion in this case.").

Second Circuit law is also clear that failure to produce relevant documents resulting in prejudice should result in an instruction to the jury that an adverse inference can be drawn from such conduct. *See Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir.1999) (granting instruction that jury can draw adverse inference from party's failure to produce relevant evidence

and noting that neither bad faith nor intentional misconduct is needed, rather, negligence is sufficient). To allow the Veil Piercing Defendants to move forward would be to reward them for their unscrupulous tactics. *See, Genger et al. v. Sharon*, No. 10 Civ. 4506 (SAS), 2012 WL 3854883, at *4 (S.D.N.Y. Sept. 5, 2012) (stating "[t]he purpose of disciplinary sanctions pursuant to Rule 37 are threefold. 'First, they ensure that a party will not benefit from its own failure to comply.....) (citing *Update Art, Inc. v. Modiin Publ'g Ltd.*, 843 F.2d 67, 71 (2d. Cir. 1988). The ability to collect truthful information during the discovery process is of vital importance to the sanctity of the justice system.

## CONCLUSION

The Veil Piercing Defendants have flaunted their disregard for the sanctity of the system when they concealed documents. These discovery failures are inexcusable. Accordingly, for the reasons above, the sanctions requested are warranted.

Dated: September 17, 2015
      Garden City, New York

                                      **OHRENSTEIN & BROWN, LLP**

                                      By: _____
                                            Michael D. Brown (MB9856)
                                            Matthew Bryant (MB2408)
                                        *Attorneys for Plaintiffs and Third-Party Defendant*
                                        *Builders & Tradesmen'sInsurance Services, Inc.*
                                        1305 Franklin Avenue, Suite 300
                                        PO Box 9243
                                        Garden City, NY 11530
                                        Tel: (516) 873-633

TO:    Brian A. Bender, Esq.
        Peri Avishai Berger, Esq.
        Abbie Lynn Eliasberg Fuchs, Esq.
        HARRIS BEACH, PLLC
        *Attorneys for Defendants/Third-Party Plaintiffs*
        100 Wall Street, 23rd Floor
        New York, NY 10005

Dove Ann Elise Burns, Esq.
GOLDBERG SEGALLA, LLP
*Attorneys for Third-Party Defendant*
*Network Adjusters, Inc.*
600 Lexington Avenue, Suite 900
New York, NY 10022

Gerard C. Morici, Esq.
Michael Morley, Esq.
MENDES & MOUNT, LLP
*Attorneys for Third-Party Defendants*
*Preferred Reinsurance Intermediaries and Robert Sanders*
750 Seventh Avenue

21