UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――x

AMTRUST NORTH AMERICA, INC. and
TECHNOLOGY INSURANCE COMPANY, INC.,

Plaintiffs,

-against-

SAFEBUILT INSURANCE SERVICES, INC.
a/k/a SAFEBUILT WHOLESALE INSURANCE
SERVICES, INC., THE TAFT COMPANIES,
LLC, PREFERRED GLOBAL HOLDINGS, INC.,
DAVID E. PIKE, DAVID E. PIKE, INC., PHILIP
SALVAGIO, SALMEN INSURANCE SERVICES,
INC. f/k/a SALVAGIO, INC., CARL M. SAVOIA,
JOHN DOE CORPORATIONS 1-5, and JOHN
DOES 1-5,

Defendants.

―――――――――――――――――――――――――――――x

SAFEBUILT INSURANCE SERVICES, INC.,
THE TAFT COMPANIES, LLC, PREFERRED
GLOBAL HOLDINGS, INC., DAVID E. PIKE,
DAVID E. PIKE, INC. d/b/a PIKE INSURANCE
SERVICES, PHILIP SALVAGIO, and SALMEN
INSURANCE SERVICES, INC.

Third-Party Plaintiffs,

-against-

NETWORK ADJUSTERS, INC., ROBERT SANDERS,
PREFERRED REINSURANCE INTERMEDIARIES,
BUILDERS & TRADESMEN'S INSURANCE
SERVICES, INC., JOHN DOE BROKERAGES 1-5,
JOHN DOE BROKERS 1-5, JOHN DOE
CORPORATIONS 6-15, AND JOHN DOES 6-15,

Third-Party Defendants.

―――――――――――――――――――――――――――――x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10|28|15

No. 14 Civ. 09494 (CM)

1

**MEMORANDUM DECISION AND ORDER GRANTING THIRD-PARTY DEFENDANT NETWORK'S MOTION TO DISMISS AND VACATING JUDGE COTT'S ORDER DIRECTING THAT NETWORK PRODUCE CERTAIN DISCOVERY**

McMahon, J.:

The underlying action commenced when Plaintiffs – a Delaware insurance company AmTrust North America, Inc. ("AmTrust") and its affiliate insurer Technology Insurance Company, Inc. ("TIC") – sued Defendants/Third-Party Plaintiffs David E. Pike ("Pike") and Philip Salvagio ("Salvagio"), and a group of companies alleged to be their agents or alter egos, seeking a declaratory judgment and money damages. Second Am. Compl., Dkt. No. 54 ¶¶ 10, 58-142. The gravamen of Plaintiffs' claim is that Pike and Salvagio fraudulently induced Plaintiffs to act as middle men in a reinsurance program (the "SIS Reinsurance Program" or the "Program") that was supposed to be structured so Plaintiffs were not at risk, but was not – and Plaintiffs were left holding the proverbial bag. Defendants, in turn, have sued Network Adjusters, Inc. ("Network"), a third-party claims administrator for the Program, claiming that Network's acts as claims administrator have inflated Plaintiffs' claims against Defendants.

Before the Court is third-party defendant Network's motion to dismiss the third-party complaint filed by the above captioned Third-Party Plaintiffs for failure to state a claim.

For the reasons that follow, the motion is granted.

## BACKGROUND

### I. The Underlying Action

This lawsuit concerns a reinsurance venture gone bad. An entity controlled by defendants Pike and Salvagio – Safebuilt Insurance Services, Inc. ("SIS") – was to underwrite primary policies issued by nonparty insurer United Specialty Insurance Company ("USIC"). Plaintiffs in turn reinsured those policies. Under an October 1, 2010 "SIS Captive Reinsurance Agreement," Plaintiffs' risk was itself reinsured by nonparty Pacific Re, Inc., through its "protected cell,"

2

nonparty Pac Re 5-AT[1] (together, "Pacific Re"), an entity formed under the laws of the state of Montana. Neither Pacific Re nor its record owner, defendant Preferred Global Holdings, Inc. ("Preferred Global"), has any employees. SIS owns both Pacific Re and Preferred Global, so Plaintiffs allege that Pike and Salvagio control them through SIS. Pike and Salvagio also allegedly exercised control over all these companies through their authorized agent, defendant the Taft Companies, LLC ("Taft"), which managed Pacific Re and Pac Re 5-AT. Second Am. Compl. ¶¶ 3, 11, 25.

