

**OHRENSTEIN & BROWN, LLP**
COUNSELORS AT LAW

1305 FRANKLIN AVENUE, SUITE 300, PO BOX 9243, GARDEN CITY, NY 11530-9243 TEL: 516-873-6334  FAX: 516-873-8912
WWW.OANDB.COM

MATT BRYANT
Direct Dial: (516) 535-4419
Email: MATTHEW.BRYANT@OANDB.COM

November 20, 2015

**Delivered  ECF**
Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl Street, Room 1640
New York, NY 10007

> Re:    *AmTrust, et al v. Safebuilt Insurance Services, et al. v. Network et al.*
> Case No.: 14-CV-9494
> Our File No.:  3639-006

To The Honorable Judge Cott:

We reluctantly write pursuant to Your Rule II(B)(1) and move the Court for a protective order denying Defendants' request that Plaintiffs collect further claims related materials and produce claims related witnesses in this Action.

## BACKGROUND

### 1.    Introduction

This action is related to the New York arbitration, *The Matter of the Arbitration between AmTrust North America, Inc. et al v. Pacific Re, Inc. and Pac Re 5-AT*, and principally seeks to impose individual and alter ego liability upon the responsible individual and corporate defendants for the amounts awarded therein. On September 9, 2015, the New York Arbitration Panel Ordered non-party Pacific Re and Pac Re 5-AT., a Montana protected cell captive reinsurance company and one of its protected cells, to pay Plaintiffs $1,460,230.29 in damages and $6,373,244 in collateral funding for claims and related payments. (Interim Final Award ¶ 2(a), (b), Ex. 1.)[1] These amounts remain unpaid. Damages and claims continue to accrue.

### 2.    The Reinsurance Dispute

Effective October 1, 2010, defendant Safebuilt Insurance Services, Inc. and Pacific Re entered into a Participation Agreement[2] to create Pac Re 5-AT ("Cell 5") for Safebuilt. *Pac Re 5-AT v. Amtrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406 at *1 (D. Mont. May 13, 2015). Pursuant to this Agreement, Safebuilt was obligated to provide funding for Cell 5's liabilities as its Participant and entitled to any remaining assets as the beneficiary as the beneficial owner of Cell 5. (Participation Ag. § 1.1, Ex.1.) Effective that same day, Pacific Re and Plaintiffs entered into the Safebuilt Captive Reinsurance Agreement (the "CRA")[3] pursuant to which Pacific Re for itself and for Cell 5 agreed to provide reinsurance to Plaintiffs to pay claims and expenses, to provide the necessary collateral to do so, and to arbitrate any dispute arising out of its obligations.

---

[1] The Interim Final Award and Memorandum of grounds are collectively submitted as Ex. 1. and Ex. 1-1
[2] A copy of the Participation Agreement submitted to the U.S. District Court for the District of Montana is included herein as Exhibit 2.
[3] A copy of the Safebuilt Captive Reinsurance Agreement is submitted herein as Exhibit 3.

November 20, 2015
The Hon. Judge Cott
Page 2:5

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, No. 14 CIV. 09494 CM, 2015 WL 6667461 at *1 (S.D.N.Y. Oct. 28, 2015). Pacific Re has no employees and is owned by a shell company, Defendant Preferred Global Holdings, Inc., with no employees of its own. *AmTrust N. Am.*, 2015 WL 6667461 at *1. Pacific Re and Safebuilt are ultimately owned and controlled by the Individual Defendants herein (Messrs. Pike, Salvagio, and Savoia) who, Plaintiffs allege, undercapitalized and stripped Pacific Re and Safebuilt of assets to avoid these contractual obligations. *Id*.

Discovery has revealed that after Plaintiffs' terminated the CRA, placing the insurance program into run-off for claims payments the Individual Defendants voted to transfer Cell 5's assets into Pacific Re. (Oct. 31, 2012 Unan. Consent, Ex. 4.) Those cell assets, by law, were dedicated to paying the liabilities of Cell 5. *Pac Re 5-AT v. Amtrust N. Am., Inc.*, No. CV-14-131-BLG-CSO, 2015 WL 2383406 at *4 (D. Mont. May 13, 2015) (*citing Mont. St. Ann.* § 33–28–301(4)). Defendant Taft explained to the Montana regulator that this was done to increase Pacific Re's capital and surplus (with the Cell's assets) so that Pacific Re could increase its reinsurance position for the Individual Defendants' related program, through Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC"), which does not benefit Plaintiffs (Oct. 18, 2012 Taft Letter to Commissioner's Office, Ex. 5.) Defendants never disclosed this fact to Plaintiffs or the U.S. District Court for the District of Montana.

