

**OHRENSTEIN & BROWN, LLP**
COUNSELORS AT LAW

1305 FRANKLIN AVENUE, SUITE 300, GARDEN CITY, NY 11530-9243 • M 516 873 6334 • F 516 873 8912
WWW.OANDB.COM

MATTHEW BRYANT
Direct Dial: (516) 535-4419
Email: MATTHEW.BRYANT@OANDB.COM

March 15, 2016

**Delivered ECF**
Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl Street, Room 1640
New York, NY 10007

      Re:    *AmTrust, et al v. Safebuilt Insurance Services, et al. v. Network et al.*
            Case No.: 14-CV-9494
            Our File No.: 3639-006-2

To The Honorable Judge Cott:

    Plaintiffs hereby oppose Defendants' March 11, 2016 letter motion (D.E. 195) to compel additional discovery from Network Adjusters, Inc. in its capacity as Plaintiffs' former third-party claims administrator ("TPA") for the relevant insurance program.

    Plaintiffs respectfully submit that the discovery sought is well beyond the scope of this litigation, palpably burdensome upon Network, and duplicative. While counsel for Network will voice its own objections, Plaintiffs have standing to object to Defendants' continued effort to expand the scope of this litigation. Defendants previously attempted to do so by suing Network asserting negligence theories as a set-off to amounts due. On October 28, 2015, Judge McMahon dismissed all claims against Network for want of standing. On November 30, 2016, while Plaintiffs continued to maintain their objections to claims discovery, Judge McMahon likewise opined that "[c]ertainly the entirety of the information that Defendants were trying to obtain from Network will no longer be relevant, but that does not immunize Network from discovery concerning information that is relevant to the issues that are still in the case." (D.E. 160, Nov. 30, 2015.)[1]

---

[1] Indeed, case law in this Circuit holds that individual claim by claim discovery is improper. *See, e.g., Hartford Acc. & Indem. Co. v. Argonaut Ins. Co.*, No. 06 Civ. 1813, 2008 WL 2559440 (D. Conn. June 23, 2008) (citing *Travelers v. Gerling*, 419 F.3d 181, 188 (2d Cir. 2005)).



Honorable James L. Cott
March 15, 2016
Page 2

With this Court's assistance, Plaintiffs and Defendants negotiated the resolution of the standing objections to claim discovery in good faith. Defendants received Network claims files directly from Network pursuant to Your Honor's September 2, 2016 Order on September 16, 2015; direct live electronic access to Plaintiffs' claims files as auditors the first week of January; and a supplemental production of internal claims and Network related communications was completed in mid-February. Defendants complain that they have received 14,000 emails from Plaintiffs in response to their request for even more claims discovery, (D.E. 194), and maintain that they need even more discovery from Network, (D.E. 195), without regard to legal entitlement, general proportionality, other sources, what has been, or what will be provided.

First, Defendants assert that they are entitled to a Network witness to testify about the genesis of Network's relationship with AmTrust, and complain first that Mr. Mayer testified that Network's relationship with Plaintiffs arose out of its prior role as TPA with non-party General Fidelity Insurance Company ("Fidelity") when the program that they serviced was moved to AmTrust in 2009 (D.E. 195 at 3.) Despite this testimony and Mr. Mayer's testimony about AmTrust's due diligence of Network in which he was personally involved, Defendants complain that "Mr. Mayer was unable to testify about how Network's relationship with Fidelity was formed, or what specific documents were shown to Fidelity by Network in the due diligence process." (*Id.*) Further, Mr. Mayer identified a former AmTrust employee, Jerome Breslin, as a potential source of information. Defendants have, in fact, subpoenaed Mr. Breslin and complain that Plaintiffs no longer represent him and did not voluntarily produce him when we did. On January 5, 2016, counsel for Plaintiffs represented Mr. Breslin, as a former employee who declined to give us authority to accept service, and advised Defendants that Mr. Breslin would not voluntarily appear due to his professional and scheduling obligations and provided his address in North Carolina. Mr. Breslin has since elected to retain individual counsel and will either voluntarily appear in response to Defendants' subpoena or will insist on an order from the local court.

