UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AMTRUST NORTH AMERICA, INC. *et al.*,   :

        Plaintiffs,   :

      -v.-   :

SAFEBUILT INSURANCE SERVICES,   :
INC., *et al.*,   :
    :

        Defendants.   :
-----------------------------------------------------------X
SAFEBUILT INSURANCE SERVICES,   :
INC., *et al.*,   :

        Plaintiffs,   :

      -v.-   :

AMTRUST NORTH AMERICA, INC. et al.,   :

        Defendants.   :
-----------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 5/16/16

## OPINION AND ORDER

16-MC-169 (CM) (JLC)

16-MC-170 (CM) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    In this reinsurance case, this New York-based Court must decide an issue of first impression concerning Montana privilege law. The issue arises out of two related miscellaneous actions that were recently transferred to this Court from the District of Montana. In these actions, defendants contend that certain documents that plaintiffs seek in discovery in the underlying action, *AmTrust North America, Inc. v. Safebuilt Insurance Services, Inc.*, No. 14-CV-9494 (CM) (JLC), are privileged under Montana Code Annotated § 33-28-108(3). By its own terms, this statute

deems the sought-after information to be confidential.  For the reasons explained below, however, the Court concludes that the documents are not privileged and are therefore discoverable.

## I.  BACKGROUND

### A.    Factual Background

A complex program of insurance, reinsurance, and reinsurance of reinsurance forms the backdrop of this case.  The Court assumes familiarity with the underlying facts of the parties' dispute and will not review those facts in detail here.[1]  In brief, the three individual defendants in the underlying action, David Pike, Philip Salvagio, and Carl Savoia, allegedly owned or controlled an interrelated web of insurance and reinsurance companies.  *See* Second Amended Complaint, dated May 13, 2015, Case No. 14-CV-9494, Dkt. No. 54 ("Compl.") ¶¶ 2, 11.  Plaintiffs allegedly became involved in the reinsurance program believing that, for them, it would be an almost risk- and cost-free venture.  *See id.* ¶¶ 25-27.  According to their complaint, plaintiffs agreed to reinsure insurance policies that were underwritten by one of defendants' companies, believing that defendants would in turn reinsure plaintiffs and cover their costs.  *See id.*  These benefits were to come, at least in part, from defendants' captive reinsurance company Pacific Re, Inc. and its protected cell Pac Re 5-AT.  *See id.* ¶ 6.[2]  Plaintiffs contend that defendants mismanaged and

---

[1] For a fuller recitation of the underlying facts, see Judge McMahon's decisions dated October 28, 2015 (Case No. 14-CV-9494, Dkt. No. 153) and December 1, 2015 (Case No. 14-CV-9494, Dkt. No. 162).

[2] Plaintiffs have argued elsewhere that Pac Re 5-AT is not a valid protected cell. *See Pac Re 5-AT v. AmTrust N. Am., Inc.*, No. 14-CV-131 (BLG) (CSO), 2015 WL

2

undercapitalized Pacific Re and Pac Re 5-AT, which left these entities unable to

fulfill their contractual and fiduciary obligations to plaintiffs. *See* Compl. ¶¶ 9, 24,

29, 63, 81-82. Plaintiffs now seek, among other things, to pierce the corporate veil

in order to recoup their losses. *See id.* ¶¶ 84-89.

## B.   Procedural History of this Discovery Dispute

Plaintiffs served Pacific Re's regulatory and corporate counsel, Moulton

Bellingham, P.C., a Montana-based law firm, with a subpoena on October 9, 2015.

*See* Affidavit of Service, Oct. 14, 2015, Case No. 16-MC-169, Dkt. No. 7-1, at 10.[3]

The subpoena commanded, in relevant part, the production of:

> All non-privileged documents, records and communications with
> the Office of the Montana State Auditor, Commissioner of
> Insurance and Securities [sic] concerning Pacific Re, Inc.'s
> protected cell Pac Re 5-AT and specifically as it relates to cell
> formation, cell funding, cell merger, policy fees, reported
> premium, business plan approvals, business plan amendments,
> policy language approvals, and policy language amendments.