The idea behind the scheme, as I understand it, was that Plaintiffs were to provide reinsurance but was not actually to have anything at risk. To that end, various parties signed four agreements. Two trust agreements provided that Pacific Re would fund two trust accounts (the "Trusts") to the level of loss that Plaintiffs "expected" as a result of Plaintiffs' participation in the Program. Pike signed both trust agreements as Pacific Re's president. Two general agency agreements between USIC, TIC, and SIS provided that SIS would fully indemnify Plaintiffs and hold them harmless against any and all liabilities, losses, and expenses rising from breaches or other failures of compliance with the general agency agreements or the reinsurance agreement. Also pursuant to the SIS Captive Reinsurance Agreement, Pacific Re was to reimburse Plaintiffs for the full amount of fees paid to the third-party administrator selected to manage the claims arising out of the SIS Reinsurance Program. *Id.* ¶¶ 25-27.

---

[1] The Montana Commissioner of Securities and Insurance explains that a captive insurance company is, "a specialized company established primarily to insure the risks of a parent company or members of an association [against] . . . the uncertainties of commercial availability and cost. They provide an insurance alternative for businesses . . . which is particularly important during times of a hard insurance market . . ." http://csi.mt.gov/captives/captives.asp (last visited October 21, 2015).

3

Plaintiffs allege that Pike and Salvaggio undercapitalized Pacific Re and SIS, and eventually stripped them of what assets they actually had. Plaintiffs also allege that SIS, Pike and Salvagio never sufficiently collateralized the Trusts and failed to pay the costs of the third-party administrator (third-party defendant Network, described below). As a result Plaintiffs' risk-free reinsurance scheme proved anything but.

Plaintiffs have sued Defendants for breach of contract, breach of fiduciary duty, fraudulent conveyance, conversion, and negligence for their failure to adequately fund the trust accounts and pay third-party administrator fees. They seek to pierce the corporate veil so as to hold Pike, Salvagio and Savoia personally liable for the alleged misdeeds of the corporate defendants. Plaintiffs seek $1.3 million[2] of third-party administrator fees that Defendants allegedly failed to reimburse and $8 million that should have been paid into the Trusts. *Id.* ¶¶ 33, 39-41, 48-50, 56-57; Third Party Compl. ¶ 44.

## II. Third-Party Defendant Network and the Master Claims Services Agreement

Third Party Defendant Network is a claims administrator.

On September 1, 2009 – prior to embarking on the SIS Reinsurance Program with Defendants – AmTrust, as agent for TIC, entered into a Master Claims Services Agreement ("MCSA") with Network, whereby Network was retained to provide claims administration services for various insurance programs with which AmTrust/TIC were involved. *See* MCSA, Dkt. No. 111-5 at 1. The MCSA contemplates that AmTrust would from time to time enter into general agency or reinsurance agreements ("Company Agreements") with parties other than AmTrust that issue or reinsure policies ("Company Agreement Parties" or "CAPs"), and that

---

[2] Paragraph 62 of the Amended Second Amended Complaint alleges third-party administrator fees of over $1.7mm with only $600,000 of reimbursement for an unpaid balance of only $1.1 million, but this amount appears to be an error – Plaintiffs likely failed to update this paragraph for the actual unpaid balance as of the filing of the Second Amended Complaint.

4

Network would act as claims administrator for claims asserted against CAP policies that were reinsured by AmTrust. The initial CAPs were non-parties USIC, Tower Insurance Company, and State National Insurance Company.