After Plaintiffs demanded arbitration under the CRA against Respondents Pacific Re and Cell 5in September 2014, Pacific Re through Cell 5 immediately commenced an unsuccessful declaratory judgment in the U. S. District Court for the District of Montana (the Montana Action) seeking to limit the arbitration award to Cell 5's assets and exempt its own. *Pac Re 5-AT*, 2015 WL 2383406 at *5 (D. Mont. May 13, 2015) (holding Pacific Re is proper party and will be bound by the award).

### 3.    *The Arbitration And Interim Final Award*

Following the Montana Action, the arbitral parties served Initial Arbitration Briefs. In response to Petitioners-Plaintiffs' demand for all amounts necessary for expense and claims payments under the CRA, Pacific Re and Cell 5 alleged no further payments were required because the amounts sought had been inflated due to the mismanagement and negligence of Plaintiffs' Third-Party Claims Administrator, Network Adjusters, in handling the underlying third-party insurance claims presented under the Program. (*See, e.g*., Pacific Re Initial Arbitration Br. at 4 July 10, 2015, Ex. 6.)

On September 9, 2015, the Arbitration Panel rejected these defenses to the amounts sought in the Arbitration ordered these amounts paid. (Interim Final Award at ¶ 2(a), (b), Ex. 1.) On September 22, 2015, Petitioners commenced a confirmation proceeding now pending in the Southern District of New York. *AmTrust N. Am. et al v. Pacific Re, Inc., et al*, No. 1:15-cv-07505-CM.

### 4.    *The Erstwhile Third-Party Claims Against Network Defendants/Third-Party*

While the Arbitration was pending, Defendants as Third-Party Plaintiffs served third-party claims on Network for breach of contract, negligence, contribution, and indemnity, asserting the very same factual transactions that Pacific Re and Cell 5 would assert in its Initial Brief. *AmTrust*, 2015 WL 6667461 at *2-3. Defendants served discovery demands for Plaintiffs and Network's claims handling material and claims files from Network. (A copy Plaintiffs' Rule 72(a) Objections to the Magistrate's Ruling is submitted as Exhibit 7.) Plaintiffs objected to these demands and sought a protective order because the defenses and claims were intertwined with the Arbitration and relitigating them in the federal action was barred under the Federal Arbitration Act. (*Id*. at 1.) Defendants likewise requested an Order compelling Plaintiff to produce all of its claims related material. However, when asked what the Defendants were seeking, the Defendants told the Court they really just wanted the actual claims files from Network. (Sep. 2 Tr. at 108:7-19, Ex. 7-1.) On September 2, 2015, this Court denied the protective order and opened discovery into Network's claims handling and directed Network to produce its claims files. On September 17, 2015, Plaintiffs filed objections to the ruling pursuant to

November 20, 2015
The Hon. Judge Cott
Page 3:5

Federal Rule of Civil Procedure 72(a), which Defendants opposed by memorandum of law. (A copy of Defendants' Memorandum of Law in Opposition is submitted herein as Exhibit 8.)

On October 28, 2015, the District Court granted Network's motion to dismiss, vacated the discovery order, and remanded Plaintiffs' objections for reconsideration. *AmTrust*, 2015 WL 6667461 at *9-10 (a copy of the Judge McMahon's Order is submitted herein as Exhibit 9). These objections remain pending and in sum and substance carry-over to Defendants ongoing requests to collect and produce all claims-related emails, materials, and witnesses.

Defendants have demanded a supplemental collection of all claims-related material from Plaintiffs because eleven (11) months of loss development has transpired since our original collection. Following Network's dismissal, Defendants served subpoenas on Network for four depositions in Denver, Colorado. Plaintiffs' have moved to quash these subpoenas and have requested a Rule 45(f) Order transferring the objections back to this Court for uniform resolution with Plaintiffs' standing objections. Defendants opposed transfer and argued "if plaintiffs want to engage Magistrate Cott on other issues, they are free to do that directly."