Second, Plaintiffs have produced Mr. Guy Koenig who was deposed on January 21, 2016. Mr. Koenig was one the "Fidelity" employees that joined AmTrust in July 2009 and he testified about that transition, Network's historic relationship, and Mr. Breslin's role.

Third, Defendants complain that they have not been able to depose other former AmTrust employees from North Carolina, Messrs. Podmore, Puri, and Tucker, and insinuate Plaintiffs are trying to avoid these depositions all together. (D.E. 195 at 3.) This is demonstrably false. On January 14, 2016, I offered Messrs. Podmore and Puri on consent in Charlotte, North Carolina. At the following meet-and-confer, Mr. Bender rejected the offer. On March 1, 2016, during a meet and confer, I offered Mr. Podmore on March 21, 22, 27, or 28 and Messrs. Puri and Tucker during the first full week of April. To date, Defendants have not responded and, as of March 5,



2016, I informed Defendants that Mr. Podmore was no longer available in March due to his travel schedule. I now am constrained to inform Defendants, and the Court, that due to Defendants' own delay, Messrs. Puri and Tucker are no longer available during the first week of April.

Defendants may want a witness with a perfect recollection and discovery that allows them to recreate AmTrust's employment of former "Fidelity" employees or Fidelity's step-by-step due diligence of Network but, as we have seen in this litigation, perfect can be the enemy of the good. Defendants nevertheless continue to press for Network to answer all manner of questions at the expense of available witnesses and other sources. Defendants' actions are not without consequences: Network resigned as Plaintiffs' TPA for this Program as of February 1, 2016 due to Defendants' overzealous litigation and demands and did so specifically to avoid any further contact with Defendants who they fear may bring additional meritless claims against them.[2]

Defendants next complain that Mr. Mayer was not personally involved in claims handling and demand more non-party witnesses to Network's claims handling. However, Defendants took Mr. Mayer's deposition over two days, the first as Network's 30(b)(6) witness, the second in his individual capacity as Vice President for Claims Handling. Network was Plaintiffs' agent with limited contractual authority. Plaintiffs had discretionary authority to settle all claims under this Program and were vested with the authority to retain a TPA to settle claims only up to $100,000. Discovery has further confirmed that AmTrust approved all coverage decisions including claim denials and reservations of rights. Judge McMahon has previously ruled that Defendants have no standing to assert any rights under AmTrust's Master Claims Servicing Agreement. It follows that Defendants likewise have no right to challenge AmTrust's claims handling under the General Agency or Quota Share Agreements pursuant to which the non-party fronting insurer, United Specialty, vested Plaintiffs with discretionary settlement authority and defined Safebuilt's role as underwriting, binding and issuing policies.

To that end, Plaintiffs have produced Mr. John Andrews, Plaintiffs' Claims Manager and Acting Director of Alternative Risk and Assumed Reinsurance Claims, and have agreed to produce Mr. Andrews for a second day following the supplemental claims material production in addition to providing a 30(b)(6) witness for claims issues, including the very issues they are demanding of Network. Each of the claims handling witnesses Defendants want to depose from Network worked and reported to Mr. Andrews, who approved any decision made. Plaintiffs have also agreed to produce Ms. Lynda Barry, in her capacity as Vice President of Claims.

---

[2] Even more brashly, recent discovery demands and deposition questioning tends to suggest that Defendants now intend to make some new allegation against Plaintiffs concerning Network's resignation.



Honorable James L. Cott
March 15, 2016
Page 4

      For the record, while Plaintiffs have withdrawn their objections to discoverability of claims material in this action for practical reasons, we continue to maintain that the Defendants' negligent claims handling defenses to the pending contract, alter ego, and fraud claims are irrelevant and will be inadmissible at trial.

                                          Respectfully submitted,

                                          /S/

                                          Matthew Bryant

cc:      **ECF All Parties of Record**
           **Courtesy Copy to Chambers via Fed Ex**