*See id.* at 9. On November 23, 2015, Moulton Bellingham responded to the

subpoena by producing 154 pages of documents, including an examination report

completed by the Office of the Montana State Auditor, Commissioner of Securities

and Insurance ("CSI") and orders of supervision by which CSI exercised control over

---

2383406, at \*2 (D. Mont. May 13, 2015). Although Pacific Re and Pac Re 5-AT are
non-parties in the underlying action, defendant David Pike is allegedly the
president of Pacific Re, and defendant Phillip Salvagio is allegedly the vice-
president. *See* Compl. ¶¶ 11(h), (i). According to the complaint, Pacific Re is owned
by defendant Preferred Global Holdings, Inc., which in turn is principally owned by
Pike and Salvagio. *See id.* ¶ 2.

[3] All citations to page numbers of documents on the court's docket refer to the page
numbers assigned by the Electronic Case Files ("ECF") system.

the affairs of Pacific Re. *See* Letter, Nov. 23, 2015, Case No. 16-MC-169, Dkt. No. 4-2, at 3.

Under Montana law, CSI is required to examine captive insurance companies' books and records at least once every five years. *See* Mont. Code Ann. § 33-28-108(1)(a). At the conclusion of the examination, CSI produces a verified report of its findings and transmits a copy of the report to the company. *See* Mont. Code Ann. §§ 33-28-108(2), 33-1-409(1)-(2).

By letters dated January 8, 2016, and January 14, 2016, Moulton Bellingham sought to claw back the report and other CSI-related documents it had produced, stating that they were "confidential" under Montana Code Annotated § 33-28-108 and had been "inadvertently disclosed" in response to the subpoena. *See* Letter, Jan. 8, 2016, Case No. 16-MC-169, Dkt. No. 7-5; Letter, Jan. 14, 2016, Case No. 16-MC-169, Dkt. No. 7-10. On February 10, 2016, plaintiffs commenced a miscellaneous action in the U.S. District Court for the District of Montana to enforce the subpoena. *See* Motion to Enforce Subpoena and Compel Discovery, Feb. 10, 2016, Case No. 16-MC-169, Dkt. No. 1.

Before any decision in the miscellaneous action, plaintiffs noticed, by subpoena dated March 2, 2016, a deposition of CSI to obtain information about, among other things, the creation of Pac Re 5-AT, CSI's examination of Pacific Re, and orders of supervision issued to Pacific Re. *See* Subpoena, Mar. 2, 2016, Case No. 16-MC-170, Dkt. No. 2-1, at 6. The deposition was scheduled for March 14, 2016. *See id.* at 3.

On March 10, 2016, before the deposition took place, defendants commenced

a separate miscellaneous action in the Montana federal district court.[4] *See* Motion

for a Protective Order, Mar. 10, 2016, Case No. 16-CV-170, Dkt. No. 1.  In that

action, defendants moved to quash the CSI subpoena and sought a transfer of the

miscellaneous action to the Southern District of New York. *See id.*  Over

defendants' objection, the CSI deposition went forward as scheduled on March 14,

2016, before the Montana court issued a ruling in either miscellaneous action.  CSI

appeared at the deposition without objection, even though defendants had asked the

agency not to participate. *See* Transcript of Oral Argument, May 9, 2016, Case No.

14-CV-9494 ("SDNY Transcript"), at 29; Order, Apr. 12, 2016, Case No. 16-MC-169,

Dkt. No. 30, at 4.  At the deposition, despite defendants' privilege-based objections,

CSI answered plaintiffs' questions about documents obtained from Moulton

Bellingham, including the examination report and CSI's orders of supervision

related to Pacific Re.[5]

In the Montana district court, the parties consented to the jurisdiction of a

magistrate judge to resolve these miscellaneous actions in accordance with 28

U.S.C. 636(c) and Rule 73 of the Federal Rules of Civil Procedure. *See* Consent

Form, Mar. 11, 2016, Case No. 16-MC-169, Dkt. No. 25; Consent Form, Mar. 24,

2016, Case No. 16-MC-170, Dkt. No. 6.  On April 8, 2016, the parties appeared for

---

[4] Although the defendants in the underlying action are the plaintiffs in the second
miscellaneous action, filed on March 10, 2016, the Court will refer to them as
"defendants" throughout this opinion.