On October 10, 2010, AmTrust and Network signed Schedule C to the MCSA, which designated SIS as a CAP and provided that Network would administer claims for policies that were part of the SIS Reinsurance Program. *See* Schedule C, Dkt. No. 111-6 at 1, 3. Although Schedule C was incorporated into the MCSA, it specifically provides that "the terms and conditions of this Schedule C shall control over any inconsistent terms set forth in [the MCSA]." *Id.* at 3.

## III. Third-Party Allegations Against Network

On May 15, 2015, Third-Party Plaintiffs other than Carl Savoia filed a Third-Party Complaint against Third-Party Defendants, including Network. Third-Party Compl., Dkt. No. 58. On June 24, 2015, Third-Party Plaintiffs, including Carl Savoia, filed a motion to amend the Third-Party Complaint to add Savoia as a Third-Party Plaintiff. Dkt. Nos. 79-82. Third-Party Plaintiffs may file an amended third-party complaint but, because I am dismissing all claims against Network, they must refile omitting Network as a third-party defendant.

The Third-Party Complaint asserts claims against Network for (1) negligent performance of its duties as third-party administrator of the SIS Reinsurance Program policies, (2) breach of contract for failure to comply with the terms of the MCSA, (3) contribution, and (4) indemnity. The negligence and breach of contract claims are asserted by SIS and Taft against Network. The contribution and indemnification claims are asserted by all Third-Party Plaintiffs against all Third-Party Defendants, including Network. Third-Party Compl., ¶¶ 73-91, 153-150.

On August 3, 2015, Network filed this motion to dismiss all claims against it in the Third-Party Complaint and Proposed Amended Third-Party Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 103-104.

## DISCUSSION

### IV. Standard of Review

"To survive a motion to dismiss under Rule 12(b)(6) ... a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mabry v. Neighborhood Defender Svc.*, 769 F.Supp.2d 381, 389 (S.D.N.Y.2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "[A] plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### V. The "Follow the Fortunes" Doctrine Does Not Bar Suit

Network first moves to dismiss the Third-Party Complaint on the ground that it is barred by the "follow the fortunes" doctrine. That aspect of the motion is denied.

"The follow-the-fortunes doctrine binds a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured.... This doctrine insulates a reinsured's liability determinations from challenge by a reinsurer unless they are fraudulent, in bad faith, or the payments are clearly beyond the scope of the original policy or in excess of [the reinsurer's] agreed-to exposure." *N. River Ins. Co. v. Ace Am. Reinsurance Co.*, 361 F.3d 134, 139-40 (2d Cir. 2004) (internal quotation marks and citations omitted). Put simply, a reinsurer is prevented from challenging good faith decisions relating to policy administration made by the reinsured.

Network claims that, under the "follow the fortunes" doctrine, Third-Party Plaintiffs (as reinsurers) have no standing to assert claims against Network (Plaintiffs' agent for administering claims under the policies), because that would be tantamount to second-guessing good faith determinations made by AmTrust and TIC (as reinsureds) concerning the underlying policies. *See* Network Br. at 7-12.

To support its argument, Network cites to a clause of the California Quota Share Agreement – an agreement entered into as part of the SIS Reinsurance Program – which states: "the true intent of this Agreement [is] that the Reinsurer shall, in every case to which this Agreement applies, follow the fortunes of the Company." California Quota Share Reinsurance Agreement, Dkt. No. 93-5 §2.04. But none of the Third-Party Plaintiffs is the "Reinsurer" under the California Quota Share Agreement; TIC is. And USIC is the "Company," not TIC or AmTrust (in fact, AmTrust is not even a party to the agreement). Nothing in that agreement binds any of the Third-Party Plaintiffs to "follow the fortunes" of Amtrust or TIC; rather, it binds TIC to follow the fortunes of USIC.