The propriety of claims paid out-of–collateral remains subject to the ongoing arbitration. (Mem. of Grounds ¶ 2(c), Ex. 1-1.) Safebuilt is the beneficial owner, Participant and guarantor of the program and cannot gut its namesake captive reinsurance agreement to deny Plaintiff the bargained-for-arbitration. Safebuilt should be estopped from discovering the material to raise these defenses at trial. Defendants seek to argue that certain of these claims were handled poorly by Network, settled for too much money, litigated for too long, or perhaps should have not been covered at all. The underlying claims continue to be reported and litigated. The Defendants request would require perpetual discovery through and until the last claim is paid. Each time a claim is repaid, the Defendants seek to relitigate here in New York. Plaintiffs are entitled to a protective order under controlling law.

## ARGUMENT

### A.     *The Court Must Rule on the Discoverability of Arbitral Issues.*

A decision must be rendered on Plaintiffs' objections to the discovery of defenses that are subject to arbitration. *Klepper v. SLI, Inc.*, 45 Fed. Appx. 136, 138 (2d Cir. 2002) (holding District Court erred in allowing discovery to proceed without determining arbitrability). Plaintiffs have repeatedly objected to the discovery because Safebuilt is directly obligated to fund the Cell 5-AT as the Participant, its close relationship with Pacific Re, and argued that it should be estopped from frustrating the arbitration that was conducted on its behalf as principal to the "Safebuilt Captive Reinsurance Agreement". (Pltf. R. 72(a) objections at 6-9, Ex. 7.) Defendants opposed the objections argued that non-signatory cannot be estopped into an arbitration obligation in the Second Circuit. (Def. Opp. at 2, Ex. 8.)

The Second Circuit will bind a non-signatory to an arbitration obligation under ordinary principles of contract, estoppel, and alter ego. *World Omni Fin. Corp. v. Ace Capital Re Inc.*, 64 F. App'x 809, 812 (2d Cir. 2003) (holding employ "ordinary principles of contract and agency"-can bind non-signatories (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel-to determine whether the non-signatory should be bound by an arbitration agreement signed by other parties); *see also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997); *see also Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 396 (E.D.N.Y. 2013) (holding five basic theories of (i) incorporation by reference; (ii) assumption; (iii) agency; (iv) veil-piercing/alter ego; and (v) estoppel will bind a non-signatory to award).

These principals govern this dispute: Safebuilt is the Program's guarantor and the beneficial owner of Cell 5. If allowed to thwart the Arbitration and relitigate Pacific Re's defenses, the result would destroy the purpose and the structure of the insurance program.

November 20, 2015
The Hon. Judge Cott
Page 4:5

Where a non-signatory receives a direct benefit from a contract with an arbitration obligation, it will be estopped from avoiding arbitration because it cannot have it "both ways. [He or she] cannot rely on the contract, when it works to [his] advantage, and repudiate it when it works to [his or her] disadvantage." *Carvant*, 958 F. Supp. 2d at 397; *see also Syncora Guarantee Inc. v. HSBC Mexico, S.A.*, 861 F. Supp. 2d 252, 259 (S.D.N.Y. 2012) (applying direct benefit estoppel).

In *Carvant*, plaintiff-financier sued defendants, contracts administrators and auto-warranty insurer, for breach of contract for failing to pay covered repairs to the detriment of the resale value thereby damaging plaintiff's liens. While plaintiff was a non-party to the service contracts between its customers and defendants (which contained the arbitration obligations), it received a direct benefit (its liens) in exchange for financing the contracts and was estopped from resisting arbitration. *Carvant*, 958 F. Supp.2d at 397. In *Syncora*, 861 F. Supp.2d at 259, a commercial paper guarantor was estopped from pursuing independent claims arising under a trust agreement subject to an arbitration clause because it received a direct benefit, through its predecessor signatory who was as a beneficiary of the trust. These cases are binding: Safebuilt and the Individual Defendants who, through their ownership and control, were not only obligated to fund the Cell's losses but were entitled to profit from the Cell.  (*See* Part. Ag. § 1.1, Ex. 2.) The Defendants are estopped from seeking discovery to relitigate defenses to dispute amounts due under in the arbitration. Syncora, 861 F. Supp.2d at 257 (holding "[b]road stay orders are particularly appropriate if the arbitral claims predominate the lawsuit") (citation omitted).

Finally, a non-signatory who wrongfully dominates and controls a signatory to a counter-party's detriment can be bound to arbitration. *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975). Dominion, control and injury here is demonstrated by the Unanimous Consent merging Cell 5's assets into Pacific Re to explicitly pursue PCIC's interests as dictated by the Individual Defendants at the expense of Plaintiffs: the $1,799,000 was no longer available to pay claims because they took it to pursue their own interests. These cases control. Defendants may not relitigate amounts due in the Arbitration.