[5] Plaintiffs submitted the deposition transcript for *in camera* review. *See* Order,
Apr. 28, 2016, Case No. 14-CV-9494, Dkt. No. 204.

oral argument before Magistrate Judge Carolyn S. Ostby, who issued a written

order four days later. *See* Order, Apr. 12, 2016, Case No. 16-MC-169, Dkt. No. 30.

After summarizing the dispute and reviewing the parties' positions,[6] Magistrate

Judge Ostby ordered that both miscellaneous actions be transferred to the Southern

District of New York. *See id.* at 1-9, 14-15. Magistrate Judge Ostby found that

"exceptional circumstances" warranted the transfer under Rule 45(f) of the Federal

Rules of Civil Procedure. *See id.* at 14. The Montana court was "cognizant that

resolution of these disputes might require interpretation of unresolved issues of

Montana law" by the New York court, but found that these concerns were

outweighed by interests in "judicial economy," "risk of inconsistent rulings," and

"discovery management in the underlying action." *Id.* at 12.

The miscellaneous actions were transferred on April 27, 2016. *See* ECF

entry, Case No. 16-MC-169, Dkt. No. 32; Case No. 16-CV-170, Dkt. No. 16. That

day, the Honorable Colleen McMahon, the presiding judge in the underlying action,

ordered that the undersigned would decide both miscellaneous actions given the

parties' prior consent to the jurisdiction of a magistrate judge in Montana. *See*

Order, Apr. 27, 2016, Case No. 16-MC-169, Dkt. No. 33.

The same day, the parties submitted a joint letter requesting an expedited

decision on the transferred actions. *See* Letter, Apr. 27, 2016, Case No. 14-CV-9494,

Dkt. No. 203. On April 28, 2016, the Court scheduled oral argument for May 9,

2016. *See* Order, Apr. 28, 2016, Case No. 14-CV-9494, Dkt. No. 204. Aware that

---

[6] Because Magistrate Judge Ostby succinctly described the parties' arguments, we
will not repeat that summary here but instead direct the reader to her order.

6

time constraints could be an impediment, the Court nonetheless indicated that it was receptive to receiving amicus briefing from CSI and stated that such briefing could take the form of a letter to the Court. *See id.* In an email to plaintiffs' counsel, however, CSI declined the invitation. *See* Email, May 3, 2016, Case No. 14-CV-9494, Dkt. No. 205-1. The Court held oral argument on May 9, 2016, and ruled from the bench that the documents in dispute were discoverable, indicating that this written decision would follow.

## II. **DISCUSSION**

### A.    **Applicability of Montana Law**

In a diversity case such as this one, "the existence of a privilege is to be determined by reference to state law." *Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989); Fed. R. Evid. 501. The parties agree that the law of Montana, not New York, applies to the privilege issue presented by the pending motions. *See* Plaintiffs' Reply Brief, Mar. 11, 2016, Case No. 16-MC-169, Dkt. No. 21 ("Pl. Reply"), at 10 n.3 (stating that "Montana law controls"); Defendants' Brief in Opposition to Plaintiffs' Motion to Enforce Subpoenas and Compel Discovery, Mar. 2, 2016, Case No. 16-MC-169, Dkt. No. 18 ("Def. Opp."), at 12 (arguing that documents are privileged under Montana law). Their agreement renders any choice-of-law inquiry unnecessary. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *Bellis v. Tokio Marine & Fire Ins. Co.*, No. 93-CV-6549

7

(DAB), 2002 WL 193149, at *13 n.20 (S.D.N.Y. Feb. 7, 2002).[7]  Accordingly, the

Court applies Montana law.[8]

## B.    Montana Code Annotated § 33-28-108(3)

As defendants assert the evidentiary privilege, they carry the burden of

showing that a privilege applies. *See State ex rel. Burlington N. R. Co. v. Dist.*

*Court of Eighth Judicial Dist. of State of Mont. In & For Cty. of Cascade*, 779 P.2d

885, 892 (Mont. 1989); *Kelley v. Billings Clinic*, No. 12-CV-74 (BLG) (SHE) (CSO),

2013 WL 2422705, at *2 (D. Mont. June 3, 2013) ("[A] person withholding

subpoenaed information under a claim of privilege or other protection bears the

burden of proof on that claim.").