Network attempts to bring Third-Party Plaintiffs within the ambit of the "follow the fortunes doctrine" by arguing that that they "owned and/or controlled" the reinsurers who matter to this case: Pacific Re, Inc. and Pac Re 5-AT. Network Reply Br. at 2. But those entities are not parties to this action, and their status as reinsurers, as it relates to application of the "follow the fortunes" doctrine to Third-Party Plaintiffs, has – as of yet – no relevance. The walls separating Pacific Re from Third-Party Plaintiffs may ultimately fall, permitting the Court to treat Third-Party Plaintiffs as reinsurers in this venture. But today all we have are allegations.

So "follow the fortunes" cannot be the basis for dismissing Third-Party Plaintiffs' claims against Network.

However, all third-party claims against Network must be dismissed for other reasons.

## VI. The Claim for Breach of Contract is Dismissed Because SIS is not a Third-Party Beneficiary of the MCSA

In Count II of the Third-Party Complaint, SIS and Taft sue Network for breach of the MCSA. This claim must be dismissed because SIS and Taft, which are not parties to the MCSA, lack standing to sue for breach of that agreement.

### A. Applicable Law

SIS and Taft are not parties to the MCSA. Thus, to sue Network for breach of contract, they must be third-party beneficiaries of the MCSA.

To be considered a third-party beneficiary of a contract under New York law, a party must "establish that the parties to the contract intended to confer a benefit on a third-party." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir.2005) (citing *State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35 (2000)). For a contract to confer third-party beneficiary status, three elements must be established: (1) there must be a valid and binding contract between other parties, (2) the contract was intended for the benefit of some third party; and (3) the benefit to the third party must be sufficiently immediate, rather than incidental, so that it indicates the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 786 (2006)

"While the third-party beneficiary does not have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 191 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Indeed, "absent clear contractual language evincing such intent, New York courts have

demonstrated a reluctance to construe such an intent." *LaSalle Nat'l Bank v. Ernst & Young LLP*,

285 A.D.2d 101, 729 N.Y.S.2d 671, 676 (1st Dep't 2001) (internal quotation marks and citations

omitted).

"Dismissal of a third-party-beneficiary claim is appropriate where the contract rules out

any intent to benefit the claimant ... or where the complaint relies on language in the contract or

other circumstances that will not support the inference that the parties intended to confer a

benefit on the claimant." *Subaru Distributors Corp.*, 425 F.3d at 124-25.

The New York Court of Appeals has adopted Restatement (2d) of Contracts § 302 as an

accurate statement of New York third-party-beneficiary law. *Subaru Distributors Corp.*, 425

F.3d at 124 (citing *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 495

N.Y.S.2d 1, 485 N.E.2d 208, 212 (1985)). Under section 302(1):

> Unless otherwise agreed between promisor and promisee, a beneficiary of a
> promise is an intended beneficiary if recognition of a right to performance in the
> beneficiary is appropriate to effectuate the intention of the parties and either:
>
> > (a) the performance of the promise will satisfy an obligation of the
> > promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the
> > beneficiary the benefit of the promised performance.

## B. SIS is not a Third-Party Beneficiary of the MCSA

To determine third-party beneficiary status, the relevant facts are, quite obviously, in the

MCSA itself. Incredibly, neither party saw fit to comb through this document in detail, so the

Court has done so for them.

The MCSA unquestionably contemplates that AmTrust will enter into general agency or

reinsurance agreements with third parties. However, the language of the MCSA does not "clearly

evidence [ ] an intent to permit enforcement [of the MCSA] by" that third party. *Fourth Ocean

Putnam*, 495 N.Y.S.2d 1, 485 N.E.2d at 212; *see Air Atlanta Aero Eng'g Ltd. v. SP Aircraft*

9

*Owner I, LLC*, 637 F. Supp. 2d 185, 191 (S.D.N.Y. 2009). AmTrust retains all supervisory authority over Network under the MCSA. Only Network and AmTrust can terminate the contract. MCSA § 7.2. Only AmTrust can assume or re-assign Network's duties under the MCSA. *Id.* § 7.4(b). Only AmTrust can suspend or terminate the entirety or a portion of Network's authority during the pendency of any dispute. *Id.* §§ 2.3, 7.6. And all the representations and warranties made in Article 4 are made solely to AmTrust, not to any CAP. *Id.* § 4.1.