### B.    The Interim Final Arbitration Award is Res Judicata and Collaterally Estops Defendants from Attaching the Arbitration.

The preclusive effect of an unconfirmed arbitration award in a diversity action is governed by the law of the forum state. *See BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997). New York law and federal common law as expressed in the Second Circuit will apply preclusive effects to an unconfirmed award. *BBS Norwalk*, 117 F.3d at 677 (New York law); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-268 (2d Cir. 1997). *In re Drexel Burnham Lambert Grp., Inc.*, 161 B.R. 902, 906 (S.D.N.Y. 1993) (holding federal confirmation process is summary non-substantive proceeding which does not alter arbitral finding).

Under the doctrine of collateral estoppel, a non-party to a prior proceeding will be precluded from relitigating issues actually and necessarily decided after a full and fair opportunity to litigate if he or she was in privity with a party. *Commonwealth Ins. Co. v. Thomas A. Greene & Co.*, 709 F. Supp. 86, 88 (S.D.N.Y. 1989) (holding privity attaches to those non-parties whose interests were adequately represented). Under New York's

transactional approach to res judicata, any issue that could have been litigated in the prior proceeding is merged into final judgment and precludes relitigation by parties and their privities.

In *Thomas A. Green & Co.*, 709 F. Supp. at 87, an insurer commenced an unsuccessful coverage arbitration against its reinsurer and the reinsurer's manager which resulted in the determination of non-coverage because the insurer's intermediary received notice of cancellation and did not maintain reinsurance for the Plaintiff. The Sothern District of New York estopped the non-party intermediary from relitigating that finding because it was in privity with the insurer who represented its interests. *Id*. at 88.

November 20, 2015
The Hon. Judge Cott
Page 5:5

The operative facts for this analysis are that: (1) the Arbitration Panel rejected Pacific Re's mismanagement, negligence, and inflation defenses to all amounts claimed under the Safebuilt Captive Reinsurance Agreement; (2) the Defendants' seek to litigate identical affirmative defenses; (3) Pacific Re established Cell 5 for Safebuilt specifically to provide reinsurance to Plaintiffs, *Pac Re 5-AT*, 2015 WL 2383406 at *1 ("In the Participation Agreement, Pacific Re agreed to establish a protected cell entitled Pac RE 5–AT ("Cell 5") *for Safebuilt*") (emphasis added); (4) neither Pacific Re nor its owner, defendant Preferred Global Holdings, Inc., have any employees, *AmTrust N. Am., Inc*., 2015 WL 6667461 at *1; (5) the Individual Defendants own Safebuilt and control Pacific Re through Safebuilt and their managing, defendant Taft, to avoid their obligation to Plaintiff. *Id*.

The logic of *Thomas A. Green & Co*., 709 F. Supp. at 87-88 and *Interocean Shipping*, 523 F. 2d at 539, controls. Pacific Re and Cell 5 were under the dominion of the Individual Defendants who had merged their separate interests into its corporate management at the expense of Plaintiffs. Safebuilt and its principals owe related duties to Plaintiffs, Pacific Re, and Cell 5 such that there interests were represented in the arbitration. They must be estopped from relitigating the same defenses that the Panel rejected under the contract. Safebuilt cannot be allowed to run amok among the underlying insurance claims to destroy the benefit of the bargain it provided to Plaintiffs.  The Individual Defendants cannot be allowed to denude Cell 5 of assets to pay claims and then dispute the claims Plaintiffs were compelled to pay out of their pocket.

Finally, Defendants have Network's claims files. Plaintiffs are willing to provide claims discovery in the Arbitration. Having told this Court that the claims files were all they needed, they should live with the decision and not be permitted to continue to press claims-related demands on Plaintiffs to increase the cost of litigation.

I certify that the parties had a conference call on October 13, 2015 at 3:30pm; (2) it lasted approximately one-hour; (3) I was present with Mr. Schurkman from my office and Messer's Bender and Berger for Defendants, and Mr. Morici from third-party defendants; (4) the Parties demands and positions are set-forth above; (5) Defendants declared an impasse and wished to put this issue before your Honor and Plaintiffs agreed.

Respectfully submitted,

//ss// MB

Matt Bryant, Esq.