Defendants argue that the documents in dispute are privileged under

Montana Code Annotated § 33-28-108(3). *See* Def. Opp. at 12.  In relevant part, this

statute provides as follows:

---

[7] In a case involving similar claims of statutory privilege, an Illinois federal district court noted that it was "not immediately clear what law should apply" but "as both parties . . . rely on the California Insurance Code for the rule of decision, the Court will not disturb their assumption and will interpret that statutory provision as the parties request." *Rowe v. Bankers Life & Cas. Co.*, No. 09-CV-491, 2011 WL 1897181, at *3 (N.D. Ill. May 18, 2011).

[8] In any event, even if the Court were to apply New York law to the privilege question, Montana law would likely still provide the answer.  This is so because New York applies a "locus" test to determine the governing law for privilege questions, and the locus of relevant activity here plainly occurred in Montana. *See, e.g., Stephens v. Am. Home Assur. Co.*, No. 91-CV-2898 (JSM) (KAR), 1995 WL 230333, at *7 (S.D.N.Y. Apr. 17, 1995) ("Because privilege rules are considered conduct-regulating, New York applies the law of the locus of the conduct at issue, because of the locus jurisdiction's interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of the actors whose conduct is at issue.") (internal citations, quotation marks, and alterations omitted).

8

> [A]ll examination reports, preliminary examination reports or
> results, working papers, recorded information, documents, and
> their copies produced by, obtained by, or disclosed to the
> commissioner or any other person in the course of an
> examination made under this section are confidential, are not
> subject to subpoena, and may not be made public by the
> commissioner or an employee or agent of the commissioner
> without the written consent of the company or upon court order.

Mont. Code Ann. § 33-28-108(3). This provision is found in chapter 28 of Title 33 of

the Montana Code Annotated. Title 33 governs insurance and insurance companies

generally. *See Shattuck v. Kalispell Reg'l Med. Ctr., Inc.*, 261 P.3d 1021, 1026

(Mont. 2011). Chapter 28 governs captive insurance companies, including

"protected cell captive insurance companies" like Pacific Re, in particular. *See*

Mont. Code Ann. § 33-28-101(8); Compl. ¶ 2.

## C.    § 33-28-108(3) Does Not Create an Evidentiary Privilege

For three reasons, the Court concludes that the documents in question are

not privileged under § 33-28-108(3). First, the application of principles of statutory

interpretation do not support a privilege. Second, courts in other jurisdictions have

largely declined to recognize an insurance-examination privilege, like the one

defendants effectively seek here, when interpreting similarly worded statutes.

Third, CSI's conduct—in agreeing to a deposition and not objecting to any of the

questions posed—is further evidence that no privilege is implicated here.[9]

---

[9] Plaintiffs have argued that Judge McMahon's broad Rule 26 order at the outset of
the underlying litigation constitutes a "court order" under § 33-28-108(3) and, thus,
provides a basis for the discovery that they seek. *See* Plaintiffs' Brief, Feb. 16, 2016,
Case No. 16-MC-169, Dkt. No. 6, at 13 (citing Transcript, Apr. 10, 2015, Case No.
14-CV-9494, Dkt. No. 45, at 13). Also, relying on the statute's "written consent of
the company" clause, plaintiffs contend that they should have access to the
documents by virtue of a contractual provision that requires Pacific Re to give

9

### 1. Statutory Interpretation

As far as the Court is aware, there is no Montana case law interpreting § 33-28-108(3), and the parties have cited none.  Nevertheless, we are guided by principles of statutory interpretation that Montana courts follow.  "Statutory interpretation is a 'holistic endeavor' that must consider the statute's text, language, structure, and object." *Fliehler v. Uninsured Employers Fund*, 48 P.3d 746, 748 (Mont. 2002).  The goal "is to ascertain and give effect to the legislative intent." *See id.* (citing Mont. Code Ann. § 1–2–102).  "If the words of the statute are clear and plain, we discern the intent of the legislature from the text of the statute." *See id.*  At the same time, "statutory construction should not lead to an absurd result if a reasonable interpretation can avoid it." *Van der hule v. Mukasey*, 217 P.3d 1019, 1021 (Mont. 2002).