It is true that the CAPs, including SIS (but not Taft), enjoy certain specified rights under the MCSA. But the drafters of the MCSA took pains to assure that those rights were limited, and that none would entitle the CAPs to sue for breach of Network's contractual obligation to settle claims. For example, CAPs are entitled (sometimes at the direction of AmTrust) to receive or inspect certain documents and data, and to use certain systems relating to the Policies they insure or reinsure. *Id.* §3.3, 6.2, 6.4. Network agreed to pay any regulatory fines or penalties assessed against AmTrust or any of its CAPs if Network was negligent in fulfilling its regulatory reporting obligations. *Id.* § 6.14. And the MCSA includes an indemnification clause, which requires Network to indemnify AmTrust and any of its CAPs in case anyone should assert a claim against them arising out of Network's acts or omissions as Claims Servicer. *Id.* Art. 8. None of those suggests any right on the part of a CAP to bring a claim against Network for breach of its contractual obligation to administer claims.[3]

---

[3] Section 6.8 of the MCSA provides that Network's "duties and obligations under [the MCSA] shall also be due and owing to the Company's successors and assigns and each Company Agreement Party and its successors and assigns." Though inartfully drafted, this clause cannot reasonably be read to undo the MCSA's otherwise careful, section-by-section specification of particular duties owed only to "the Company" (AmTrust), to "the Company and each Company Agreement Party" (AmTrust and all the CAPs), or to "the Company and, at the direction of the Company, any Company Agreement Party" (AmTrust and specifically designated CAPs). The

10

Furthermore, in the case of SIS and Taft and the SIS Reinsurance Program, it is quite clear that Network's obligation to administer claims runs only to AmTrust. Network is not designated as either SIS' or Taft's agent for that purpose. While the MCSA provides that AmTrust "hereby grants binding authority to [Network], as agent for [AmTrust] and, *as the case may be, the Company Agreement Parties*, to administer investigate, defend, and settle claims arising under the Policies ..." *Id.* § 2.1 (emphasis added), the Schedule C that makes SIS a CAP specifically provides that, "Claims Servicer will adjust the claims *on behalf of AmTrust.*" Schedule C. § 3 (emphasis added). While there is no necessary conflict between those two provisions – since the arrangement between AmTrust and SIS is plainly not one of those that falls within the scope of the phrase "as the case may be" – Schedule C also provides that, in case of conflict between it and the MCSA, it controls. Therefore, to the extent a reader might perceive a conflict between Section 2.1 and Schedule C, Schedule C's clear statement that Network will act only as AmTrust's agent trumps anything to the contrary in the MCSA.

Thus, "to the extent that any benefits may have accrued to [SIS] under [the MCSA], such benefits were clearly incidental to the ... primary goal of..." Network's servicing claims on behalf of AmTrust. *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 266 (S.D.N.Y. 2006). While the MCSA certainly acknowledges – and accounts for – the existence of other parties whose insurance policies may flow to Network for administration through AmTrust, it does not provide those parties the means by which to enforce the contract. "Contract language referring to third parties as necessary to assist the parties in their performance does not ... show

---

logical reading of Section 6.8 is that it extends those duties owed to AmTrust or to any CAP to their respective successors and assigns, and nothing more.

11

an intent to render performance for the third-party's benefit." *Subaru Distributors Corp.*, 425
F.3d 119 at 126.

The Restatement is also instructive here. The "performance of the promise" (*i.e.*,
Network's servicing of the specified insurance policies) will not "satisfy an obligation of
[AmTrust] to pay money to [SIS]." Nor do "the circumstances indicate that [AmTrust] intends
to give [SIS] the benefit of the promised performance." Restatement (2d) of Contracts § 302.
The service is to be rendered to AmTrust; in the case of these policies Network is the agent only
of AmTrust.