The language of § 33-28-108(3), if interpreted literally, would provide sweeping protections to almost any record that played any part in a CSI examination.  Ordinary business records, and copies of those records in the company's control, that were exchanged in the course of an examination would receive protection, even if the records were relevant to pending litigation and

---

plaintiffs access to books and records related to the reinsurance of plaintiffs. *See id.* at 14.  The Court does not address these arguments because, under its interpretation of the statute, plaintiffs require neither a court order nor company consent to obtain examination documents from Pacific Re.  Those would only be required if plaintiffs had sought the documents in question from CSI.  Here, however, the subpoena that has given rise to this dispute was directed to Pacific Re's counsel, not to CSI.  To the extent that the Court stated at oral argument that its ruling constituted a court order as contemplated by the statute, it was unnecessary to have done so.  *See* SDNY Transcript at 55.

otherwise discoverable. After all, this "recorded information" (the business records) would be "disclosed to the commissioner or [another] person in the course of an examination" and, accordingly, would become "confidential" and "not subject to subpoena." *See* Mont. Code Ann. § 33-28-108(3). Under this reading, it is unclear if even a court-ordered subpoena would be sufficient to compel the production of such ordinary business records from the company.[10]

"While courts should in general interpret and apply statutes as they are written, they also have a duty to look beyond the language of a statute if literal application would lead to an absurd result." *In re Marriage of Syverson*, 931 P.2d 691, 702 (Mont. 1997). "Courts will not foolishly bind themselves to the plain language of a statute where doing so would 'compel an odd result.'" *See id.* (quoting *Hughey v. JMS Development Corp.*, 78 F.3d 1523, 1529 (11th Cir. 1996)).

To avoid the anomalous results that a literal interpretation of § 33-28-108(3) would yield, the Court interprets this statute to protect documents in the possession of CSI—not the examined company. During the course of an examination, CSI collects sensitive information from captive insurance companies, including

---

[10] Defendants have argued that examination documents are immune even to a court-ordered subpoena under § 33-28-108(3). Specifically, at oral argument in Montana, defendants contended that, under the statute, the examination documents are (1) "confidential"; (2) "not subject to subpoena"; and (3) "may not be made public by the commissioner, or an employee or agent of the commissioner, without the written consent of the company or upon court order." Transcript of Montana Oral Argument, Apr. 8, 2016, Case No. 16-CV-169, Dkt. No. 28, at 35-37. Parsing the statute in this way, a court could order CSI to make the documents *public*, but the documents would not be obtainable by subpoena, even with a court order. At oral argument in New York, defendants backed away from this hyper-literal interpretation, though they did not completely abandon it. *See* SDNY Transcript at 38-39.

11

information related to the companies' "affairs, transactions, accounts, records, and assets." Mont. Code Ann. § 33-28-108(1)(a). The confidentiality protections of § 33-28-108(3) seek to protect company information that is in the control of CSI and, thus, a court order or the company's written consent is generally required for CSI to release this information. The purpose of the statute, however, is not to provide a shield for examined companies to use in discovery, which is how defendants are attempting to use it here.

The Court's interpretation of the statute is consistent with its provision that documents "may not be made public by the commissioner or an employee or agent of the commissioner." *See* Mont. Code Ann. § 33-28-108(3). Notably absent from this list is any mention of the examined company and its agents. This clause seems to reflect the Montana legislature's intent of prohibiting CSI from freely releasing sensitive information about examined companies.

The Court also notes that, although Montana Code Annotated § 33-28-108(3) provides that the documents are "confidential," this subsection does not expressly create a privilege. "If the information sought is confidential but not privileged, [Rule] 26 does not limit disclosure of otherwise discoverable information." *Steinberg v. Mount Sinai Med. Ctr., Inc.*, No. 12-CV-51 (SLT) (VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014) (collecting cases). "A non-disclosure or 'confidentiality' provision in a statute may not always create an evidentiary privilege, especially if the legislature did not 'explicitly create an evidentiary privilege.'" *Van Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 121 F.R.D. 22, 25 (W.D.N.Y. 1988) (quoting *Am.*

12

*Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1339 (5th Cir. 1981)); *United States v. Phoenix Union High Sch. Dist.*, 681 F.2d 1235, 1237 (9th Cir. 1982) (confidentiality statute "prohibit[s] voluntary public disclosure" but "not disclosure pursuant to a legitimate legal inquiry").