Thus, because SIS is not a third-party beneficiary to the agreement, its claim by Third-
Party Plaintiffs against Network for breach of contract is dismissed.

Taft has no rights whatever under the MCSA, so it cannot even pretend to be a third party
beneficiary of that contract. Its claim for breach of contract is also dismissed.

## VII. The Negligence Claim Is Dismissed Because Network Owed Third-Party Plaintiffs No Duty of Care

In Count I of the Third-Party Complaint, Defendants/Third Party Plaintiffs assert that
Network was negligent in the performance of its duties under the MCSA. This claim must be
dismissed because Network owed SIS and Taft no duty of care.

"In general, a contracting party will not be liable to a non-contracting third party for
claims arising from the negligent performance, or non-performance, of the contract." *In re
World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d 409, 429-30 (S.D.N.Y.
2014). However, "a contracting party may be liable in tort when it has breached a duty of
reasonable care distinct from its contractual obligations, or when it has engaged in tortious
conduct separate and apart from its failure to fulfill its contractual obligations." *Id.* (citing *N.Y.*

12

*Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (emphasis added).

 *Bayerisch Landesbank*, on which Third-Party Plaintiffs rely, similarly states that "a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). In *Bayerische*, the plaintiff properly pled an independent duty by claiming that it relied on representations made by defendants, outside of the relevant contract, in making its investment in a collateralized debt obligation structured and underwritten by defendants. *Id.* at 46.

 Though Third-Party Plaintiffs claim that an independent duty of care exists, they have not alleged facts that could give rise to such an independent duty of care. "New York courts have held that merely charging a breach of a duty of due care, employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." *Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.*, 769 F. Supp. 2d 322, 326-27 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Third-Party Plaintiffs state that "Network owed a duty of care to SIS and Taft to perform the requisite services in accordance with the usual and customary practices and standards of care required of a Third Party Claims Administrator in the insurance/reinsurance industry." Third Party Compl., ¶ 78. Third-Party Plaintiffs assert that this is a separate and independent duty from Network's duty under the MCSA, but saying so does not make it so. This contention is nothing more than a legal conclusion masquerading as an allegation of fact. In substance, the negligence claim merely restates Network's alleged failure to satisfy its contractual responsibilities under the MCSA. *See id.* ¶¶ 80-81.

 The negligence claim is dismissed.

## VIII. The Claim for Contribution is Dismissed Because Third-Party Plaintiffs Seek Only Economic Loss

In Count VII of the Third-Party Complaint, Third-Party Plaintiffs seek contribution from Network. This claim fails because Third-Party Plaintiffs seek only economic damages (that is, damages in the nature of, or equivalent to, breach of contract damages). "There is no contribution available if the measure of damages is purely economic. 'The touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein.'" *Conestoga Title Ins. Co. v. ABM Title Servs., Inc.*, 2012 WL 2376438, at *6 (S.D.N.Y. June 20, 2012) (quoting *Children's Corner Learning Ctr. v A. Miranda Contr, Corp.*, 64 A.D.3d 318, 324 (1st Dep't 2009)). Thus, where a first-party complaint asserts a cause of action, even in tort, that relies purely on "a contract measure of damages," a defendant/third-party plaintiff cannot seek contribution. *Id.*

Here, the contribution claim against Network is as follows: "If Plaintiffs recover from us, you are liable to us in contribution because your poor claims servicing is all or part of the reason why we owe money to AmTrust and TIC." Put otherwise, what AmTrust and TIC seek from Defendants/Third-Party Plaintiffs is money they were owed pursuant to the parties' contractual agreements – $1.3 million for Network's servicing fees, and $8 million that was to be paid into the Trusts. The damages sought are amounts that companies controlled by Defendants/Third-Party Plaintiffs allegedly owed Plaintiffs pursuant to the SIS Captive Reinsurance Agreement. Defendants/Third-Party Plaintiffs, in turn, seek to hold Network liable for whatever they may owe to AmTrust and TIC on such a theory. Thus, what Plaintiffs seek from Defendants/Third-Party Plaintiffs – and therefore what Third-Party Plaintiffs seek in contribution from Network – is purely "a contract measure of damages." The claim for contribution, as against Network, is dismissed.