Here, it is revealing that, unlike § 33-28-108(3), another section of Title 33 deems certain documents not only "confidential" but also "not discoverable or admissible as evidence in any private action." *See* Mont. Code Ann. § 33-1-409(6)(a).[11] These discoverability and admissibility provisions, which at least come closer to creating an evidentiary privilege, are absent from § 33-28-108(3).[12] Elsewhere, the statute also uses the word "privilege," which strongly suggests that the legislature was making a distinction between confidentiality and privilege. *See* Mont. Code Ann. § 33-1-409(6)(b)(iv).[13]

### 2. Case Law from Other Jurisdictions

Although no court has specifically interpreted § 33-28-108(3), courts have interpreted similarly worded statutes from other states. *See City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.,* No. 12-CV-5275, 2015 WL

---

[11] Although this subsection arguably applies to any "working papers" in dispute here, defendants, who carry the burden, do not rely on this subsection, so the Court does not otherwise address it. *See* Mont. Code Ann. §§ 33-28-108(2), 33-1-409(6)(a).

[12] The extra protection may still only apply to documents in the control of CSI, not the company. *See Continental Insurance Co. v. Garlock Sealing Technologies*, No. 116789/04, 2006 WL 6157628, 2006 N.Y. Slip Op. 30507(U), 2006 N.Y. Misc. LEXIS 9430, at \*7-9 (N.Y. Sup. Ct. Mar. 23, 2006) (New Hampshire statute with similar protections does not create a privilege for documents in company's control).

[13] In addition, as plaintiffs point out, Moulton Bellingham never provided a privilege log with their initial production. *See* Pl. Reply at 12.

1969368, at \*4 (D.N.J. Apr. 30, 2015) ("[E]ach state has enacted a confidentiality statute with respect to the conduct of insurance examinations."). In cases of first impression such as this one, Montana courts "may properly look to interpretations under similar acts from other jurisdictions." *Martinell v. Montana Power Co.*, 886 P.2d 421, 428 (Mont. 1994); *N. Pac. Ins. Co. v. Stucky*, 338 P.3d 56, 63-64 (Mont. 2014) (looking to case law from other states' courts to help decide issue of first impression); *Montana Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 174 P.3d 948, 957-58 (Mont. 2008) (same).

The Court's interpretation of § 33-28-108(3) is consistent with the majority of cases that have interpreted similar insurance-examination statutes. *See, e.g.*, *Maple Creek Commons Homeowners Ass'n v. State Farm Fire & Cas. Co.*, No. 1:08-CV-475 (TWP), 2012 WL 14022, at \*2-5 (S.D. Ind. Jan. 4, 2012) (Ind. Code Ann. § 27-1-3.1-15 did not create an evidentiary privilege); *Heritage Healthcare Services, Inc. v. Beacon Mut. Ins. Co.*, No. PC 02-7016, 2007 WL 1234481 (R.I. Super. Ct. Apr. 17, 2007) (R.I. Gen. Laws Ann. § 27-13.1-5(f) does not create an evidentiary privilege for the examined insurance company); *Continental Insurance*, 2006 N.Y. Misc. LEXIS 9430, at \*7-9 (N.H. Rev. Stat. Ann. § 400-A:37(IV-a)(b) and 215 Ill. Comp. Stat. Ann. 5/132.5(f) do not create evidentiary privileges for company); *Miller v. Liberty Mut. Fire Ins. Co.*, No. 2:03-CV-2325, 2004 WL 897086, at \*3-4 (S.D.W. Va. Apr. 27, 2004) (W. Va. Code Ann. § 33-2-9(4) does not create evidentiary privilege); *see also City of Sterling Heights*, 2015 WL 1969368, at \*4-6 (declining to recognize federal "insurance examination privilege").

14

For example, in *Continental Insurance v. Garlock Sealing Technologies*, the New York Supreme Court analyzed whether New Hampshire and Illinois insurance-examination statutes created an evidentiary privilege for the examined insurance company. *See* 2006 N.Y. Misc. LEXIS 9430, at *7-8. The Illinois law, which more closely resembles the language of § 33-28-108(3),[14] provided that:

> All working papers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the director or any other person in the course of any examination must be given confidential treatment, are not subject to subpoena, and may not be made public by the director or any other persons. . . .