## IX. The Claim for Indemnification is Dismissed

Third-Party Plaintiffs have alleged a claim for indemnification under two theories: common law and contractual indemnity. Third Party Compl. ¶ 150. But because Network owes no independent duty to Third Party Plaintiffs, and because Third-Party Plaintiffs have pled no facts alleging that Network's contractual duty to indemnify has been triggered, the claim fails under both.

### A. Common Law Indemnity

"A cause of action for common-law indemnification can be sustained only if: (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them. ... However, the key element of a common law indemnification claim is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." *Perkins Eastman*, 769 F. Supp. 2d at 329-30 (S.D.N.Y. 2011) (internal citation marks and quotations omitted).

Thus, a claim for common law indemnification requires that Network have some duty running to Third-Party Plaintiffs. As discussed above, no such duty exists.

### B. Contractual Indemnity

The MCSA includes a clause indemnifying each CAP for claims against the CAP relating to Network's performance of its duties under the MCSA. This claim must be dismissed because no facts are pleaded tending to show that Network's contractual duty to indemnify has been triggered.

The MCSA explicitly provides CAPs with a right to indemnification if claims are asserted against the CAP for acts/omissions/breaches by Network:

> The Claims Servicer shall indemnify and hold harmless ... each Company
> Agreement Party ... against and in respect of any and all claims ..., demands,
> actions, proceedings, liability, losses, damages, judgments, costs and expenses,

15

which directly or indirectly arise out of or relate to (a) act or omission of the Claims Servicer … in connection with this Agreement or discharging the Claims Servicer's obligations to the Company, a Company Party Agreement [sic], or to insureds under the Policies, (b) any breach or violation by the Claims Servicer … of any term or provision of this Agreement or any applicable law or regulation, or (c) any nonreimbursable cost, expense, or liability incurred by … the Claims Servicer ….

MCSA § 8.1. So if SIS or Taft had been sued by some third party *because of some act or omission by Network in the performance of its duties*, they could bring a third-party claim against Network under the contractual indemnity clause.

The problem, of course, is that the Third-Party Complaint does not allege that anyone has sued either SIS or Taft because of any act or omission by Network. Plaintiffs have sued Defendants/Third-Party Plaintiffs for breach of contract, breach of fiduciary duty, fraudulent conveyance, conversion, and negligence; but the gravamen of these causes of action is Defendants'/Third Party Plaintiffs' failure to fund the trust accounts adequately and pay third-party administrator fees as required by the trust agreements and SIS Captive Reinsurance Agreement. AmTrust's claims do not arise out of any purported breach of the MCSA by Network. Therefore, the contractual indemnity clause does not cover Third Party Plaintiffs' indemnity claim.

Thus, Third-Party Plaintiffs' claim for indemnity (Count VIII of the Third-Party Complaint), as against Network, is dismissed.

## X.     Impact of this Decision on the Magistrate Judge's Discovery Order

Also pending before this court is an appeal from an order of Magistrate Judge Cott, directing the production of certain discovery from Network. Now that all claims against Network have been dismissed, I vacate Judge Cott's order and remand so that he can reconsider with the benefit of knowing the status of the third-party claims. Judge Cott's time is a valuable resource, and the parties wasted it by coming to him for a discovery ruling before Network's motion to

16

dismiss was decided. I thank him for his work on this matter and apologize for not getting to this motion sooner.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted. The Clerk of the Court is directed to remove Docket Nos. 79 and 103 from the Court's list of pending motions.

Dated: October 28, 2015

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

17