*See id.* at *8 (quoting 215 Ill. Comp. Stat. Ann. 5/132.5(f)). The New York court found that both the Illinois and New Hampshire statutes prohibited the state agency from disclosing company records, but that the statute's protection did not extend to information in the company's control. *See id.* at *8-9. The court explained that, while "[c]ertainly these statutes are intended to prohibit the investigative body from publically disclosing materials that it obtained during the course of an investigation," it made "no sense . . . to construe these statutes to also protect the subject of the investigation from providing discovery of documents which, but for the investigation, would be discoverable." *Id.* Although documents produced by the

---

[14] The New Hampshire law, which also did not give rise to a privilege, provided even stricter protections from disclosure. *See Continental*, 2006 N.Y. Misc. LEXIS 9430, at *8 (stating that documents are "confidential by law and privileged, shall not be subject to RSA 91-A [state freedom of information law], shall not be subject to subpoena and *shall not be subject to discovery or admissible as evidence in any private civil action*") (quoting N.H. Rev. Stat. Ann. § 400-A:37(IV-a)(b)) (emphasis added).

company for the investigation might be subject to "other privileges, like attorney work product," the statutes themselves did not create a new privilege. *See id.*

In *Miller v. Liberty Mutual*, the U.S. District Court for the Southern District of West Virginia reached a similar conclusion. The West Virginia statute at issue read as follows:

> All working papers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the commissioner or any other person in the course of an examination, analysis or review made under this section must be given confidential treatment and are not subject to subpoena and may not be made public by the commissioner or any other person. . . .

*Miller*, 2004 WL 897086, at *3 (quoting W. Va. Code Ann. § 33-2-9(4)). Like the New York court in *Continental*, the West Virginia court found that the applicable statute "require[s] the Insurance Commissioner to maintain the confidentiality of information submitted in connection with an examination, but those sections do not extend a blanket protection of confidentiality to insurance company records." *Id.* at *4. The court concluded that the documents at issue could be sought "from the insurance company, but not from the Insurance Commissioner." *Id.*

Likewise, in *Maple Creek v. State Farm*, the Indiana court held that a draft examination report was discoverable, despite defendants' claim that it was privileged under Indiana law. The state statute there provided that:

> All working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the commissioner or any other person in the course of an examination under this chapter . . . are confidential for the purposes of IC 5–14–3–4 [state freedom of information act], are

> not subject to subpoena, and may not be made public by the
> commissioner or any other person. . . .

*Maple Creek*, 2012 WL 14022, at *2 (quoting Ind. Code Ann. § 27-1-3.1-15). The

*Maple Creek* court concluded that the statute did not prevent the insurance

company itself from disclosing a draft report, even if the state regulator was

prohibited from doing so. *See id.* at *3. The court determined that the report was

discoverable in part because, unlike the statutes in question, provisions elsewhere

in the Indiana law had expressly made documents "undiscoverable, privileged, or

beyond the reach of a court order." *See id.* at *4. Thus, the court concluded that the

state legislature "did not intend to limit the authority of courts to order production

of documents like the Draft Report during discovery." *Id.* at *3.

Finally, in *Heritage v. Beacon*, the Superior Court of Rhode Island held that a

Rhode Island state statute did not create an evidentiary privilege for the examined

company. The Rhode Island statute provided:

> [A]ll working papers, recorded information, documents, and
> copies of them produced by, obtained by, or disclosed to the
> director or any other person in the course of an examination
> made under this chapter must be given confidential treatment
> and are not subject to subpoena and may not be made public by
> the director or any other person. . . .

*Heritage*, 2007 WL 1234481 (quoting R.I. Gen. Laws Ann. § 27-13.1-5(f)). The court

determined that the purpose of this provision was to shield from public disclosure

company documents in the hands of the state insurance agency, not the company.

*See id.* It found that a broader interpretation of the statute "would allow [the

company] to assert a privilege with respect to every document reviewed or disclosed

17

to [the state agency], even if they otherwise would not be privileged." *Id.* According to the court, the statute simply sought to ensure that "persons beyond the examined company's control will not cause it harm by disclosing sensitive information which may otherwise be privileged." *Id.* As such, "[t]his rationale simply has no application to the case where the Plaintiff seeks disclosure directly from the examined company." *Id.*[15]

Although there appears to be a general consensus among courts interpreting similar statutes in other states, there is not unanimity. Defendants direct the Court to two cases interpreting an analogous California insurance-examination statute. *See* Def. Opp. at 26, 28 (citing *Rowe v. Bankers Life & Cas. Co.*, No. 09-CV-491, 2011 WL 1897181 (N.D. Ill. May 18, 2011; *Gallimore v. State Farm Fire & Cas. Ins. Co.*, 126 Cal. Rptr. 2d 560 (Cal. Ct. App. 2002)). These cases are related: The federal district court in *Rowe* concluded that insurance-examination documents were privileged under California Insurance Code § 735.5, in large part because the state trial court had reached that conclusion in *Gallimore* and the appellate state court left that conclusion undisturbed when it reversed the trial court on other grounds. *See Rowe*, 2011 WL 1897181, at *4-6.

---

[15] The Rhode Island court, which received amicus briefing from the state insurance regulator, ultimately concluded that the draft report was privileged under a "deliberative process" privilege because it was part of an examination that was still ongoing at the time of the court's decision. *See id.* To that end, the court found that "disclosure would risk the premature dissemination of recommendations which might not ultimately be adopted by the Director of [the state regulator], and rationales which might not ultimately be accepted." *See id.* Here, unlike in *Heritage*, the report at issue is final; the examination has been complete for more than two years.

If this Court were interpreting the California statute, *Gallimore* would carry great weight, as it did for the *Rowe* court. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997) ("While a federal court is not bound by lower state court decisions, they do have great weight in informing the court's prediction on how the highest court of the state would resolve the question.") (internal quotation marks and alternations omitted). But the California statute is not at issue here and, in any event, the Court does not find the California trial court's reasoning to be persuasive. Although the California court's ruling might accord with a hyper-literal interpretation of California Insurance Code § 735.5, this interpretation would yield the odd results that the Court seeks to avoid. As discussed above, ordinary, otherwise-discoverable business records that were exchanged as part of an examination would become shielded from subpoena. This result is perhaps all the more implausible in the case of the California statute, where there does not appear to be an even arguable exception for court-ordered subpoenas. This interpretation is also hard to accept when the California statute, like its Montana analogue, does not even use the word "privilege."

In sum, a review of case law interpreting similar statutes from other states supports the conclusion that the Montana statute does not prohibit disclosure of the documents at issue.

### 3. CSI's Conduct

Finally, it is worth noting that CSI, the state regulator charged with enforcing § 33-28-108, has been largely cooperative with plaintiffs, despite

19

defendants' privilege-based objections. "Under the case law, it is clear that, when faced with problems of statutory construction, the court must show deference and respect to the interpretations given the statute by the officers and agencies charged with [its] administration." *State By & Through Dep't of Highways v. Midland Materials Co.*, 662 P.2d 1322, 1325 (Mont. 1983).

Here, CSI expressly declined to submit any formal administrative interpretation of § 33-28-108. While CSI's conduct alone plainly does not amount to such an interpretation, it is still telling that CSI appeared at a deposition to discuss Pacific Re, even after defendants urged it not to appear. *See* SDNY Transcript at 29. Moreover, at the deposition, CSI freely discussed the allegedly privileged documents over defendants' objections. If CSI believed that the disputed documents were privileged under § 33-28-108(3), it presumably would have resisted questions about them at its deposition.

**D.     The Documents at Issue Are Subject to the Confidentiality Order**

Although the Court has ruled that the CSI report and related documents are not privileged, they will nevertheless be subject to the terms of the stipulated protective order that is in place in the underlying action. *See* Stipulation and Protective Order, May 4, 2015, Case No. 14-CV-9494, Dkt. No. 50. At oral argument, plaintiffs agreed to this condition. *See* SDNY Transcript at 14.

## III.  CONCLUSION

For all these reasons, plaintiffs' motion to enforce the October 9, 2015 subpoena issued to Moulton Bellingham, P.C. is granted and defendants' motion to quash the March 2, 2016 subpoena issued to CSI is denied.

**SO ORDERED.**

Dated: New York, New York
       May 16, 2016

JAMES L. COTT
United States Magistrate Judge

21